

**SEDGWICK LLP**
BRIAN D. HARRISON (Bar No. 157123)
VEENA A. MITCHELL (Bar No. 161153)
333 Bush Street, 30th Floor
San Francisco, CA 94104-2834
Telephone: 415-781-7900
Facsimile: 415-781-2635
Email: *brian.harrison@sedgwicklaw.com*
*veena.mitchell@sedgwicklaw.com*

Attorneys for Plaintiff
PHILADELPHIA INDEMNITY
INSURANCE COMPANY

FILED
CLERK, U.S. DISTRICT COURT

APR 10 2014

CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

PHILADELPHIA INDEMNITY
INSURANCE COMPANY,

Plaintiff,

v.

LA PAYROLL, TOVMAS GRIGORYAN, DMITRI PAIU, GENE MOROZ, 1212 WEST DBA METRO WEST APARTMENTS, 1770 EAST COLORADO INC., 8025 SEPULVEDA LLC, ACQUI CORP. DBA ORANGE CLEANERS, ACT ONE INC., ADALTA INC., ALL CITY EMPLOYEES BENEFITS SERVICE ASSOCIATION, AMERICAN DEVELOPMENT CORPORATION, ANGELO MARCIULIANO INDIVIDUALLY AND DBA ANGELO'S ITALIAN DELI, ARISTROCRAT PRODUCTS INC., AWFMEX INC., BABAK ELIA DARDASHTI D.D.S. INC. DBA BRIGHTER DENTAL, BARBA DENTAL CORPORATION, BEACHWOOD HOUSING PARTNERS LTD, BEVERLY HILLS REJUVENATION CENTER INC., BEVERLY HILLS REJUVENATION MEDICAL ASSOCIATES INC., CANN CONSULTING LLC, C.A.R.E. FERTILITY, CARE FERTILITY SURGERY CENTER INC., CCS LIMITED LIABILITY COMPANY DBA EURO PANE BAKERY, CENTERPOINTE CHURCH DBA CENTERPOINTE MINISTRIES AND THE

Case No.

**CV 14-2747 DSF-AS**

**COMPLAINT IN INTERPLEADER**

DOCS/18543674v1

1  LAMB'S FELLOWSHIP, CHARLES WEST
   INDIVIDUALLY AND DBA GO WEST
2  AND GO WEST CONSTRUCTION,
   CHASE PARAGON ASSOCIATES INC.
3  DBA LES DELICES, CHILDREN IN
   MOTION LLC DBA MY GYM,
4  CYBERQUEST COMPUTERS INC.,
   DANIEL SUKLJA INDIVIDUALLY AND
5  DBA POSTAL ANNEX NO. 102, DMC
   ENGINEERING INC., DP ALES INC., DPA
6  INVESTMENTS INC. DBA VAGABOND
   INN HOTEL CIRCLE, DPA LIMITED CO.,
7  EGGY LLC, EL CAJON INVESTMENTS
   INC. DBA RELAX INN & SUITES,
8  FARMERS DAUGHTER HOTEL GROUP,
   FENTON & NELSON LLP,
9  FERTILITYTIES, FRANCISCO
   GUTIERREZ INDIVIDUALLY AND DBA
10 LATINOS UNITED LEARNING CENTER,
   GENESSY MANAGEMENT AND
11 DEVELOPMENT LLC, GERALD HART
   STANLEY SWARTZ IRV DBA DESERT
12 VIEW APARTMENTS, GLASSPLAX INC.,
   GLB REALCORP, HOLLYWOOD WEST
13 TENANT ACTION COMMITTEE DBA
   HOLLYWOOD WEST APARTMENTS,
14 HOLTZ CONSTRUCTION INC., HUNDAL
   MEDICAL CORPORATION, IMAGE ONE
15 DBA PRINTING & MARKETING GROUP,
   J O ARMOR INVESTMENTS, J. WON
16 CORPORATION, JEFF LEE &
   ASSOCIATES INC. DBA RIVIERA
17 APARTMENTS, JESUS GALINDO
   INDIVIDUALLY AND DBA M&J TRUCK
18 AND DELIVERY SERVICE, JOSEPH &
   GALINA SAMUEL DBA BEL AIR GUEST
19 HOME, JUAN C. ANAYA
   INDIVIDUALLY AND DBA TAQUERIA
20 LOS ANAYA, JUPITER HOLDINGS LLC
   DBA APHETA FAMILY OFFICE, LA
21 REINA BY BHANSALI INC., LA VOZ
   DEL IMMIGRANTE MULTI-SERVICES
22 LLC, LAWRENCE WARD
   INDIVIDUALLY AND DBA
23 LAWRENCE'S PERSONAL TOUCH,
   LOGO JOE'S INC., LONG BEACH
24 AFFORDABLE HOUSING COALITION
   INC., LOS ANAYA INC., LOS ANGELES
25 STRENGTH AND CONDITIONING LLC,
   MADISON ET CIE INC., MEHRAN
26 COMPANY L.L.C., MGC PROJECT
   MANAGEMENT LLC, MI ILLUSION
27 RESTAURANT INC., MICHAEL OKUN,
   MISSION BAY HOSPITALITY INC.,
28 NATHA ASSOC. INC.,

1  NEW YORK CLINICAL TRIALS INC.,
   PACIFIC COAST LODGING INC. DBA
2  HOWARD JOHNSON, PALOMA VALLEY
   MATERIALS INC., PARADIGM
3  TREATMENT CENTERS INC., PENMAR
   MANAGEMENT & FINANCE
4  INCORPORATED, PICA & SULLIVAN
   ARCHITECTS LIMITED, POINT LOMA
5  INVESTMENTS INC. DBA POINT LOMA
   INN AND SUITES, PS PATEL
6  PROFESSIONAL DENTAL CORP.,
   PSYCH ME LLC, PURITY SALON LLC
7  DBA SALON PURE, RADIANT
   PICTURES INC., RDG WOODWINDS
8  INC., RENNE CLAIRE INC., RISING
   MOON ENTERPRISES INC., ROGER
9  GIMBEL PRODUCTIONS INC., RON
   ELLIS RACING STABLE, ROUGH
10 TRADE GEAR INC., SANTA CLARA
   INVESTMENTS INC. DBA VAGABOND
11 INN SANTA CLARA, SEPULVEDA
   REHABILITATION CENTER LLC,
12 SHANE DINSDALE INDIVIDUALLY
   AND DBA S D PAINTING, SHEILA INC.,
13 SHERIDAN CHIROPRACTIC INC., SMOG
   STOP SHOP INC., SOCCER AND
14 SOCCER INC., SOCCER
   INTERNATIONAL INC., STEVEN DRISS
15 INSURANCE AGENCY INC., STEVEN
   SONG DESIGN LAB LLC, STOVER SEED
16 CO., STRIVE FOUNDATION, SWA
   INVESTMENT LLC, TABESH
17 CORPORATION DBA $99 PC REPAIR
   CENTER, TAMAYO PRODUCE INC.,
18 TART RESTAURANT, TEMECULA
   VALLEY SHEET METAL INC., THE
19 COMPLIANCE INSTITUTE LLC, THE
   FALLBROOK GROUP LLC, THE
20 HAZELTINE GROUP LLC, THE LONG
   BEACH GROUP LLC, THE
21 WASHINGTON GROUP LLC, THIRD
   STREET ENTERPRISES LLC DBA
22 AMARONE KITCHEN & WINE, TORO
   STONEWORKS INC., TOTAL BILLING
23 AND CONSULTING SERVICES INC.,
   TRAVEL LIKE A ROCK STAR INC.,
24 VINCENT JOSE AVALOS
   INDIVIDUALLY AND DBA YOUR CITY
25 TERMITE & PEST MANAGEMENT,
   WEST COAST INVESTMENTS INC.,
26 WSR PUBLISHING INC. DBA
   WIDESCREEN REVIEW, WITH GOD ALL
27 THINGS ARE POSSIBLE DBA ALL
   THINGS POSSIBLE MINISTRIES,

28
                    Defendants.

_____

COMPLAINT IN INTERPLEADER

1    COMES NOW Plaintiff Philadelphia Indemnity Insurance Company

2    ("Plaintiff" or "Philadelphia"), by and through its attorneys, and for its Complaint

3    in Interpleader states:

### INTRODUCTION

5    1.    Philadelphia seeks herein to interplead the limits of liability of

6    $3,000,000 (three million dollars and no/100) of an insurance policy that

7    Philadelphia issued to LA Payroll ("the Policy"). This amount is being interpled in

8    light of numerous competing and conflicting claims made by more than one

9    hundred former clients of LA Payroll, who each allege that they deposited money

10   into escrow accounts maintained by LA Payroll that was to be used to pay the

11   respective client's payroll taxes to the appropriate taxing authorities, but, instead,

12   the funds of each client were improperly withdrawn and Tovmas Grigoryan, an

13   officer and director of LA Payroll, absconded with such funds. Attached as

14   **Exhibit A** is a chart listing each of the former LA Payroll clients (all of which are

15   named as Defendants in this action) that have made a claim for a loss in connection

16   with the failure of LA Payroll to provide accounting, payroll, and tax services to its

17   clients, as well as the amount of the claimed loss as communicated or shown to

18   Philadelphia to date.

### PARTIES

20   **A.    Plaintiff and Stakeholder**

21   2.    Philadelphia is a corporation organized and incorporated under the

22   laws of the State of Pennsylvania with its principal place of business in Bala

23   Cynwyd, Pennsylvania.

24   **B.    Named Insured and Other Possible Insureds**

25   3.    Defendant LA Payroll is and at all times mentioned was a corporation

26   organized and incorporated under the laws of the State of California with its

27   principal place of business in Los Angeles County, California, and the Named

28   Insured under the Policy.

1    4.    Plaintiff is informed and believes, and thereon alleges, that Defendant
2    Tovmas Grigoryan, an individual, is and at all times mentioned was an officer
3    and/or director of LA Payroll.  At all relevant times, Tovmas Grigoryan was a
4    resident of and domiciled in the State of California, and may be an Insured under
5    the Policy.

6    5.    Plaintiff is informed and believes, and thereon alleges, that Defendant
7    Dmitri Paiu, an individual, is and at all times mentioned was an officer and/or
8    director of LA Payroll.  At all relevant times, Dmitri Paiu was a resident of and
9    domiciled in the State of California, and may be an Insured under the Policy.

10    6.    Plaintiff is informed and believes, and thereon alleges, that Defendant
11    Gene Moroz, an individual, is and at all times mentioned was a former officer
12    and/or director of LA Payroll.  At all relevant times, Gene Moroz was a resident of
13    and domiciled in the State of California, and may be an Insured under the Policy.

14    **C.**    **Former Clients of LA Payroll and Claimants**

15    7.    Plaintiff is informed and believes, and thereon alleges that Defendant
16    1212 West dba Metro West Apartments was at all relevant times a client of LA
17    Payroll.  1212 West dba Metro West Apartments is a business organization of form
18    unknown that does business in Los Angeles County, California.  Plaintiff is
19    informed and believes, and thereon alleges that 1212 West dba Metro West
20    Apartments is not a citizen of and does not have its principal place of business in
21    Pennsylvania.

22    8.    Plaintiff is informed and believes, and thereon alleges that Defendant
23    1770 East Colorado Inc. was at all relevant times a client of LA Payroll.  1770 East
24    Colorado Inc. is and at all times mentioned was a corporation organized and
25    incorporated under the laws of the State of California with its principal place of
26    business in Los Angeles County, California.

27    9.    Plaintiff is informed and believes, and thereon alleges that Defendant
28    8025 Sepulveda LLC was at all relevant times a client of LA Payroll.  8025

1   Sepulveda LLC is and at all times mentioned was a limited liability company

2   organized and existing under the laws of the State of California with its principal

3   place of business in Los Angeles County, California.  Plaintiff is informed and

4   believes, and thereon alleges that the members of 8025 Sepulveda LLC are not

5   citizens of Pennsylvania.

6        10.    Plaintiff is informed and believes, and thereon alleges that Defendant

7   Acqui Corp. dba Orange Cleaners was at all relevant times a client of LA Payroll.

8   Acqui Corp. dba Orange Cleaners is and at all times mentioned was a corporation

9   organized and incorporated under the laws of the State of California with its

10  principal place of business in Riverside County, California.

11       11.    Plaintiff is informed and believes, and thereon alleges that Defendant

12  Act One Inc. was at all relevant times a client of LA Payroll.  Act One Inc. is and

13  at all times mentioned was a corporation organized and incorporated under the

14  laws of the State of California with its principal place of business in Los Angeles

15  County, California.

16       12.    Plaintiff is informed and believes, and thereon alleges that Defendant

17  Adalta Inc. was at all relevant times a client of LA Payroll.  Adalta Inc. was at all

18  times mentioned a corporation organized and incorporated under the laws of the

19  State of California with its principal place of business in Orange County,

20  California.

21       13.    Plaintiff is informed and believes, and thereon alleges that Defendant

22  All City Employees Benefits Service Association was at all relevant times a client

23  of LA Payroll.  All City Employees Benefits Service Association is and at all times

24  mentioned was a corporation organized and incorporated under the laws of the

25  State of California with its principal place of business in Los Angeles County,

26  California.

27       14.    Plaintiff is informed and believes, and thereon alleges that Defendant

28  American Development Corporation was at all relevant times a client of LA

1  Payroll. American Development Corporation is and at all times mentioned was a
2  corporation organized and incorporated under the laws of the State of California
3  with its principal place of business in Los Angeles County, California.

4      15.   Plaintiff is informed and believes, and thereon alleges that Defendant
5  Angelo Marciuliano individually and dba Angelo's Italian Deli was at all relevant
6  times a client of LA Payroll. Angelo Marciuliano individually and dba Angelo's
7  Italian Deli does business in Los Angeles County, California. Angelo Marciuliano
8  individually and dba Angelo's Italian Deli is a resident of and domiciled in the
9  State of California.

10      16.   Plaintiff is informed and believes, and thereon alleges that Defendant
11  Aristocrat Products Inc. was at all relevant times a client of LA Payroll. Aristocrat
12  Products Inc. is and at all times mentioned was a corporation organized and
13  incorporated under the laws of the State of California with its principal place of
14  business in Los Angeles County, California.

15      17.   Plaintiff is informed and believes, and thereon alleges that Defendant
16  AWFMEX Inc. was at all relevant times a client of LA Payroll. AWFMEX Inc. is
17  and at all times mentioned was a corporation organized and incorporated under the
18  laws of the State of California with its principal place of business in Los Angeles
19  County, California.

20      18.   Plaintiff is informed and believes, and thereon alleges that Defendant
21  Babak Elia Dardashti D.D.S. Inc. dba Brighter Dental is a former client of LA
22  Payroll. Babak Elia Dardashti D.D.S. Inc. dba Brighter Dental is and at all times
23  mentioned was a corporation organized and incorporated under the laws of the
24  State of California with its principal place of business in Los Angeles County,
25  California.

26      19.   Plaintiff is informed and believes, and thereon alleges that Defendant
27  Barba Dental Corporation was at all relevant times a client of LA Payroll. Barba
28  Dental Corporation is and at all times mentioned was a corporation organized and

1  incorporated under the laws of the State of California with its principal place of
2  business in Orange County, California.

3      20.    Plaintiff is informed and believes, and thereon alleges that Defendant
4  Beachwood Housing Partners LTD was at all relevant times a client of LA Payroll.
5  Beachwood Housing Partners LTD is and at all times mentioned was a limited
6  liability company organized and existing under the laws of the State of California
7  that does business in Los Angeles County, California. Plaintiff is informed and
8  believes, and thereon alleges that the members of Beachwood Housing Partners
9  LTD are not citizens of Pennsylvania.

10     21.    Plaintiff is informed and believes, and thereon alleges that Defendant
11 Beverly Hills Rejuvenation Center Inc. was at all relevant times a client of LA
12 Payroll. Beverly Hills Rejuvenation Center Inc. is and at all times mentioned was
13 a corporation organized and incorporated under the laws of the State of California
14 with its principal place of business in Los Angeles County, California.

15     22.    Plaintiff is informed and believes, and thereon alleges that Defendant
16 Beverly Hills Rejuvenation Medical Associates Inc. was at all relevant times a
17 client of LA Payroll. Beverly Hills Rejuvenation Medical Center Inc. is and at all
18 times mentioned was a corporation organized and incorporated under the laws of
19 the State of California with its principal place of business in Los Angeles County,
20 California.

21     23.    Plaintiff is informed and believes, and thereon alleges that Defendant
22 Cann Consulting LLC was at all relevant times a client of LA Payroll. Cann
23 Consulting LLC is and at all times mentioned was a limited liability company
24 organized and existing under the laws of the State of California with its principal
25 place of business in Los Angeles County, California. Plaintiff is informed and
26 believes and thereon alleges that the members of Cann Consulting LLC are not
27 citizens of Pennsylvania.

28

24. Plaintiff is informed and believes, and thereon alleges that Defendant C.A.R.E. Fertility was at all relevant times a client of LA Payroll. C.A.R.E. Fertility is and at all times mentioned was a corporation organized and incorporated under the laws of the State of California with its principal place of business in Los Angeles County, California.

25. Plaintiff is informed and believes, and thereon alleges that Defendant Care Fertility Surgery Center Inc. was at all relevant times a client of LA Payroll. Care Fertility Surgery Center Inc. is and at all times mentioned was a corporation organized and incorporated under the laws of the State of California with its principal place of business in Los Angeles County, California.

26. Plaintiff is informed and believes, and thereon alleges that Defendant CCS Limited Liability Company dba Euro Pane Bakery was at all relevant times a client of LA Payroll. CCS Limited Liability Company dba Euro Pane Bakery is and at all times mentioned was a limited liability company organized and existing under the laws of the State of California with its principal place of business in Los Angeles County, California. Plaintiff is informed and believes and thereon alleges that the members of CCS Limited Liability Company dba Euro Pane Bakery are not citizens of Pennsylvania.

27. Plaintiff is informed and believes, and thereon alleges that Defendant Centerpointe Church dba Centerpointe Ministries and The Lamb's Fellowship was at all relevant times a client of LA Payroll. Centerpointe Church dba Centerpointe Ministries and The Lamb's Fellowship is an organization of form unknown that is located in Riverside County, California. Plaintiff is informed and believes and thereon alleges that Centerpointe Church dba Centerpointe Ministries and The Lamb's Fellowship is not a citizen of and does not have its principal place of business in Pennsylvania.

28. Plaintiff is informed and believes, and thereon alleges that Defendant Charles West individually and dba Go West and Go West Construction was at all

relevant times a client of LA Payroll.  Charles West individually and dba Go West and Go West Construction does business in Riverside County, California.  Charles West individually and dba Go West and Go West Construction is a resident of and domiciled in the State of California.

29.     Plaintiff is informed and believes, and thereon alleges that Defendant Chase Paragon Associates Inc. dba Les Delices is a former client of LA Payroll. Chase Paragon Associates Inc. dba Les Delices is and at all times mentioned was a corporation organized and incorporated under the laws of the State of California with its principal place of business in Los Angeles County, California.

30.     Plaintiff is informed and believes, and thereon alleges that Defendant Children in Motion LLC dba My Gym was at all relevant times a client of LA Payroll.  Children in Motion LLC dba My Gym is and at all times mentioned was a limited liability company organized and existing under the laws of the State of California with its principal place of business in Los Angeles County, California. Plaintiff is informed and believes and thereon alleges that the members of Children in Motion LLC dba My Gym are not citizens of Pennsylvania.

31.     Plaintiff is informed and believes, and thereon alleges that Defendant Cyberquest Computers Inc. was at all relevant times a client of LA Payroll. Cyberquest Computers Inc. is and at all times mentioned was a corporation organized and incorporated under the laws of the State of California with its principal place of business in Riverside County, California.

32.     Plaintiff is informed and believes, and thereon alleges that Defendant Daniel Suklja individually and dba Postal Annex No. 102 was at all relevant times a client of LA Payroll.  Daniel Suklja individually and dba Postal Annex No. 102 does business in Riverside County, California.  Daniel Suklja individually and dba Postal Annex No. 102 is a resident of and domiciled in the State of California.

33.     Plaintiff is informed and believes, and thereon alleges that Defendant DMC Engineering Inc. was at all relevant times a client of LA Payroll.  DMC

1  Engineers Inc. is and at all times mentioned was a corporation organized and

2  incorporated under the laws of the State of California with its principal place of

3  business in Los Angeles County, California.

4      34.    Plaintiff is informed and believes, and thereon alleges that Defendant

5  DP Ales Inc. was at all relevant times a client of LA Payroll.  DP Ales Inc. is and

6  at all times mentioned was a corporation organized and incorporated under the

7  laws of the State of California with its principal place of business in Los Angeles

8  County, California.

9      35.    Plaintiff is informed and believes, and thereon alleges that Defendant

10  DPA Investments Inc. dba Vagabond Inn Hotel Circle is a former client of LA

11  Payroll.  DPA Investments Inc. dba Vagabond Inn Hotel Circle is and at all times

12  mentioned was a corporation organized and incorporated under the laws of the

13  State of California with its principal place of business in San Diego County,

14  California.

15      36.    Plaintiff is informed and believes, and thereon alleges that Defendant

16  DPA Limited Co. Inc. was at all relevant times a client of LA Payroll.  DPA

17  Limited Co. Inc. is and at all times mentioned was a corporation organized and

18  incorporated under the laws of the State of California with its principal place of

19  business in Los Angeles County, California.

20      37.    Plaintiff is informed and believes, and thereon alleges that Defendant

21  Eggy LLC is a former client of LA Payroll.  Eggy LLC is and at all times

22  mentioned was a limited liability company organized and existing under the laws

23  of the State of California with its principal place of business in Los Angeles

24  County, California.  Plaintiff is informed and believes and thereon alleges that the

25  members of Eggy LLC are not citizens of Pennsylvania.

26      38.    Plaintiff is informed and believes, and thereon alleges that Defendant

27  El Cajon Investments Inc. dba Relax Inn & Suites is a former client of LA Payroll.

28  El Cajon Investments Inc. dba Relax Inn & Suites is and at all times mentioned

1    was a corporation organized and incorporated under the laws of the State of

2    California with its principal place of business in San Diego County, California.

3        39.    Plaintiff is informed and believes, and thereon alleges that Defendant

4    Farmers Daughter Hotel Group was at all relevant times a client of LA Payroll.

5    Farmers Daughter Hotel Group is and at all times mentioned was a corporation

6    organized and incorporated under the laws of the State of California with its

7    principal place of business in Los Angeles County, California.

8        40.    Plaintiff is informed and believes, and thereon alleges that Defendant

9    Fenton & Nelson LLP was at all relevant times a client of LA Payroll. Plaintiff is

10   informed and believes that Fenton & Nelson LLP is a limited liability partnership

11   organized and existing under the laws of the State of California with its principal

12   place of business in Los Angeles County, California. Plaintiff is informed and

13   believes and thereon alleges that the members of Fenton & Nelson LLP are not

14   citizens of Pennsylvania.

15       41.    Plaintiff is informed and believes, and thereon alleges that Defendant

16   Fertilityties was at all relevant times a client of LA Payroll. Fertilityties is and at

17   all times mentioned was a corporation organized and incorporated under the laws

18   of the State of California with its principal place of business in Los Angeles

19   County, California.

20       42.    Plaintiff is informed and believes, and thereon alleges that Defendant

21   Francisco Gutierrez individually and dba Latinos United Learning Center was at all

22   relevant times a client of LA Payroll. Francisco Gutierrez individually and dba

23   Latinos United Learning Center does business in Los Angeles County, California.

24   Francisco Gutierrez individually and dba Latinos United Learning Center is a

25   resident of and domiciled in the State of California.

26       43.    Plaintiff is informed and believes, and thereon alleges that Defendant

27   Genessy Management and Development LLC was at all relevant times a client of

28   LA Payroll. Genessy Management and Development LLC is and at all times

1   mentioned was a limited liability company organized and existing under the laws

2   of the State of California with its principal place of business in Los Angeles

3   County, California.  Plaintiff is informed and believes and thereon alleges that the

4   members of Genessy Management and Development LLC are not citizens of

5   Pennsylvania.

6       44.    Plaintiff is informed and believes, and thereon alleges that Defendant

7   Gerald Hart Stanley Swartz Irv dba Desert View Apartments was at all relevant

8   times a client of LA Payroll.  Gerald Hart Stanley Swartz Irv dba Desert View

9   Apartments is a business organization form unknown that does business in Los

10  Angeles County, California.  Plaintiff is informed and believes and thereon alleges

11  that Gerald Hart Stanley Swartz Irv dba Desert View Apartments is not a citizen of

12  and does not have its principal place of business in Pennsylvania.

13      45.    Plaintiff is informed and believes, and thereon alleges that Defendant

14  Glassplax Inc. was at all relevant times a client of LA Payroll.  Glassplax Inc. is

15  and at all times mentioned was a corporation organized and incorporated under the

16  laws of the State of California with its principal place of business in Riverside

17  County, California.

18      46.    Plaintiff is informed and believes, and thereon alleges that Defendant

19  GLB Realcorp was at all relevant times a client of LA Payroll.  GLB Realcorp was

20  a corporation organized and incorporated under the laws of the State of California

21  with its principal place of business in Los Angeles County, California.

22      47.    Plaintiff is informed and believes, and thereon alleges that Defendant

23  Hollywood West Tenant Action Committee dba Hollywood West Apartments was

24  at all relevant times a former client of LA Payroll.  Hollywood West Tenant Action

25  Committee dba Hollywood West Apartments is and at all times mentioned was a

26  corporation organized and incorporated under the laws of the State of California

27  with its principal place of business in Los Angeles County, California.

28

48.     Plaintiff is informed and believes, and thereon alleges that Defendant Holtz Construction Inc. was at all relevant times a client of LA Payroll. Holtz Construction Inc. is and at all times mentioned was a corporation organized and incorporated under the laws of the State of California with its principal place of business in Los Angeles County, California.

49.     Plaintiff is informed and believes, and thereon alleges that Defendant Hundal Medical Corporation was at all relevant times a client of LA Payroll. Hundal Medical Corporation is and at all times mentioned was a corporation organized and incorporated under the laws of the State of California with its principal place of business in Los Angeles County, California.

50.     Plaintiff is informed and believes, and thereon alleges that Defendant Image One dba Printing & Marketing Group was at all relevant times a client of LA Payroll. Image One dba Printing & Marketing Group is a business organization of form unknown that does business in Riverside County, California. Plaintiff is informed and believes and thereon alleges that Image One dba Printing & Marketing Group is not a citizen of and does not have its principal place of business in Pennsylvania.

51.     Plaintiff is informed and believes, and thereon alleges that Defendant J O Armor Investments dba Riviera Apartments was at all relevant times a client of LA Payroll. J O Armor Investments dba Riviera Apartments is a business organization of form unknown that does business in Los Angeles County, California. Plaintiff is informed and believes and thereon alleges that J O Armor Investments dba Riviera Apartments is not a citizen of and does not have its principal place of business in Pennsylvania.

52.     Plaintiff is informed and believes, and thereon alleges that Defendant J. Won Corporation was at all relevant times a client of LA Payroll. J. Won Corporation is and at all times mentioned was a corporation organized and

11
COMPLAINT IN INTERPLEADER

1    incorporated under the laws of the State of California with its principal place of
2    business in Los Angeles County, California.

3        53.    Plaintiff is informed and believes, and thereon alleges that Defendant
4    Jeff Lee & Associates Inc. was at all relevant times a client of LA Payroll. Jeff
5    Lee & Associates Inc.  Jeff Lee & Associates Inc. is and at all times mentioned
6    was a corporation organized and incorporated under the laws of the State of
7    California with its principal place of business in Riverside County, California.

8        54.    Plaintiff is informed and believes, and thereon alleges that Defendant
9    Jesus Galindo individually and dba M&J Truck and Delivery Service is a former
10   client of LA Payroll. Jesus Galindo individually and dba M&J Truck and Delivery
11   Service does business in Los Angeles County, California. Jesus Galindo
12   individually and dba M&J Truck and Delivery Service is a resident of and
13   domiciled in the State of California.

14       55.    Plaintiff is informed and believes, and thereon alleges that Defendant
15   Joseph & Galina Samuel dba Bel Air Guest Home was at all relevant times a client
16   of LA Payroll. Joseph & Galina Samuel dba Bel Air Guest Home is a business
17   organization of form unknown that does business in Los Angeles County,
18   California. Plaintiff is informed and believes, and thereon alleges that Joseph &
19   Galina Samuel dba Bel Air Guest Home is not a citizen of and does not have its
20   principal place of business in Pennsylvania.

21       56.    Plaintiff is informed and believes, and thereon alleges that Defendant
22   Juan C. Anaya individually and dba Taqueria Los Anaya was at all relevant times a
23   client of LA Payroll. Juan C. Anaya individually and dba Taqueria Los Anaya
24   does business in Los Angeles County, California.  Juan C. Anaya individually and
25   dba Taqueria Los Anaya is a resident of and domiciled in the State of California.

26       57.    Plaintiff is informed and believes, and thereon alleges that Defendant
27   Jupiter Holdings LLC dba Apheta Family Office was at all relevant times a client
28   of LA Payroll. Jupiter Holdings LLC dba Apheta Family Office was a limited

1   liability company organized and existing under the laws of the State of California
2   with its principal place of business in Los Angeles County, California. Plaintiff is
3   informed and believes and thereon alleges that the members of Jupiter Holdings
4   LLC dba Apheta Family Office are not citizens of Pennsylvania.

5       58.    Plaintiff is informed and believes, and thereon alleges that Defendant
6   La Reina By Bhansali Inc. was at all relevant times a client of LA Payroll. La
7   Reina By Bhansali Inc. is and at all times mentioned was a corporation organized
8   and incorporated under the laws of the State of California with its principal place
9   of business in Los Angeles County, California.

10       59.    Plaintiff is informed and believes, and thereon alleges that Defendant
11   La Voz Del Immigrante Multi-Services LLC was at all relevant times a client of
12   LA Payroll. La Voz Del Immigrante Multi-Services LLC is and at all times
13   mentioned was a limited liability company organized and existing under the laws
14   of the State of California with its principal place of business in Los Angeles
15   County, California. Plaintiff is informed and believes and thereon alleges that the
16   members of La Voz Del Immigrante Multi-Services LLC are not citizens of
17   Pennsylvania.

18       60.    Plaintiff is informed and believes, and thereon alleges that Defendant
19   Lawrence Ward individually and dba Lawrence's Personal Touch was at all
20   relevant times a former client of LA Payroll. Lawrence Ward individually and dba
21   Lawrence's Personal Touch does business in Riverside County, California.
22   Lawrence Ward individually and dba Lawrence's Personal Touch is a resident of
23   and domiciled in the State of California.

24       61.    Plaintiff is informed and believes, and thereon alleges that Defendant
25   Logo Joe's Inc. was at all relevant times a client of LA Payroll. Logo Joe's Inc. is
26   and at all times mentioned was a corporation organized and incorporated under the
27   laws of the State of California with its principal place of business in Los Angeles
28   County, California.

62. Plaintiff is informed and believes, and thereon alleges that Defendant Long Beach Affordable Housing Coalition Inc. was at all relevant times a client of LA Payroll. Long Beach Affordable Housing Coalition Inc. is and all times mentioned was a corporation organized and incorporated under the laws of the State of California with its principal place of business in Los Angeles County, California.

63. Plaintiff is informed and believes, and thereon alleges that Defendant Los Anaya Inc. was at all relevant times a client of LA Payroll. Los Anaya Inc. is and at all times mentioned was a corporation organized and incorporated under the laws of the State of California with its principal place of business in San Bernardino County, California.

64. Plaintiff is informed and believes, and thereon alleges that Defendant Los Angeles Strength and Conditioning LLC was at all relevant times a client of LA Payroll. Los Angeles Strength and Conditioning LLC is and at all times mentioned was a limited liability company organized and existing under the laws of the State of California with its principal place of business in Los Angeles County, California. Plaintiff is informed and believes and thereon alleges that the members of Los Angeles Strength and Conditioning LLC are not citizens of Pennsylvania.

65. Plaintiff is informed and believes, and thereon alleges that Defendant Madison Et Cie Inc. was at all relevant times a client of LA Payroll. Madison Et Cie Inc. is and at all times mentioned was a corporation organized and incorporated under the laws of the State of California with its principal place of business in Los Angeles County, California.

66. Plaintiff is informed and believes, and thereon alleges that Defendant Mehran Company L.L.C. is a former client of LA Payroll. Mehran Company L.L.C. is and at all times mentioned was a limited liability company organized and existing under the laws of the State of Arizona that does business in Los Angeles

County, California.  Plaintiff is informed and believes and thereon alleges that the members of Mehran Company L.L.C. are not citizens of Pennsylvania.

67.    Plaintiff is informed and believes, and thereon alleges that Defendant MGC Project Management LLC was at all relevant times a former client of LA Payroll.  MGC Project Management LLC is and at all times mentioned was a limited liability company organized and existing under the laws of the State of California with its principal place of business in Los Angeles County, California. Plaintiff is informed and believes and thereon alleges that the members of MGC Project Management LLC are not citizens of Pennsylvania.

68.    Plaintiff is informed and believes, and thereon alleges that Defendant MI Illusion Restaurant Inc. was at all relevant times a client of LA Payroll.  MI Illusion Restaurant Inc. is and at all times mentioned was a corporation organized and incorporated under the laws of the State of California with its principal place of business in Los Angeles County, California.

69.    Plaintiff is informed and believes, and thereon alleges that Defendant Michael Okun was at all relevant times a client of LA Payroll.  Michael Okun does business in Los Angeles County, California.  Michael Okun is a resident of and domiciled in the State of California.

70.    Plaintiff is informed and believes, and thereon alleges that Defendant Mission Bay Hospitality Inc. is a former client of LA Payroll.  Mission Bay Hospitality Inc. is and at all times mentioned was a corporation organized and incorporated under the laws of the State of California with its principal place of business in San Diego County, California.

71.    Plaintiff is informed and believes, and thereon alleges that Defendant Natha Assoc. Inc. was at all relevant times a client of LA Payroll.  Natha Assoc. Inc. is and at all times mentioned was a corporation organized and incorporated under the laws of the State of California with its principal place of business in San Diego County, California.

1      72.   Plaintiff is informed and believes, and thereon alleges that Defendant

2  New York Clinical Trials Inc. was at all relevant times a client of LA Payroll.

3  New York Clinical Trials Inc. is and at all times mentioned was a corporation

4  organized and incorporated under the laws of the State of New York with its

5  principal place of business in Los Angeles County, California.

6      73.   Plaintiff is informed and believes, and thereon alleges that Defendant

7  Pacific Coast Lodging Inc. dba Howard Johnson is a former client of LA Payroll.

8  Pacific Coast Lodging Inc. dba Howard Johnson was a corporation organized and

9  incorporated under the laws of the State of California with its principal place of

10  business in San Diego County, California.

11      74.   Plaintiff is informed and believes, and thereon alleges that Defendant

12  Paloma Valley Materials Inc. was at all relevant times a client of LA Payroll.

13  Paloma Valley Materials Inc. was a corporation organized and incorporated under

14  the laws of the State of California with its principal place of business in Riverside

15  County, California.

16      75.   Plaintiff is informed and believes, and thereon alleges that Defendant

17  Paradigm Treatment Centers Inc. dba Paradigm Malibu was at all relevant times a

18  client of LA Payroll.  Paradigm Treatment Centers Inc. dba Paradigm Malibu is

19  and at all times mentioned was a corporation organized and incorporated under the

20  laws of the State of California with its principal place of business in Los Angeles

21  County, California.

22      76.   Plaintiff is informed and believes, and thereon alleges that Defendant

23  Penmar Management & Finance Incorporated was at all relevant times a client of

24  LA Payroll.  Penmar Management & Finance Incorporated is and at all times

25  mentioned was a corporation organized and incorporated under the laws of the

26  State of California with its principal place of business in Los Angeles County,

27  California.

28

77.    Plaintiff is informed and believes, and thereon alleges that Defendant Pica & Sullivan Architects Limited was at all relevant times a client of LA Payroll. Pica & Sullivan Architects Limited is and at all times mentioned was a corporation organized and incorporated under the laws of the State of California with its principal place of business in Los Angeles County, California.

78.    Plaintiff is informed and believes, and thereon alleges that Defendant Point Loma Investments Inc. dba Point Loma Inn and Suites is a former client of LA Payroll. Point Loma Investments Inc. dba Point Loma Inn and Suites is and at all times mentioned was a corporation organized and incorporated under the laws of the State of California with its principal place of business in San Diego County, California.

79.    Plaintiff is informed and believes, and thereon alleges that Defendant PS Patel Professional Dental Corp. was at all relevant times a client of LA Payroll. PS Patel Professional Dental Corp. is and at all times mentioned was a corporation organized and incorporated under the laws of the State of California with its principal place of business in San Bernardino County, California.

80.    Plaintiff is informed and believes, and thereon alleges that Defendant Psych Me LLC was at all relevant times a client of LA Payroll. Psych Me LLC is and at all times mentioned was a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in Los Angeles County, California. Plaintiff is informed and believes and thereon alleges that the members of Psych Me LLC are not citizens of Pennsylvania.

81.    Plaintiff is informed and believes, and thereon alleges that Defendant Purity Salon LLC dba Salon Pure was at all relevant times a client of LA Payroll. Purity Salon LLC dba Salon Pure was a limited liability company organized and existing under the laws of the State of California with its principal place of business in Los Angeles County, California. Plaintiff is informed and believes and

1  thereon alleges that the members of Purity Salon LLC dba Salon Pure are not

2  citizens of Pennsylvania.

3      82.    Plaintiff is informed and believes, and thereon alleges that Defendant

4  Radiant Pictures Inc. was at all relevant times a client of LA Payroll.  Radiant

5  Pictures Inc. is and at all times mentioned was a corporation organized and

6  incorporated under the laws of the State of California with its principal place of

7  business in Los Angeles County, California.

8      83.    Plaintiff is informed and believes, and thereon alleges that Defendant

9  RDG Woodwinds Inc. was at all relevant times a client of LA Payroll.  RDG

10  Woodwinds Inc. is and at all times mentioned was a corporation organized and

11  incorporated under the laws of the State of California with its principal place of

12  business in Los Angeles County, California.

13      84.    Plaintiff is informed and believes, and thereon alleges that Defendant

14  Renee Claire Inc. was at all relevant times a client of LA Payroll.  Renee Claire

15  Inc. is and at all times mentioned was a corporation organized and incorporated

16  under the laws of the State of California with its principal place of business in Los

17  Angeles County, California.

18      85.    Plaintiff is informed and believes, and thereon alleges that Defendant

19  Rising Moon Enterprises Inc. is a former client of LA Payroll.  Rising Moon

20  Enterprises Inc. is and at all times mentioned was a corporation organized and

21  incorporated under the laws of the State of California with its principal place of

22  business in Los Angeles County, California.

23      86.    Plaintiff is informed and believes, and thereon alleges that Defendant

24  Roger Gimbel Productions Inc. is a former client of LA Payroll.  Roger Gimbel

25  Productions Inc. is and at all times mentioned was a corporation organized and

26  incorporated under the laws of the State of California with its principal place of

27  business in Los Angeles County, California.

28

87.   Plaintiff is informed and believes, and thereon alleges that Defendant Ron Ellis Racing Stable was at all relevant times a client of LA Payroll.  Ron Ellis Racing Stable is and at all times mentioned was a corporation organized and incorporated under the laws of the State of California with its principal place of business in Los Angeles County, California.

88.   Plaintiff is informed and believes, and thereon alleges that Defendant Rough Trade Gear Inc. is a former client of LA Payroll.  Rough Trade Gear Inc. is and at all times mentioned was a corporation organized and incorporated under the laws of the State of California with its principal place of business in Los Angeles County, California.

89.   Plaintiff is informed and believes, and thereon alleges that Defendant Santa Clara Investments Inc. dba Vagabond Inn Santa Clara is a former client of LA Payroll.  Santa Clara Investments Inc. dba Vagabond Inn Santa Clara is and at all times mentioned was a corporation organized and incorporated under the laws of the State of California with its principal place of business in San Diego County, California.

90.   Plaintiff is informed and believes, and thereon alleges that Defendant Sepulveda Rehabilitation Center LLC was at all relevant times a client of LA Payroll.  Sepulveda Rehabilitation Center LLC is a limited liability company organized and existing under the laws of the State of California with its principal place of business in Los Angeles County, California.  Plaintiff is informed and believes and thereon alleges that the members of Sepulveda Rehabilitation Center LLC are not citizens of Pennsylvania.

91.   Plaintiff is informed and believes, and thereon alleges that Defendant Shane Dinsdale individually and dba S D Painting is a former client of LA Payroll.  Shane Dinsdale individually and dba S D Painting does business in Los Angeles County, California.  Shane Dinsdale individually and dba S D Painting is a resident of and domiciled in the State of California.

1    92.    Plaintiff is informed and believes, and thereon alleges that Defendant

2    Sheila Inc. is a former client of LA Payroll.  Sheila Inc. is and at all times

3    mentioned was a corporation organized and incorporated under the laws of the

4    State of California with its principal place of business in Los Angeles County,

5    California.

6    93.    Plaintiff is informed and believes, and thereon alleges that Defendant

7    Sheridan Chiropractic Inc. was at all relevant times a client of LA Payroll.

8    Sheridan Chiropractic Inc. is and at all times mentioned was a corporation

9    organized and incorporated under the laws of the State of California with its

10   principal place of business in Riverside County, California.

11   94.    Plaintiff is informed and believes, and thereon alleges that Defendant

12   Smog Stop Shop Inc. was at all relevant times a client of LA Payroll.  Smog Stop

13   Shop Inc. is and at all times mentioned was a corporation organized and

14   incorporated under the laws of the State of California with its principal place of

15   business in Riverside County, California.

16   95.    Plaintiff is informed and believes, and thereon alleges that Defendant

17   Soccer and Soccer Inc. was at all relevant times a client of LA Payroll.  Soccer and

18   Soccer Inc. is and at all times mentioned was a corporation organized and

19   incorporated under the laws of the State of California with its principal place of

20   business in Los Angeles County, California.

21   96.    Plaintiff is informed and believes, and thereon alleges that Defendant

22   Soccer International Inc. was at all relevant times a client of LA Payroll.  Soccer

23   International Inc. is and at all times mentioned was a corporation organized and

24   incorporated under the laws of the State of California with its principal place of

25   business in Los Angeles County, California.

26   97.    Plaintiff is informed and believes, and thereon alleges that Defendant

27   Steven Driss Insurance Agency Inc. was at all relevant times a client of LA

28   Payroll.  Steven Driss Insurance Agency Inc. is and at all times mentioned was a

1  corporation organized and incorporated under the laws of the State of California

2  with its principal place of business in Los Angeles County, California.

3      98.    Plaintiff is informed and believes, and thereon alleges that Defendant

4  Steven Song Design Lab LLC was at all relevant times a client of LA Payroll.

5  Steven Song Design Lab LLC is a limited liability company organized and existing

6  under the laws of the State of California with its principal place of business in Los

7  Angeles County, California.  Plaintiff is informed and believes and thereon alleges

8  that the members of Song Design Lab LLC are not citizens of Pennsylvania.

9      99.    Plaintiff is informed and believes, and thereon alleges that Defendant

10 Stover Seed Co. was at all relevant times a client of LA Payroll.  Stover Seed Co.

11 is and at all times mentioned was a corporation organized and incorporated under

12 the laws of the State of California with its principal place of business in Los

13 Angeles County, California.

14     100.  Plaintiff is informed and believes, and thereon alleges that Defendant

15 Strive Foundation was at all relevant times a client of LA Payroll.  Strive

16 Foundation is and at all times mentioned was a corporation organized and

17 incorporated under the laws of the State of California with its principal place of

18 business in Los Angeles County, California.

19     101.  Plaintiff is informed and believes, and thereon alleges that Defendant

20 SWA Investment LLC was at all relevant times a client of LA Payroll.  SWA

21 Investment LLC was a limited liability company organized and existing under the

22 laws of the State of Kansas doing business in Los Angeles County, California.

23 Plaintiff is informed and believes and thereon alleges that the members of SWA

24 Investment LLC are not citizens of Pennsylvania.

25     102.  Plaintiff is informed and believes, and thereon alleges that Defendant

26 Tabesh Corporation dba $99 PC Repair Center is a former client of LA Payroll.

27 Tabesh Corporation dba $99 PC Repair Center is and at all times mentioned was a

28

21

corporation organized and incorporated under the laws of the State of California with its principal place of business in Riverside County, California.

103.   Plaintiff is informed and believes, and thereon alleges that Defendant Tamayo Produce Inc. was at all relevant times a client of LA Payroll.  Tamayo Produce Inc. is and at all times mentioned was a corporation organized and incorporated under the laws of the State of California with its principal place of business in Los Angeles County, California.

104.   Plaintiff is informed and believes, and thereon alleges that Defendant Tart Restaurant was at all relevant times a client of LA Payroll.  Tart Restaurant is a business organization of form unknown that does business in Los Angeles County, California.  Plaintiff is informed and believes and thereon alleges that Tart Restaurant is not a citizen of and does not have its principal place of business in Pennsylvania.

105.   Plaintiff is informed and believes, and thereon alleges that Defendant Temecula Valley Sheet Metal Inc. was at all relevant times a client of LA Payroll. Temecula Valley Sheet Metal Inc. is and at all times mentioned was a corporation organized and incorporated under the laws of the State of California with its principal place of business in Riverside County, California.

106.   Plaintiff is informed and believes, and thereon alleges that Defendant The Compliance Institute LLC was at all relevant times a client of LA Payroll. The Compliance Institute LLC is and at all times mentioned was a limited liability company organized and existing under the laws of the State of California with its principal place of business in Los Angeles County, California.  Plaintiff is informed and believes and thereon alleges that the members of The Compliance Institute LLC are not citizens of Pennsylvania.

107.   Plaintiff is informed and believes, and thereon alleges that Defendant The Fallbrook Group LLC was at all relevant times a client of LA Payroll.  The Fallbrook Group LLC is and at all times mentioned was a limited liability company

1   organized and existing under the laws of the State of California with its principal
2   place of business in Los Angeles County, California. Plaintiff is informed and
3   believes and thereon alleges that the members of The Fallbrook Group LLC are not
4   citizens of Pennsylvania.

5        108.   Plaintiff is informed and believes, and thereon alleges that Defendant
6   The Hazeltine Group LLC was at all relevant times a client of LA Payroll. The
7   Hazeltine Group LLC is a limited liability company organized and existing under
8   the laws of the State of California with its principal place of business in Los
9   Angeles County, California. Plaintiff is informed and believes and thereon alleges
10   that the members of The Hazeltine Group LLC are not citizens of Pennsylvania.

11       109.   Plaintiff is informed and believes, and thereon alleges that Defendant
12   The Long Beach Group LLC was at all relevant times a client of LA Payroll. The
13   Long Beach Group LLC is a limited liability company organized and existing
14   under the laws of the State of California with its principal place of business in Los
15   Angeles County, California. Plaintiff is informed and believes and thereon alleges
16   that the members of The Long Beach Group LLC are not citizens of Pennsylvania.

17       110.   Plaintiff is informed and believes, and thereon alleges that Defendant
18   The Washington Group LLC was at all relevant times a client of LA Payroll. The
19   Washington Group LLC is and at all times mentioned was a limited liability
20   company organized and existing under the laws of the State of California with its
21   principal place of business in Los Angeles County, California. Plaintiff is
22   informed and believes and thereon alleges that the members of The Washington
23   Group LLC are not citizens of Pennsylvania.

24       111.   Plaintiff is informed and believes, and thereon alleges that Defendant
25   Third Street Enterprises LLC dba Amarone Kitchen & Wine is a former client of
26   LA Payroll. Third Street Enterprises LLC dba Amarone Kitchen & Wine is and at
27   all times mentioned was a limited liability company organized and existing under
28   the laws of the State of California with its principal place of business in Los

1  Angeles County, California. Plaintiff is informed and believes and thereon alleges
2  that the members of Third Street Enterprises LLC dba Amarone Kitchen & Wine
3  are not citizens of Pennsylvania.

4      112. Plaintiff is informed and believes, and thereon alleges that Defendant
5  Toro Stoneworks Inc. was at all relevant times a client of LA Payroll. Toro
6  Stoneworks Inc. was a corporation organized and incorporated under the laws of
7  the State of California with its principal place of business in Riverside County,
8  California.

9      113. Plaintiff is informed and believes, and thereon alleges that Defendant
10  Total Billing and Consulting Services Inc. was at all relevant times a client of LA
11  Payroll. Total Billing and Consulting Services Inc. was a corporation organized
12  and incorporated under the laws of the State of California with its principal place
13  of business in Riverside County, California.

14      114. Plaintiff is informed and believes, and thereon alleges that Defendant
15  Travel Like A Rock Star Inc. was at all relevant times a client of LA Payroll.
16  Travel Like A Rock Star Inc. is and at all times mentioned was a corporation
17  organized and incorporated under the laws of the State of California with its
18  principal place of business in Los Angeles County, California.

19      115. Plaintiff is informed and believes, and thereon alleges that Defendant
20  Vincent Jose Avalos individually and dba Your City Termite & Pest Management
21  was at all relevant times a client of LA Payroll. Vincent Jose Avalos individually
22  and dba Your City Termite & Pest Management does business in Riverside
23  County, California. Vincent Jose Avalos individually and dba Your City Termite
24  & Pest Management is a resident of and domiciled in the State of California.

25      116. Plaintiff is informed and believes, and thereon alleges that Defendant
26  West Coast Investments Inc. is a former client of LA Payroll. West Coast
27  Investments Inc. is and at all times mentioned was a corporation organized and
28

1  incorporated under the laws of the State of California with its principal place of
2  business in San Diego County, California.

3      117.  Plaintiff is informed and believes, and thereon alleges that Defendant
4  WSR Publishing Inc. dba Widescreen Review is a former client of LA Payroll.
5  WSR Publishing Inc. dba Widescreen Review is and at all times mentioned was a
6  corporation organized and incorporated under the laws of the State of California
7  with its principal place of business in Riverside County, California.

8      118.  Plaintiff is informed and believes, and thereon alleges that Defendant
9  With God All Things Are Possible dba All Things Possible Ministries is a former
10  client of LA Payroll.  With God All Things Are Possible dba All Things Possible
11  Ministries is and at all times mentioned was a corporation organized and
12  incorporated under the laws of the State of Texas with its principal place of
13  business in Riverside County, California.

14  **JURISDICTION AND VENUE**

15      119.  This action for interpleader arises under Federal Rule of Civil
16  Procedure 22.

17      120.  This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.
18  The amount in controversy is insurance proceeds in excess of $75,000 and is
19  between citizens of different states.

20      121.  Pursuant to 28 U.S.C. § 1391, venue is proper in this District, because
21  the insurance policy at issue was entered into in this District, and the events giving
22  rise to this dispute occurred within this District.

23  **PRELIMINARY ALLEGATIONS**

24  **A.**  **The Philadelphia Policy**

25      122.  Philadelphia issued one insurance policy that is relevant to this action.
26  Philadelphia issued Accountants Professional Liability Insurance Policy No.
27  PHSD813456 to LA Payroll for the policy period of January 23, 2013 to January
28  23, 2014 ("Policy" or Philadelphia Policy").  A true and correct copy of the

1   Philadelphia Policy is attached hereto as **Exhibit B**.  The Philadelphia Policy has

2   Limits of Liability of $3,000,000 for each CLAIM, including CLAIMS EXPENSE

3   and Limits of Liability of $3,000,000 annual aggregate including CLAIMS

4   EXPENSE.

5       123.   Under DEFINITIONS, the Philadelphia Policy defines CLAIM to

6   mean "a demand made upon any INSURED for DAMAGES, including, but not

7   limited to, service or suit or institution of arbitration proceedings against any

8   INSURED."  CLAIM EXPENSE, in part, is defined as "fees charged by any

9   Lawyer designated by the COMPANY to defend the interests of any INSURED;

10  and if authorized by the Company, all other reasonable fees, costs and expenses

11  resulting from the investigation, adjustment, defense or appeal of any CLAIM."

12  DAMAGES means "monetary compensation for past harms or injuries, provided

13  always that DAMAGES shall not include: A. punitive or exemplary damages; or

14  B. sanctions, fees, fines or penalties imposed on any INSURED; or C. the

15  multiplied portion of any multiplied damage award; or D. fees or other

16  consideration paid to any INSURED; or E. liquidated damages as provided under a

17  contract or statute."

18      124.   The Philadelphia Policy contains, under INSURING AGREEMENTS,

19  the following provisions:

20          I.     COVERAGE – PROFESSIONAL LIABILITY

21

22  The Company will pay on behalf of the
    INSUREDS those sums in excess of the deductible

23  which the INSUREDS become legally obligated to
    pay as DAMAGES as a result of CLAIMS first

24  made against the INSUREDS by reason of a

25  negligent act, error or omission in the performance
    of PROFESSIONAL SERVICES, provided the

26  CLAIM is first made during the POLICY PERIOD

27  and written report of the CLAIM is received by the
    Company during the POLICY PERIOD or within

28  sixty (60) days thereafter.

II.  DEFENSE, INVESTIGATION AND
SETTLEMENT OF CLAIMS

As respects such CLAIMS which are covered by
this policy, the Company shall:

A. have the right and duty to defend, including
selection of counsel and arbitrators, in any
INSURED'S name and on any INSURED'S
behalf of any CLAIM  for DAMAGES against
any INSURED, even if such CLAIM   is
groundless, false or fraudulent and shall have
the   right   to   make   such   investigation,
negotiation, and settlement, subject to II.B.
below, of any CLAIM as it deems expedient;

*        *        *

125.   Under the DEFENSE, INVESTIGATION AND SETTLEMENT OF

CLAIMS provision, the Policy also provides that Philadelphia shall not be

obligated to pay DAMAGES or to defend any CLAIM upon deposit of the

applicable limits of liability of the Philadelphia Policy with this Court:

The Company shall not be obligated to pay any
DAMAGES or defend or continue to defend any
CLAIM after the limit of the Company's liability
has been exhausted by payment of DAMAGES
and/or CLAIMS EXPENSES, or by deposit of
sums equal to the applicable limits of liability in a
court having jurisdiction.

126.   Concurrently with the filing of this Complaint, or as soon thereafter as

possible, Philadelphia will deposit the amount of the Philadelphia Policy limits of

liability of $3,000,000 into the Registry of the Court and, thereafter, file a Notice

of Deposit with the Court.

**B.**    **Information Received Regarding Former LA Payroll Clients' Claims**

127.   Philadelphia is informed and believes, and thereon alleges that for

approximately the past ten years, Defendant LA Payroll has provided accounting,

27
COMPLAINT IN INTERPLEADER

1  payroll, and tax services to its clients, and as part of its duties, LA Payroll

2  withdrew money from payroll accounts held for the benefit of its clients and

3  deposited the necessary funds with the Internal Revenue Service ("IRS") and the

4  California Employment Development Department ("EDD").

5    128.   Philadelphia is informed and believes, and thereon alleges that LA

6  Payroll was previously owned and operated by Defendants Gene Moroz and Dmitri

7  Paiu, and was purchased by Defendant Tovmas Grigoryan in early 2013.

8  Philadelphia is informed and believes, and thereon alleges that after Tovmas

9  Grigoryan purchased LA Payroll, he assumed responsibility and control over

10  certain aspects of the company, including direct control over the aforementioned

11  escrow accounts in or about July 2013.

12    129.   Philadelphia is informed and believes, and thereon alleges that in or

13  about December 2013, a number of clients of LA Payroll received tax delinquency

14  notices from the IRS and EDD for 3rd quarter payroll taxes, but that Tovmas

15  Grigoryan was on vacation at the time and could not be contacted regarding the

16  status of tax payments on behalf of the clients.  Philadelphia is informed and

17  believes, and thereon alleges that Tovmas Grigoryan has not been seen or heard

18  from since by the LA Payroll employees, and has not been located as yet by

19  Philadelphia's investigator.  Philadelphia is informed and believes, and thereon

20  alleges that LA Payroll also failed to pay the 4th quarter payroll taxes for its

21  clients, and in or about January 2014, LA Payroll entirely ceased its operations.

22    130.   Since becoming aware in or about December 2013 of the allegations

23  as relates to LA Payroll that are relevant here, Philadelphia has communicated with

24  numerous former clients of LA Payroll, including each of the Defendants identified

25  in Paragraphs 7 through 118 above,  to determine the existence and nature of any

26  claims.  As a result of those efforts, Philadelphia has received communications

27  and/or documentation from or regarding approximately 112 former clients of LA

28  Payroll as to the amounts that the former clients claim that LA Payroll deducted

1    from the clients' escrow accounts and which LA Payroll had not paid over to the
2    applicable taxing authority. Such communications and/or documentation received
3    to date show that the sum of the claims of 101 former LA Payroll clients that are
4    also named herein as Defendants exceed $3,733,000 and that such amount is
5    greater than the limits of liability under the Policy. Philadelphia also awaits receipt
6    of documentation from 11 former LA Payroll clients that are also named herein as
7    Defendants that have notified Philadelphia of their claims, to show the amount of
8    their claimed loss. Philadelphia is informed and believes, and there on alleges that
9    all of these 112 former LA Payroll clients are making demands upon Defendant
10   LA Payroll to recover their claimed loss.

11          131.   As mentioned in Paragraph 1 above, **Exhibit A** to this complaint is a
12   chart showing the amount of the claimed loss as communicated or shown to
13   Philadelphia to date by the former LA Payroll clients (all of which are named as
14   Defendants in this action).

15          132.   Since March 14, 2014, Philadelphia has sent a letter via certified mail,
16   return receipt requested, to each of the former LA Payroll clients that had
17   submitted communication and/or documentation to Philadelphia as to an alleged
18   loss relevant here, including each of the former clients of LA Payroll named as
19   Defendants in this action. In that letter, Philadelphia notified the former LA
20   Payroll clients that Philadelphia will seek to interplead the Policy proceeds with
21   this Court, in order that there may be a fair and equitable distribution of the policy
22   proceeds among the claimant Defendants. In its letter, Philadelphia said that it will
23   seek an order from the Court exonerating and discharging Philadelphia from any
24   further obligation or liability under the Policy with respect to the Claims, and
25   acknowledging that the Policy's limits of liability have been exhausted. In its
26   letter, Philadelphia said that to assist the Court and all of the claimants,
27   Philadelphia will offer to administer a claim and payment recommendation
28   process, but noted that it is up to the Court to decide if this process is appropriate.

Attached as **Exhibit C** is a true and correct copy of one of the Philadelphia's March 14, 2014 letters sent via certified mail, return receipt requested, to a former LA Payroll client.

133.   In mid-March 2014, former LA Payroll employees provided Philadelphia's investigator with the names of additional former LA Payroll clients, indicating that the total number of former LA Payroll clients is about 180. Philadelphia has since sent communications to some of these additional former LA Payroll clients.  Philadelphia expects and anticipates that additional claims for loss will be made against LA Payroll by some of these additional former LA Payroll clients, whereupon Philadelphia will, as necessary, amend this pleading to identify any additional claimants.

**C.   Lawsuits Filed by Former LA Payroll Clients Against LA Payroll and/or Its Officers and Directors**

134.   On December 31, 2013, Defendants Fenton & Nelson LLP and The Compliance Institute LLC filed a lawsuit against Defendant LA Payroll in the Superior Court for the State of California, County of Los Angeles, Case No. BC531855 ("F&N Action").  The complaint in the F&N Action alleges breach of written contract, account stated, and money received, and asserts that the parties "entered into a written secured merchant agreement … whereby F&N retained [LA Payroll] to provide certain payroll services.  … [LA Payroll] materially breached the F&N Agreement in that they have failed and refused, and continue to fail and refuse, to pay the taxes due."  Defendants Fenton & Nelson LLP and The Compliance Institute LLC allege recovery of damages in excess of $500,000. Attached as **Exhibit D** is a true and correct copy of the complaint filed in the F&N Action.  Upon Philadelphia's deposit of the limits of liability of $3,000,000 into the Registry of this Court, Philadelphia has no obligation to pay any DAMAGES or defend or continue to defend any CLAIM in connection with the F&N Action.

1       135.  On January 9, 2014, Defendants Glassplax Inc. and Toro Stoneworks

2   Inc. filed a lawsuit against Defendants LA Payroll and Tomas Grigoryan in the

3   Superior Court for the State of California, County of Los Angeles, Case No.

4   BC532591 ("Glassplax Action"). The complaint in the Glassplax Action alleges

5   negligence, breach of fiduciary duty and conversion, and asserts, "Plaintiffs hired

6   LA Payroll for its accounting, payroll and tax services. … On or about December

7   20, 2013, Plaintiffs discovered that LA Payroll had failed to pay their third and

8   fourth quarter taxes to the IRS. …" Defendants Glassplax Inc. and Toro

9   Stoneworks Inc. allege that they lost approximately $100,000, and have suffered

10   damages totaling approximately $200,000. Attached as **Exhibit E** is a true and

11   correct copy of the complaint filed in the Glassplax Action. Upon Philadelphia's

12   deposit of the limits of liability of $3,000,000 into the Registry of this Court,

13   Philadelphia has no obligation to pay any DAMAGES or defend or continue to

14   defend any CLAIM in connection with the Glassplax Action.

15       136.  On January 13, 2014, Defendant SWA Investment LLC filed a small

16   claims action against Defendant LA Payroll in the Superior Court for the State of

17   California, County of Los Angeles, Case No. LAM 14M00038 ("SWA Investment

18   Action"). The Claim for Small Claims Court in the SWA Investment Action

19   alleges, "The Plaintiff hired the Defendants to handle their payroll accounts. They

20   were also responsible to pay out of federal and state taxes, which the failed to do

21   so. …" Defendant SWA Investment LLC alleges that Defendant LA Payroll owes

22   it $5,000. Attached as **Exhibit F** is a true and correct copy of the complaint filed

23   in the SWA Investment Action. Upon Philadelphia's deposit of the limits of

24   liability of $3,000,000 into the Registry of this Court, Philadelphia has no

25   obligation to pay any DAMAGES or defend or continue to defend any CLAIM in

26   connection with the SWA Investment Action.

27       137.  On January 30, 2014, Defendants Sepulveda Rehabilitation Center

28   and 8025 Sepulveda LLC filed a lawsuit against Defendants LA Payroll and

1  Tomas Grigoryan in the Superior Court for the State of California, County of Los
2  Angeles, Case No. BC534709("Sepulveda Action").  The complaint in the
3  Sepulveda Action alleges breach of oral contract, breach of written contract,
4  account stated, money had and received, negligence, breach of fiduciary duty,
5  conversion and fraud, and asserts, "Plaintiffs hired PAYROLL for its accounting,
6  payroll and tax services. … On or about December 27, 2013, Plaintiff [] discovered
7  that PAYROLL had withdrawn funds from SRC's account but had failed to remit
8  … taxes to the governmental agencies. …"  Defendants Sepulveda Rehabilitation
9  Center and 8025 Sepulveda LLC allege recovery of damages in excess of
10  $48,110.88.  Attached as **Exhibit G** is a true and correct copy of the complaint
11  filed in the Sepulveda Action.  Upon Philadelphia's deposit of the limits of liability
12  of $3,000,000 into the Registry of this Court, Philadelphia has no obligation to pay
13  any DAMAGES or defend or continue to defend any CLAIM in connection with
14  the Sepulveda Action.

15      138.  On February 3, 2014, Defendant Tamayo Produce Inc. filed a lawsuit
16  against Defendants LA Payroll Inc., Tovmas Grigoryan, Dmitri Paiu and Gene
17  Moroz, in the Superior Court for the State of California, County of Los Angeles,
18  Case No. BC534912 ("Tamayo Produce Action").  The first amended complaint in
19  the Tamayo Produce Action alleges intentional misrepresentation, fraudulent
20  concealment, conversion, breach of fiduciary duty, unjust enrichment, negligent
21  infliction of emotional distress, and negligence, and asserts, "Plaintiff was a client
22  of Defendants.  Plaintiff entrusted Defendants with the escrowing and payment of
23  Plaintiff's payroll taxes … Defendants were a fiduciary of Plaintiff and, on
24  information and belief, were either negligent and/or defrauded Plaintiff and
25  breached their fiduciary duties by absconding with Plaintiff's payroll tax deposits
26  and failing to pay Plaintiff's payroll taxes for the balance of 2013." Defendant
27  Tamayo Produce Inc. alleges it seeks to recover damages in excess of $100,000.
28  Attached as **Exhibit H** is a true and correct copy of the complaint filed in the

1  Tamayo Produce Action.  Upon Philadelphia's deposit of the limits of liability of
2  $3,000,000 into the Registry of this Court, Philadelphia has no obligation to pay
3  any DAMAGES or defend or continue to defend any CLAIM in connection with
4  the Tamayo Produce Action.

5      139.  In their above-mentioned lawsuits against Defendant LA Payroll,
6  Defendants Fenton & Nelson LLP, The Compliance Institute LLC, SWA
7  Investment LLC, Glassplax Inc. and Toro Stoneworks Inc. have alleged damages
8  which exceed the amount shown in the documents they submitted to Philadelphia
9  (and stated on Exhibit A for each of these Defendants).  Collectively, the amounts
10  alleged in these Defendants' lawsuits exceed that shown in their documents
11  submitted to Philadelphia by about $250,000.  Therefore, to date, Philadelphia has
12  been notified of claimed loss by former LA Payroll clients (named as Defendants
13  in Paragraphs 7 through 118 above) against Defendant LA Payroll that collectively
14  exceeds $3,983,000.

15  **FIRST CAUSE OF ACTION**

16  **(Interpleader of Insurance Proceeds)**

17      140.  Philadelphia incorporates the allegations of paragraphs 1 through 139
18  above as though fully set forth herein.

19      141.  The Defendants identified in paragraphs 7 through 118 of this
20  complaint are former clients of LA Payroll and are currently making competing
21  demands for the proceeds of the Philadelphia Policy.  Those Defendants and each
22  of them contend that they are entitled to a portion of the proceeds of the
23  Philadelphia Policy.

24      142.  Philadelphia is informed and believes, and thereon alleges that the
25  limits of liability of $3 million of the Philadelphia Policy are insufficient to satisfy
26  all of the competing demands for Policy proceeds, including proceeds for the
27  funding of defense costs for the insureds (Defendants LA Payroll, Tovmas
28  Grigoryan, Dmitri Paiu and Gene Munoz) against the actions identified in

1   paragraphs 134 to 138 above, and for the claims by the Defendants that are former
2   clients of LA Payroll.

3       143.   Because the competing demands for the proceeds of the Philadelphia
4   Policy appear to exceed the remaining limits of liability of $3 million, and because
5   Philadelphia is unable to determine which of the former LA Payroll client
6   Defendants should be entitled to the proceeds of the Philadelphia Policy,
7   Philadelphia requests that this Court adjudge, declare and/or decree:

8           (a)   That an order be issued requiring the former LA Payroll client
9              Defendants to interplead their claims for proceeds from the
10             Philadelphia Policy;

11          (b)   That an order be issued dismissing Philadelphia with prejudice
12             from this action and discharging Philadelphia from any liability
13             to Defendants with respect to the Philadelphia Policy or its
14             proceeds;

15          (c)   That an order be issued permanently enjoining and restraining
16             each of the Defendants from instituting or prosecuting any
17             action against Philadelphia in connection with the Philadelphia
18             Policy and its proceeds; and

19          (d)   Granting such other and further relief as the Court may deem
20             proper.

21  DATED:  April 10, 2014          SEDGWICK LLP
22
23                 By: _____
24                 Brian D. Harrison
                                    Veena A. Mitchell
25                                  Attorneys for Plaintiff
                                    PHILADELPHIA INDEMNITY INSURANCE
26                                  COMPANY
27
28

# EXHIBIT A

# EXHIBIT A

| NO. | DEFENDANTS FORMER CLIENTS OF LA PAYROLL | AMOUNT[1] |
|---|---|---|
| 1 | 1212 WEST DBA METRO WEST APARTMENTS | $2,355.00 |
| 2 | 1770 EAST COLORADO INC. | $42,540.64 |
| 3 | 8025 SEPULVEDA LLC | $34,025.59 |
| 4 | ACQUI CORP. DBA ORANGE CLEANERS | $8,049.00 |
| 5 | ACT ONE INC. | $8,886.06 |
| 6 | ADALTA INC. | $13,059.11 |
| 7 | ALL CITY EMPLOYEES BENEFITS SERVICE ASSOCIATION | $37,493.52 |
| 8 | AMERICAN DEVELOPMENT CORPORATION | $21,939.23 |
| 9 | ANGELO MARCIULIANO DBA ANGELO'S ITALIAN DELI | $6,953.00 |
| 10 | ARISTROCRAT PRODUCTS INC. | $10,365.34 |
| 11 | AWFMEX INC. | $6,317.00 |
| 12 | BABAK ELIA DARDASHTI D.D.S. INC. DBA BRIGHTER DENTAL | $10,353.50 |
| 13 | BARBA DENTAL CORPORATION | $60,000.00 |
| 14 | BEACHWOOD HOUSING PARTNERS LTD | $739.00 |
| 15 | BEVERLY HILLS REJUVENATION CENTER INC. | $66,108.00 |
| 16 | BEVERLY HILLS REJUVENATION MEDICAL ASSOCIATES INC. | $76,122.00 |
| 17 | CANN CONSULTING LLC | $12,806.95 |
| 18 | C.A.R.E. FERTILITY | $86,446.46 |
| 19 | CARE FERTILITY SURGERY CENTER INC. | $12,056.08 |
| 20 | CCS LIMITED LIABILITY COMPANY DBA EURO PANE BAKERY | $97,767.56 |
| 21 | CENTERPOINTE CHURCH DBA CENTERPOINTE MINISTRIES AND THE LAMB'S FELLOWSHIP | $70,132.72 |
| 22 | CHARLES WEST DBA GO WEST AND GO WEST CONSTRUCTION | $6,043.00 |
| 23 | CHASE PARAGON ASSOCIATES INC. DBA LES DELICES | $6,515.53 |
| 24 | CHILDREN IN MOTION LLC DBA MY GYM | $53,169.78 |
| 25 | CYBERQUEST COMPUTERS INC. | $5,607.51 |
| 26 | DANIEL SUKLJA DBA POSTAL ANNEX NO. 102 | $406.32 |
| 27 | DMC ENGINEERING INC. | $11,545.00 |
| 28 | DP ALES INC. | $32,106.17 |
| 29 | DPA INVESTMENTS INC. DBA VAGABOND INN HOTEL CIRCLE | $57,410.20 |
| 30 | DPA LIMITED CO. | $31,898.60 |
| 31 | EGGY LLC | $1,851.77 |
| 32 | EL CAJON INVESTMENTS INC. DBA RELAX INN & SUITES | $11,372.33 |
| 33 | FARMERS DAUGHTER HOTEL GROUP | -- |
| 34 | FENTON & NELSON LLP | $259,575.54 |
| 35 | FERTILITYTIES | $28,754.21 |
| 36 | FRANCISCO GUTIERREZ DBA LATINOS UNITED LEARNING CENTER | $5,694.18 |
| 37 | GENESSY MANAGEMENT AND DEVELOPMENT LLC | $184,949.00 |

[1] This represents the amount of claimed delinquent federal and/or state employment taxes, assessed interest and penalties.

| NO. | DEFENDANTS FORMER CLIENTS OF LA PAYROLL | AMOUNT |
|-----|------------------------------------------|--------|
| 38 | GERALD HART STANLEY SWARTZ IRV DBA DESERT VIEW APARTMENTS | $3,184.31 |
| 39 | GLASSPLAX INC. | $5,655.66 |
| 40 | GLB REALCORP | $8,984.10 |
| 41 | HOLLYWOOD WEST TENANT ACTION COMMITTEE DBA HOLLYWOOD WEST APARTMENTS | $7,188.00 |
| 42 | HOLTZ CONSTRUCTION INC. | $15,624.00 |
| 43 | HUNDAL MEDICAL CORPORATION | $30,053.34 |
| 44 | IMAGE ONE DBA PRINTING & MARKETING GROUP | $2,474.65 |
| 45 | J O ARMOR INVESTMENTS | $11,166.00 |
| 46 | J. WON CORPORATION | $25,539.70 |
| 47 | JEFF LEE & ASSOCIATES INC. DBA RIVIERA APARTMENTS | $8,314.37 |
| 48 | JESUS GALINDO DBA M&J TRUCK AND DELIVERY SERVICES | $14,242.39 |
| 49 | JOSEPH & GALINA SAMUEL DBA BEL AIR GUEST HOME | -- |
| 50 | JUAN C. ANAYA DBA TAQUERIA LOS ANAYA | $11,885.65 |
| 51 | JUPITER HOLDINGS LLC DBA APHETA FAMILY OFFICE | $35,000.00 |
| 52 | LA REINA BY BHANSALI INC. | $19,494.64 |
| 53 | LA VOZ DEL IMMIGRANTE MULTI-SERVICES LLC | -- |
| 54 | LAWRENCE WARD DBA LAWRENCE'S PERSONAL TOUCH | $632.68 |
| 55 | LOGO JOE'S INC. | $15,099.61 |
| 56 | LONG BEACH AFFORDABLE HOUSING COALITION INC. | $17,069.00 |
| 57 | LOS ANAYA INC. | $13,716.00 |
| 58 | LOS ANGELES STRENGTH AND CONDITIONING LLC | $1,437.31 |
| 59 | MADISON ET CIE INC. | $235,005.48 |
| 60 | MEHRAN COMPANY L.L.C. | $85,835.58 |
| 61 | MGC PROJECT MANAGEMENT LLC | $82,604.50 |
| 62 | MI ILLUSION RESTAURANT INC. | $1,615.72 |
| 63 | MICHAEL OKUN | $4,776.00 |
| 64 | MISSION BAY HOSPITALITY INC. | $32,330.17 |
| 65 | NATHA ASSOC. INC. | $49,481.96 |
| 66 | NEW YORK CLINICAL TRIALS | $12,461.57 |
| 67 | PACIFIC COAST LODGING INC. DBA HOWARD JOHNSON | $21,253.92 |
| 68 | PALOMA VALLEY MATERIALS INC. | $2,373.05 |
| 69 | PARADIGM TREATMENT CENTERS INC. | $18,860.73 |
| 70 | PENMAR MANAGEMENT & FINANCE INCORPORATED | $23,486.03 |
| 71 | PICA & SULLIVAN ARCHITECTS LIMITED | $74,176.65 |
| 72 | POINT LOMA INVESTMENTS DBA POINT LOMA INN AND SUITES | $4,457.30 |
| 73 | PS PATEL PROFESSIONAL DENTAL CORP. | -- |
| 74 | PSYCH ME LLC | $10,380.69 |
| 75 | PURITY SALON LLC DBA SALON PURE | $16,596.41 |
| 76 | RADIANT PICTURES INC. | $121,370.13 |
| 77 | RDG WOODWINDS INC. | $54,688.43 |
| 78 | RENNE CLAIRE INC. | $263,721.93 |
| 79 | RISING MOON ENTERPRISES INC. | -- |
| 80 | ROGER GIMBEL PRODUCTIONS INC. | $3,556.36 |

2

| NO. | DEFENDANTS FORMER CLIENTS OF LA PAYROLL | AMOUNT |
|---|---|---|
| 81 | RON ELLIS RACING STABLE | $80,000.00 |
| 82 | ROUGH TRADE GEAR INC. | $25,487.36 |
| 83 | SANTA CLARA INVESTMENTS INC. DBA VAGABOND INN SANTA CLARA | $31,500.75 |
| 84 | SEPULVEDA REHABILITATION CENTER LLC | $14,085.29 |
| 85 | SHANE DINSDALE DBA S D PAINTING | $3,960.55 |
| 86 | SHEILA INC. | -- |
| 87 | SHERIDAN CHIROPRACTIC INC. | $64,198.10 |
| 88 | SMOG STOP SHOP INC. | $9,932.87 |
| 89 | SOCCER AND SOCCER INC. | $1,715.76 |
| 90 | SOCCER INTERNATIONAL INC. | $665.54 |
| 91 | STEVEN DRISS INSURANCE AGENCY INC. | $1,089.42 |
| 92 | STEVEN SONG DESIGN LAB LLC | $4,929.09 |
| 93 | STOVER SEED CO. | $247,821.92 |
| 94 | STRIVE FOUNDATION | $15,000.00 |
| 95 | SWA INVESTMENT LLC | $1,431.57 |
| 96 | TABESH CORPORATION DBA $99 PC REPAIR CENTER | $17,071.81 |
| 97 | TAMAYO PRODUCE INC. | $70,868.94 |
| 98 | TART RESTAURANT | -- |
| 99 | TEMECULA VALLEY SHEET METAL INC. | $66,273.92 |
| 100 | THE COMPLIANCE INSTITUTE LLC | $112,669.61 |
| 101 | THE FALLBROOK GROUP LLC | -- |
| 102 | THE HAZELTINE GROUP LLC | -- |
| 103 | THE LONG BEACH GROUP LLC | -- |
| 104 | THE WASHINGTON GROUP LLC | -- |
| 105 | THIRD STREET ENTERPRISES LLC DBA AMARONE KITCHEN & WINE | $15,080.74 |
| 106 | TORO STONEWORKS INC. | $681.96 |
| 107 | TOTAL BILLING AND CONSULTING SERVICES INC. | $49,230.00 |
| 108 | TRAVEL LIKE A ROCK STAR INC. | $58,642.58 |
| 109 | VINCENT JOSE AVALOS DBA YOUR CITY TERMITE & PEST MANAGEMENT | $7,031.06 |
| 110 | WEST COAST INVESTMENTS INC. | $23,940.72 |
| 111 | WSR PUBLISHING INC. DBA WIDESCREEN REVIEW | $15,057.81 |
| 112 | WITH GOD ALL THINGS ARE POSSIBLE DBA ALL THINGS POSSIBLE MINISTRIES | $48,000.00 |
| | **TOTAL** | **$3,733,576.29** |

# EXHIBIT B



**PHILADELPHIA**
**INSURANCE COMPANIES**

A Member of the Tokio Marine Group

One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
610.617.7900 Fax 610.617.7940
PHLY.com

## Philadelphia Indemnity Insurance Company
## COMMON POLICY DECLARATIONS

**Policy Number:** PHSD813456

**Named Insured and Mailing Address:**
LA Payroll
5820 Wilshire Blvd # 301
Los Angeles, CA 90036-4547

**Producer:** 2197
E.L.M. INSURANCE BROKERS, INC.
PO Box 80578
San Diego, CA 92138

**Policy Period From:** 01/23/2013 **To:** 01/23/2014

at 12:01 A.M. Standard Time at your mailing
address shown above.

**Business Description:** Accounting Firm

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS
INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

|  | **PREMIUM** |
|---|---|
| Commercial Property Coverage Part | |
| Commercial General Liability Coverage Part | |
| Commercial Crime Coverage Part | |
| Commercial Inland Marine Coverage Part | |
| Commercial Auto Coverage Part | |
| Businessowners | |
| Workers Compensation | |
| Accountants | 3,111.00 |

| | Total | $ 3,111.00 |
|---|---|---|

**FORM (S) AND ENDORSEMENT (S) MADE A PART OF THIS POLICY AT THE TIME OF ISSUE**
**Refer To Forms Schedule**

*Omits applicable Forms and Endorsements if shown in specific Coverage Part/Coverage Form Declarations

CPD- PIIC (01/07)

Countersignature Date

Authorized Representative

Philadelphia Indemnity Insurance Company

Form Schedule – Policy

**Policy Number:** PHSD813456

Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue:

| Form | Edition | Description |
|------|---------|-------------|
| Recurring Payment Flyer | 1212 | Recurring Payment Flyer |
| CSNotice-1 | 1011 | Making Things Easier |
| BJP-190-1 | 1298 | Commercial Lines Policy Jacket |
| LAH-Notice | 0211 | Policyholder Notice (Loss Assistance Hotline) |
| CPD-PIIC | 0107 | Common Policy Declarations |
| PP-0701 | 0701 | Privacy Policy Notice |
| IL0985 | 0108 | Disclosure Pursuant to Terrorism Risk Ins Act of 2002 |

PI-ACT-1 (11-97)



PHILADELPHIA
INSURANCE COMPANIES

A Member of the Tokio Marine Group

One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
610.617.7900 Fax 610.617.7940
PHLY.com

# *ACCOUNTANTS PROFESSIONAL LIABILITY INSURANCE POLICY*

### Philadelphia Indemnity Insurance Company

DECLARATIONS

Policy Number: PHSD813456

NOTICE: EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THIS POLICY IS WRITTEN ON A CLAIMS MADE BASIS AND COVERS ONLY THOSE CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED AS DEFENSE COSTS. PLEASE READ CAREFULLY.

Item 1.     NAMED INSURED and Address:
            LA Payroll
            5820 Wilshire Blvd # 301
            Los Angeles, CA 90036-4547

| Item 2. | Limits of Liability: | (A) $ | 3,000,000 | each CLAIM, including CLAIMS EXPENSE |
|---|---|---|---|---|
| | | (B) $ | 3,000,000 | Annual Aggregate including CLAIMS EXPENSE |
| Item 3. | Deductible: | $ | 5,000 | Deductible per CLAIM |
| Item 4. | POLICY PERIOD: | From: 01/23/2013 To: 01/23/2014 (12:01 A.M. local time at the address shown in Item 1.) | | |
| Item 5. | Premium: | $ | 3,111.00 | |
| Item 6. | Retroactive Date: | 01/23/2012 | | |

Endorsements: Per Schedule Attached

In witness whereof, the Insurer issuing this Policy has caused this Policy to be signed by its authorized officers, but it shall not be valid unless also signed by the duly authorized representative of the Insurer.

_____
:ive

_____
Countersignature

_____
Countersignature Date

Philadelphia Indemnity Insurance Company

Form Schedule – Accountants

**Policy Number:** PHSD813456

Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue:

| Form | Edition | Description |
|------|---------|-------------|
| PI-ACT-1 | 1197 | Accountants Professional Liability Insurance Policy |
| PI-ACT-10 | 1197 | Claim Expense in Addition to Limit of Liability |
| PI-ACT-12 | 1197 | Aggregate Deductible Endorsement |
| PI-ACT-19 | 1197 | Knowledge of Wrongful Act Exclusion |
| PI-ACT-20 | 1197 | Prior and Pending Litigation Endorsement |
| PI-ACT-21 | 1197 | Retroactive Date Endorsement |
| PI-ACT-33 | 0804 | Personal Financial Planner Extension |
| PI-ACT-1954 | 1197 | Accountants Professional Liability Insurance Policy |
| PI-ARB-1 | 0403 | Binding Arbitration |
| PI-BELL-1 | 1109 | Bell Endorsement |
| PI-CME-1 | 1009 | Crisis Management Enhancement Endorsement |
| PI-MANU-1 | 0100 | PROFESSIONAL SERVICES EXTENSION |
| PI-MANU-1 | 0100 | RELIANCE ON ANOTHER INSURANCE CARRIERS APPLICATION ENDORSEMENT |
| PI-PL-CA | 0198 | California Amendatory Endorsement |

PP-0701. 07-01

# Philadelphia Indemnity Insurance Company

## PRIVACY POLICY NOTICE

Philadelphia Indemnity Insurance Company

The ____ Philadelphia Indemnity Insurance Company _____ values your privacy and we are committed to protecting personal information that we collect during the course of our business relationship.

The collection, use and disclosure of certain nonpublic personal information are regulated by law.

This notice is for your information only and requires no action on your part. It will inform you about the types of information we collect and how it may be disclosed. This does not reflect a change in the way we do business or handle your information.

### Information We Collect:

We collect personal information about you from the following sources:
- Applications or other forms such as claims forms or underwriting questionnaires completed by you;
- Information about your transactions with us, our affiliates or others; and
- Depending on the type of transaction you are conducting with us, information may be collected from consumer reporting agencies; health care providers, employers and other third parties.

### Information We Disclose:

We will only disclose the information described above, as permitted by law, to our affiliates and non-affiliated third parties when necessary to conduct our normal business activities.

For example, we may make disclosures to the following types of third parties:
- Your agent or broker;
- Parties who perform a business, professional or insurance function for our company, including our reinsurance companies;
- Independent claims adjusters, investigators, other insurers, medical care institutions and attorneys who need the information to investigate, defend or settle a claim involving you;
- Insurance regulatory agencies in connection with the regulation of our business; and
- Lienholders, mortgagees, lessors or other persons shown on our records as having legal or beneficial interest in your policy.

We do not sell your information to others for marketing purposes.
We do not disclose the personal information of persons who have ceased to be our customers.

### Protection of Information:

The ____ Philadelphia Indemnity Insurance Company _____ maintains physical, electronic and procedural safeguards that comply with state and federal regulations to protect the confidentiality of your personal information. We also limit employee access to personally identifiable information to those with a business reason for knowing such information.

### How to Contact Us:

Feel free to call or write to us for additional information.

Philadelphia Indemnity Insurance Company
One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
(877)-438-7459

POLICY NUMBER: PHSD813456

IL 09 85 01 08

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE**

**Terrorism Premium (Certified Acts) $** 0

**This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(s):**

**Additional information, if any, concerning the terrorism premium:**

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

## A. Disclosure Of Premium

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

## B. Disclosure Of Federal Participation In Payment Of Terrorism Losses

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

## C. Cap On Insurer Participation In Payment Of Terrorism Losses

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© ISO Properties, Inc., 2007

□

PI-ACT-10 (11-97)

## **THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## **CLAIM EXPENSE IN ADDITION TO LIMIT OF LIABILITY**

This endorsement modifies insurance provided under the following:

### **ACCOUNTANTS PROFESSIONAL LIABILITY POLICY**

In consideration of the premium paid, it is agreed that this policy is amended as follows:

CLAIMS EXPENSES shall apply in addition to the Limit of Liability. The Company's maximum aggregate liability for all CLAIMS EXPENSES arising out of all CLAIMS made during the POLICY PERIOD shall be the Limit of Liability stated in the Declarations.

All other terms and conditions of this Policy remain unchanged

PI-ACT-12 (11-97)

## **THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**.

# AGGREGATE DEDUCTIBLE

This endorsement modifies insurance provided under the following:

ACCOUNTANTS PROFESSIONAL LIABILITY POLICY

In consideration of the premium paid, it is agreed that the Policy is amended as follows:

Item 3. of the Declarations, Deductible, is replaced in its entirety by the following:

3. DEDUCTIBLE

$ 5,000     aggregate

For the purposes of this endorsement, the Limits of Liability and Deductible Section, is amended to include the following:

> The maximum the NAMED INSURED shall pay for all CLAIMS and CLAIM EXPENSES shall not exceed the amount stated as "aggregate" in Item 3 above.

All other terms and conditions of this Policy remain unchanged.

PI-ACT-19 (11-97)

## **THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**.

# KNOWLEDGE OF WRONGFUL ACT EXCLUSION

This endorsement modifies insurance provided under the following:

ACCOUNTANTS PROFESSIONAL LIABILITY POLICY

In consideration of the premium paid, it is agreed that this Policy does not apply:

To any WRONGFUL ACT committed by the NAMED INSURED with the knowledge that it was a WRONGFUL ACT.

All other terms and conditions of this Policy remain unchanged.

PI-ACT-20 (11-97)

## **THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# **PRIOR AND PENDING LITIGATION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

ACCOUNTANTS PROFESSIONAL LIABILITY POLICY

In consideration of the premium paid, it is hereby understood and agreed that the Company shall not be obligated to defend or indemnify an Insured for, and this insurance does not apply:

To any CLAIM based upon or arising out of any demand, suit or proceeding pending, or order, decree, settlement or judgment entered against the NAMED INSURED as of 01/23/2012 , or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation.

All other terms and conditions of this Policy remain unchanged.

PI-ACT-21 (11-97)

## **THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RETROACTIVE DATE ENDORSEMENT

This endorsement modifies insurance provided under the following:

ACCOUNTANTS PROFESSIONAL LIABILITY POLICY

In consideration of the premium paid, it is agreed that this Policy shall not apply to any CLAIM made against the NAMED INSURED based upon, arising out of, or in any way involving a WRONGFUL ACT committed, or alleged to have been committed prior to  01/23/2012  .

All other terms and conditions of this Policy remain unchanged.

PI-ACT-33 (8/04)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PERSONAL FINANCIAL PLANNER EXTENSION

This endorsement modifies insurance provided under the following:

ACCOUNTANTS PROFESSIONAL LIABILITY

In consideration of premium paid:

**DEFINITIONS**, part X (definition of **PROFESSIONAL SERVICES**) will also include personal financial planning.  Personal financial planning does not include services rendered as a security broker-dealer, nor does it include the direct sale of any investment.

PI-ACT-1954(11-97)

# ACCOUNTANTS PROFESSIONAL LIABILITY INSURANCE POLICY

## THIS IS A CLAIMS MADE AND REPORTED POLICY.  PLEASE READ IT CAREFULLY.

In consideration of the payment of the premium and in reliance upon the statements in the application and supplements attached hereto and made a part hereof, and subject to all terms of the policy, the Company agrees with the NAMED INSURED as follows:

### INSURING AGREEMENTS

### I.    COVERAGE – PROFESSIONAL LIABILITY

The Company will pay on behalf of the INSUREDS those sums in excess of the deductible which the INSUREDS become legally obligated to pay as DAMAGES as a result of CLAIMS first made against the INSUREDS by reason of a negligent act, error or omission in the performance of PROFESSIONAL SERVICES, provided the CLAIM is first made during the POLICY PERIOD and written report of the CLAIM is received by the Company during the POLICY PERIOD or within sixty (60) days thereafter.

### II.   DEFENSE, INVESTIGATION AND SETTLEMENT OF CLAMS

As respects such CLAIMS which are covered by this policy, the Company shall:

A.    have the right and duty to defend, including selection of counsel and arbitrators, in any INSURED'S name and on any INSURED'S behalf any CLAIM for DAMAGES against any INSURED, even if such CLAIM is groundless, false or fraudulent and shall have the right to make such investigation, negotiation and settlement, subject to II.B. below, of any CLAIM as it deems expedient;

B.    not settle any CLAIM without the written consent of the NAMED INSURED which consent shall not be unreasonably withheld.  If, however the NAMED INSURED refuses to consent to a settlement recommended by the Company and elects to contest the CLAIM or continue legal proceedings in connection with such CLAIM, the Company's liability for the CLAIM shall not exceed the amount for which the CLAIM could have been settled, including CLAIMS EXPENSES up to the date of such refusal, or the applicable limits of liability, whichever is less;

C.    reimburse up to $500 to each INSURED for each day or part thereof for his or her attendance at the Company's request at trial, court-imposed hearing, settlement conference, mediation or arbitration proceeding involving a CLAIM, but  the total amount so payable shall not exceed $10,000 per CLAIM.  Such payments shall be based upon 50% of the normal hourly billing rates for each INSURED.  The deductible shall not apply to this provision, however, any payments made by the Company under this provision will be included within the applicable limit of liability and not in addition thereto.

The Company shall not be obligated to pay any DAMAGES or defend or continue to defend any CLAIM after the limit of the Company's liability has been exhausted by payment of DAMAGES and/or CLAIMS EXPENSES, or by deposit of sums equal to the applicable limits of liability in a court having jurisdiction.

PI-ACT-1954(11-97)

**III.    DISCIPLINARY PROCEEDINGS**

If, during the POLICY PERIOD, a DISCIPLINARY PROCEEDING  is commenced against any INSURED, by reason of any negligent act, error or omission in the performance of PROFESSIONAL SERVICES for others occurring on or after the RETROACTVE DATE, if any, and the INSURED reports the alleged negligent act, error or omission to the Company during the POLICY PERIOD, the Company will reimburse the INSURED for reasonable attorney fees, costs and expenses incurred in responding to such DISCIPLINARY PROCEEDING.  The maximum amount payable, regardless of the number of DISCIPLINARY PROCEEDINGS or the number of INSUREDS, shall be $10,000 per POLICY PERIOD.  The deductible shall not apply to this provision, however, any payments made by the Company under this provision will be included within the applicable limit of liability and not in addition thereto.  The Company shall not be obligated to defend, or pay any fine, penalty or award resulting from any DISCIPLINARY PROCEEDING.

**IV.    REPORTING OF POTENTIAL CLAIMS**

If, during the POLICY PERIOD, any INSURED first becomes aware of a potential CLAIM (i.e., any act, error or omission which might reasonably give rise to a CLAIM against any INSURED under this policy) and the INSURED gives immediate written notice of such act, error or omission to the Company during the POLICY PERIOD, any CLAIMS subsequently made against any INSURED by reason of that act, error or omission shall be considered to have been made during the POLICY PERIOD.

Written notice of a potential CLAIM shall include:

A.    a description of the specific act, error or omission including the date(s) thereof; and

B.    the injury or damage that could reasonably result therefrom; and

C.    the date and circumstances by which any INSURED became aware of the act, error or omission.

**V.    TERRITORY**

This policy applies to negligent acts, errors or omissions that occur anywhere in the world provided the CLAIM is made and suit or arbitration proceedings are brought against any INSURED in the United States of America, its territories or possessions or Canada.

**DEFINITIONS**

**I.    "CLAIM" MEANS:** a demand made upon any INSURED for DAMAGES, including, but not limited to, service of suit or institution of arbitration proceedings against any INSURED.

All CLAIMS arising out of the same act, error or omission, or acts, errors or omissions which are logically or causally connected in any way shall be deemed as a single CLAIM. All such CLAIMS whenever made shall be considered first made on the date on which the earliest CLAIM arising out of such act, error or omission was first made and all such CLAIMS are subject to the same limits of liability and deductible.

**II.    "CLAIMS EXPENSES" MEANS:**

A.    fees charged by any Lawyer designated by the Company to defend the interests of any INSURED; and

B.    if authorized by the Company, all other reasonable fees, costs and expenses resulting from the investigation, adjustment, defense or appeal of any CLAIM, including but not limited to:

    1.    all costs taxed against the INSURED and post judgment interest on the portion of any judgment for which the Company is liable under this policy until the Company has tendered or deposited in court or otherwise such judgment amount for which the company is liable.

    2.    appeal bonds in an amount not to exceed the Company's limit of liability. The Company shall have no obligation to apply for, or furnish such bonds.

CLAIMS EXPENSES shall not include salaries and expenses of regular employees or officials of the Company or any INSURED.

**III.**   **"DAMAGES" MEANS:** monetary compensation for past harms or injuries, provided always that DAMAGES shall not include:

A.    punitive or exemplary damages; or

B.    sanctions, fees, fines or penalties imposed on any INSURED; or

C.    the multiplied portion of any multiplied damage award; or

D.    fees or other consideration paid to any INSURED; or

E.    liquidated damages as provided under a contract or statute.

**IV.**   **"DISCIPLINARY PROCEEDING" MEANS:** any proceeding by a regulatory or disciplinary official or agency to investigate charges made by a client or former client alleging professional misconduct in rendering or failing to render PROFESSIONAL SERVICES.

**V.**   **"EXECUTOR" MEANS:** the person appointed by a testator in his or her will to carry out the directions and requests in the will, and to dispose of the property according to the testamentary provisions of the will.

**VI.**   **"INSURED"MEANS:**

A.    the NAMED INSURED;

B.    any PREDECESSOR FIRM OR SUCCESSOR FIRM,

C.    any past or present partner, officer, director, stockholder or employee of the NAMED INSURED or entity specified in Item VI.B. above, but only as respects PROFESSIONAL SERVICES rendered on behalf of the NAMED INSURED, or any PREDECESSOR FIRM;

D.    any accountant or accounting firm while performing PROFESSIONAL SERVICES for, and under contract with the NAMED INSURED, PREDECESSOR FIRM or SUCCESSOR FIRM;

E.    the heirs, executors, administrators and legal representatives of any INSURED in the event of any INSURED'S death, incapacity or bankruptcy, but only as respects PROFESSIONAL SERVICES rendered prior to such INSURED'S death, incapacity or bankruptcy and only to the extent that such INSURED would otherwise be covered by this policy.

**VII.** **"NAMED INSURED"MEANS:** the person or entity stated in Item A. of the Declarations.

**VIII.** **"POLICY PERIOD" MEANS:** the period from the effective date of this policy to the expiration date as set forth in the Declarations or earlier termination date, if any, of this policy.

**IX.** **"PREDECESSOR FIRM" MEANS:** an accounting firm or practice, some or all of whose principals, owners, partners or officers have joined the NAMED INSURED, provided such individuals were responsible for producing in excess of 50% of the prior firm's annual gross billings and such billings have been assigned or transferred to the NAMED INSURED.

**X.** **"PROFESSIONAL SERVICES" MEANS:**

A. services performed or advice given by any INSURED to others for a fee or otherwise in the conduct of the INSURED'S practice as an accountant; including without limitation, duties performed or advices given in connection with the American Institute of Certified Public Accountants or any state society of certified public accountants;

B. services performed by any INSURED as a notary public;

C. services performed by any INSURED as a TRUSTEE, RECEIVER or EXECUTOR;

D. activities of the INSURED as a member of a formal accreditation, ethics, peer review, licensing board, standards review or similar professional board or committee for the accounting profession. Exclusion F., as it applies to restraint of trade or antitrust violation, shall not apply to these activities;

E. if arising out of A, B,C, or D: libel, slander or invasion of privacy.

**XI.** **"RECEIVER" MEANS:** a person appointed by a court for the purpose of property of a debtor pending an action against him or her whenever there is danger that in the absence of such appointment the property will be lost, removed or injured; or a person who receives, collects, cares for and disposes of the property of another or others in accordance with a written agreement made between persons having interests in such property

**XII.** **"RETROACTIVE DATE" MEANS:** the date, if specified in the Declarations or in any endorsement attached hereto, on or after which any negligent act, error or omission must have occurred in order for CLAIMS arising therefrom to be covered under this policy. CLAIMS arising from any negligent act, error or omission occurring prior to this date are not covered by this policy.

**XIII.** **"SUCCESSOR FIRM" MEANS:** after dissolution of the NAMED INSURED, any accounting firm or practice in which some or all of the principals, owners, officers and/or partners of the NAMED INSURED have joined an existing, or formed a new, accounting firm provided such persons were responsible for producing in excess of 50% of the NAMED INSURED'S annual gross billings at the time of dissolution and such billings have been assigned or transferred to the successor accounting firm; provided this policy does not apply to PROFESSIONAL SERVICES if the SUCCESSOR FIRM is also an INSURED under any similar professional liability or indemnity policy, or would be an INSURED under any such policy but for exhaustion of its limits of liability. This coverage shall terminate on this Policy's expiration date or 90 days from the date of dissolution of the NAMED INSURED, whichever is earlier, unless written notice is given to the Company, together with such information as the Company may request, and the SUCCESSOR FIRM shall pay any additional premium required in the event the Company agrees to continue the policy

**XIV.** **"TRUSTEE" MEANS:** one who holds legal title to property under an express trust agreement to administer the property for the benefit or use of another and who must carry out specific duties with regard to the property.

## EXCLUSIONS

#### This policy does not apply to any CLAIM or DAMAGES arising out of:

A.   (i) mental or emotional injury or distress of any person; or (ii) arising from bodily injury to, or sickness, disease, or death of any person. This exclusion does not apply to mental illness, emotional distress or humiliation caused by libel, slander or invasion of privacy;

B.   any act, error or omission occurring prior to the effective date of this policy if any INSURED at the effective date knew or could have reasonably foreseen that such act, error or omission might be the basis of a CLAIM;

C.   loss of, injury to, or destruction of tangible property or for loss of use thereof. However, this exclusion does not apply to client records which are in the INSURED'S care, custody or control, or over which the INSURED is exercising physical control for any reason;

D.   any INSURED'S activities as an officer, director, partner, joint venture, manager, employee or independent contractor of any company, corporation, operation, organization or association other than the NAMED INSURED;

E.   any dishonest, fraudulent, criminal, malicious or knowingly wrongful or reckless act, error or omission of any INSURED;

F.   any actual or alleged violations of state or federal antitrust, price fixing, restraint-of-trade, copyright or deceptive trade practice laws, rules or regulations;

G.   the alleged certification or acknowledgement by any INSURED, in his or her capacity as a notary public, of a signature on a document which the INSURED did not witness being placed on the document;

H.   any INSURED gaining any personal profit or advantage to which the INSURED was not legally entitled;

I.   PROFESSIONAL SERVICES performed for any trust; estate; organization; corporation; company; partnership; person; operation or entity; other than the NAMED INSURED;

   a.)   to whom any INSURED promoted, solicited or sold securities, real estate or other investments; or

   b.)   for which any INSURED received a fee or commission prohibited by the Rules of Conduct of the American Institute of Certified Public Accountants;

J.   the sale or solicitation for sale of securities, real estate, insurance products, or any other investment by an INSURED. This exclusion does not apply to CLAIMS arising out of the NAMED INSURED'S preparation of pro forma financial statements for public or private offerings;

K.   PROFESSIONAL SERVICES performed pre or post formation in connection with any organization; corporation; company; partnership; joint venture; operation; or entity (other than the NAMED INSURED) while any INSURED was or became an officer, director, partner, manager or holder of more than a 10% equity interest;

L.  any INSURED'S activities as a trustee for any mutual or investment fund or trust, or a trust set up in connection with a pension, profit sharing, or other employee benefit plan subject to ERISA or any similar state law;

M.  conversion, misappropriation or improper commingling of client funds or funds held for the benefit of a client;

N.  any act, error or omission occurring prior to the RETROACTIVE DATE specified in the Declarations or any endorsement;

O.  any DISCIPLINARY PROCEEDINGS except as provided in Insuring Agreement III;

P.  the use, handling, sale, distribution, transport, shipment, dispersal, storage, or disposal of any nuclear, radioactive or fissionable material, or any alleged violation of any environmental statute, regulation, or ordinance with respect to such material;

Q.  the planning, construction, maintenance, operation or use of any nuclear reactor, nuclear waste storage facility or disposal site or any other nuclear facility, or nuclear reaction, nuclear radiation or radioactive contamination, or to any act or condition incidental to the foregoing;

R.  actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any solid, liquid, gaseous, thermal, or aural irritant, pollutant, contaminant, or organism, including, but not limited to noise, lead, smoke, vapors, electromagnetic radiation, soot, fumes, acids, alkalis, chemicals or waste materials (including those that are to be stored, recycled, reconditioned or reclaimed), into or upon land, air, water or property;

S.  the manufacture of, mining of, use of, removal of, or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

Exclusions (E), (H) and (M) do not invalidate this insurance as to any INSURED who did not act with knowledge or consent in the matter to which the exclusion applies.

## LIMITS OF LIABILITY AND DEDUCTIBLE

### I.  LIMIT OF LIABILITY

The limit of liability shall apply in excess of the deductible, CLAIMS EXPENSES and amounts paid in satisfaction of CLAIMS are subject to the applicable limits of liability. The inclusion of more than one INSURED in any CLAIM or the assertion of CLAIMS by more than one person or organization shall not operate to increase the limits of liability and deductible.

All CLAIMS EXPENSES shall first be subtracted from the limits of liability, with the remainder, if any, being the amount available to pay DAMAGES.

The liability of the Company for the combined total of DAMAGES and CLAIMS EXPENSES for each CLAIM shall not exceed the amount stated the Declarations concerning each CLAIM.

Subject to Item C in the Declarations concerning each CLAIM, the liability of the Company for the combined total of DAMAGES and CLAIM EXPENSES shall not exceed the amount stated in the Declarations as "aggregate" for all CLAIMS first made against any INSUREDS during the POLICY PERIOD, and all Extended Reporting Periods, if purchased.

## II.   DEDUCTIBLE

The deductible stated in the Declarations applies to each CLAIM and shall be paid by the NAMED INSURED. The deductible shall be first applied to all CLAIMS EXPENSES with the remainder, if any, then to be applied to DAMAGES. Payment of the deductible or portions thereof shall be made by the NAMED INSURED within thirty (30) days of receipt of demand by the Company.

## III.   CLAIMS EXPENSES

CLAIMS EXPENSES shall be included within the deductible and the limits of liability and not in addition thereto. Such CLAIMS EXPENSES shall reduce the available limit of liability.

## IV.   REIMBURSEMENT TO COMPANY

If the Company has paid any amounts as DAMAGES and/or CLAIMS EXPENSES in satisfaction of any CLAIMS in excess of the applicable limit of liability, or has paid DAMAGES and/or CLAIMS EXPENSES within the amount of applicable deductible, the NAMED INSURED shall be liable to the Company for any and all such amounts and, upon demand, shall pay such amounts to the Company.

### CONDITIONS

## I.   INSURED'S DUTIES PRECEDENT TO COVERAGE

As a condition precedent to the availability of coverage under this policy, an INSURED'S duties in the event of a CLAIM or potential CLAIM are as follows:

A.   If a CLAIM is made against an INSURED, or any INSURED becomes aware of any potential CLAIM in accordance with Insuring Agreement IV, the INSURED must give prompt written notice to the Company, directed to:

B.

Philadelphia Insurance Companies
One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
Attention: Claims Department

Notice shall include every demand, notice, summons or other service of process received by any INSURED.

C.   No INSURED shall, without prior written consent of the Company, make any payment, admit liability, settle CLAIMS, assume any obligation, or agree to arbitration or any method of alternative dispute resolution for which the result is binding upon the INSURED; nor shall the INSURED waive any rights or incur any CLAIMS EXPENSES without the prior written consent of the Company.

## II.   INSURED'S DUTIES SUBSEQUENT TO A CLAIM

A.   All INSUREDS shall cooperate with the Company in the defense, investigation and settlement of any CLAIM. Upon the Company's request, the INSURED shall submit to examination or questioning, attend hearings, depositions and trials and assist in effecting settlements, securing and giving evidence and obtaining the attendance of witnesses in the defense of CLAIMS.

B.   All INSUREDS shall assist the Company in effecting any rights of indemnity, contribution or apportionment available to any INSURED or the Company

## III. LIBERALIZATION

If, during the POLICY PERIOD, the Company adopts revised provisions for this policy form in order to afford, without additional premium, broader insurance to the types of activities covered by this policy, such provisions will apply to this policy, effective when the provision has been approved by the appropriate regulatory authority; and such revision shall apply only to CLAIMS first made, or potential CLAIMS of which the INSURED first became aware after the date of such approval.

## IV. EXTENDED REPORTING PERIOD

If the Company or the NAMED INSURED cancels or non-renews this policy, the NAMED INSURED shall have the right to extend the time for reporting CLAIMS made against any INSURED per the following schedule. The additional premium for the Extended Reporting Period shall be.

12 months for 100% of the policy's annual premium;
24 months for 150% of the policy's annual premium;
36 months for 185% of the policy's annual premium;
60 months for 250% of the policy's annual premium.

If the NAMED INSURED is a sole proprietor and shall cancel or fail to renew the policy due to his or her retirement from active practice as an accountant, and has been continuously insured with Philadelphia Insurance Companies for a minimum of three years, the NAMED INSURED shall also have the right to extend the time for reporting CLAIMS made against any INSURED to an unlimited period for 300% of the policy's annual premium. If the NAMED INSURED is a sole proprietor, and has been continuously insured with Philadelphia Insurance Companies for a minimum of three years, in the event of his or her death or total permanent disability, the Company will waive the premium required for the unlimited period.

If any Extended Reporting Period option is exercised, the coverage shall apply only to CLAIMS otherwise covered by this policy which are first made against any INSURED and reported to the Company in writing during the Extended Reporting Period. Coverage for CLAIMS first made and reported during the Extended Reporting Period applies only to CLAIMS for acts, errors or omissions which took place prior to the end of the POLICY PERIOD and on or after the RETROACTIVE DATE, if any.

This right to purchase the Extended Reporting Endorsement is subject to the following conditions:

A. This Policy was canceled or non-renewed for reasons other than non-payment of premium.

B. Any deductible amounts due to the Company must be paid by the NAMED INSURED.

C. The NAMED INSURED must send written notice to the Company of the intention to purchase the Extended Reporting Endorsement accompanied by the additional premium. Written notice and premium payments must be received by the Company within sixty (60) days after the termination date of the POLICY PERIOD.

D. The Extended Reporting Period is subject to the aggregate limit of liability stated in Item C. of the Declarations, and the aggregate limit of liability shall be reduced by payment by the Company of any CLAIMS EXPENSES and DAMAGES for all claims first made against any INSUREDS during the POLICY PERIOD and the Extended Reporting Period.

E. This option to extend the reporting period does not extend the POLICY PERIOD.

F.     Premium for this option is fully earned when payment is made.

## V.     SUBROGATION

In the event of payment by the Company under this policy, the Company shall be subrogated to all INSURED'S rights of recovery against any person or organization. All INSUREDS shall cooperate with the Company and do whatever is necessary to secure such rights and shall do nothing to prejudice such rights.

## VI.     CHANGES

The terms of this policy cannot be waived or changed except by an endorsement issued to form a part of this policy.

## VII.     ASSIGNMENT

Assignment of interest under this policy shall not bind the Company unless its consent is endorsed hereon.

## VIII.     CANCELLATION

This policy may be canceled by the NAMED INSURED by surrender thereof to the Company or by mailing to the Company written notice stating when thereafter such cancellation shall be effective. If this policy is canceled by the NAMED INSURED, the Company may retain a proportion of the premium greater than pro rata.

This policy may be canceled by the Company by mailing to the NAMED INSURED at the address stated in the Declarations written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective, but this policy may be canceled as aforesaid by not less than ten (10) days notice when the cancellation is due to the NAMED INSURED'S nonpayment of premium. The mailing of notice as aforementioned shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the POLICY PERIOD. If the Company cancels, earned premium shall be computed pro rata.

Delivery of written notice by the Company shall be equivalent to mailing. Premium adjustment may be made at the time cancellation is affected or as soon as is practicable thereafter.

## IX.     OTHER INSURANCE

If there is other insurance applicable to a CLAIM covered by this policy, this policy shall be deemed excess insurance over and above the applicable limits of liability of all such other insurance unless such other insurance is written only as specific excess insurance over the limits of liability provided in this policy.

## X.     ACTION AGAINST THE COMPANY

No action shall lie against the Company unless, as a condition precedent thereto, all INSUREDS shall have fully complied with all the terms of this policy, nor until the amount of the INSUREDS' obligations to pay shall have been finally determined either by judgment against the INSUREDS after any contested trial on the merits or by written agreement of the NAMED INSURED, the claimant and the Company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy.

PI-ACT-1954(11-97)

Nothing contained in this policy shall give any person or organization any right to join the Company as a codefendant in any action against any INSURED to determine any INSURED'S liability.

## XI. ENTIRE AGREEMENT

By acceptance of this policy, all INSUREDS reaffirm as of the effective date of this policy that (a) the statements in the application including all information communicated by the INSURED to the Company, attached hereto and made a part hereof, are all INSUREDS' agreements and representations, (b) this policy is issued in reliance upon the truth and accuracy of such representations and (c) this policy embodies all agreements between all INSUREDS and the Company.

**This policy is not valid unless completed by the attachment of the Declarations signed by an authorized representative of the Company.**

PI-ARB-1 (4/03)

## **THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY..**

# BINDING ARBITRATION

Wherever, used in this endorsement: 1) "we", "us", "our", and "insurer' mean the insurance company which issued this policy; and 2) "you", "your", "named insured", "first named insured", and "insured" mean the Named Corporation, the Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "other insured(s)" means all other persons or entities afforded coverage under this policy.

This endorsement modifies coverage provided under the Coverage Part to which it is attached.

If we and the insured do not agree whether coverage is provided under this Coverage Part for a claim made against the insured, then either party may make a written demand for arbitration.

When this demand is made, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will take place in the county in which the address shown in the Declarations is located. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

All other terms of the policy remain unchanged.

PI-BELL-1 (11/09)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# BELL ENDORSEMENT



PHILADELPHIA
INSURANCE COMPANIES

A Member of the Tokio Marine Group

One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
610.617.7900 Fax 610.617.7940
PHLY.com

Unless otherwise stated herein, the terms, conditions, exclusions and other limitations set forth in this endorsement are solely applicable to coverage afforded by this endorsement, and the policy is amended as follows:

### I.    SCHEDULE OF ADDITIONAL COVERAGES AND LIMITS

The following is a summary of Limits of Liability or Limits of Insurance and/or additional coverages provided by this endorsement.  This endorsement is subject to the provisions of the policy to which it is attached.

| COVERAGE | LIMITS OF INSURANCE |
|---|---|
| Business Travel Accident Benefit | $50,000 |
| Conference Cancellation | $25,000 |
| Donation Assurance | $50,000 |
| Emergency Real Estate Consulting Fee | $50,000 |
| Fundraising Event Blackout | $25,000 |
| Identity Theft Expense | $50,000 |
| Image Restoration and Counseling | $50,000 |
| Key Individual Replacement Expenses | $50,000 |
| Kidnap Expense | $50,000 |
| Political Unrest | $5,000 per employee: $25,000 policy limit |
| Temporary Meeting Space Reimbursement | $25,000 |
| Terrorism Travel Reimbursement | $50,000 |
| Travel Delay Reimbursement | $1,500 |
| Workplace Violence Counseling | $50,000 |

## II. CONDITIONS

### A. Applicability of Coverage

Coverage provided by your policy and any endorsements attached thereto is amended by this endorsement where applicable.

### B. Limits of Liability or Limits of Insurance

1. When coverage is provided by this endorsement and another coverage form or endorsement attached to this policy, the greater limits of liability or limits of insurance will apply. In no instance will multiple limits apply to coverages which may be duplicated within this policy. Additionally, if this policy and any other coverage part or policy issued to you by us, or any company affiliated with us, apply to the same occurrence, offense, wrongful act, accident or loss, the maximum limits of liability or limits of insurance under all such coverage parts or policies combined shall not exceed the highest applicable limits of liability or limits of insurance under any one coverage part or policy.

2. Limits of liability or limits of insurance identified in Section **I. SCHEDULE OF ADDITIONAL COVERAGES AND LIMITS** above are not excess of, but are in addition to the applicable Limits of Liability or Limits of Insurance stated in the Declarations.

### C. Claim Expenses

Coverages provided herein are not applicable to the generation of claim adjustment costs by you; such as fees you may incur by retaining a public adjuster or appraiser

## III. ADDITIONAL COVERAGES

### A. Business Travel Accident Benefit

We will pay a Business Travel Accident Benefit to the insured if a director or officer suffers injury or death while traveling on a common carrier for your business during the policy period.

For the purpose of Business Travel Accident Benefit coverage, injury means:

1. Physical damage to the body caused by violence, fracture, or an accident that results in loss of life not later than one hundred eighty (180) days after the policy expiration, the date of cancellation or the date of non-renewal;

2. Accidental loss of limbs or multiple fingers;

3. Total loss of sight, speech or hearing.

The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

The Business Travel Accident Benefit shall not be payable if the cause of the injury was:

1. An intentional act by the insured;

2. An act of suicide or attempted suicide;

3. An act of war; or

4. A disease process.

## B. Conference Cancellation

We will reimburse the insured for any business-related conference expenses, paid by the insured and not otherwise reimbursed, for a canceled conference that an employee was scheduled to attend. The cancellation must be due directly to a "natural catastrophe" or a "communicable disease" outbreak that forces the cancellation of the conference.

With respect to a conference cancellation claim, it is further agreed as follows:

1. The insured employee must have registered for the conference at least thirty (30) days prior to the cancellation; and

2. The cancellation must be ordered by a local, state or federal Board of Health or other governmental authority having jurisdiction over the location of the conference.

The limit of insurance for this coverage is $25,000 per policy period for all insureds combined. No deductible applies to this coverage.

## C. Donation Assurance

If the insured is a 501(c)(3) status non-profit organization as defined in the United States Internal Revenue Code, we will reimburse the insured for "failed donation claim(s)."

With respect to any "failed donation claim," it is further agreed as follows:

1. The donor must not have been in bankruptcy, nor have filed for bankruptcy or reorganization in the past seven (7) years prior to the time said pledge was made to the insured;

2. For non-cash donations, our payment of a "failed donation claim" shall be based on the fair market value of said non-cash donation at the time of the "failed donation claim";

3. In the case of unemployment or incapacitation of a natural person donor and as a condition of payment of the "failed donation claim":

   a. Neither the natural person donor nor the insured shall have had reason to believe the donor would become unemployed or incapacitated subsequent to the donation date; and

   b. The donor shall be unemployed for at least sixty (60) days prior to a claim being submitted by the insured;

4. No coverage shall be afforded for a written pledge of funds or other measurable, tangible property to the insured dated prior to the policy period; and

5. A donation amount which is to be collected by the insured over more than a twelve (12) month period shall be deemed a single donation.

The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

## D. Emergency Real Estate Consulting Fee

We will reimburse the insured any realtor's fee or real estate consultant's fee necessitated by the insured's need to relocate due to the "unforeseeable destruction" of the insured's "principal location" listed in the Declarations during the policy period. The limit of insurance for this

coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

## E. Fundraising Event Blackout

We will reimburse the insured for "fundraising expenses" that are incurred due to the cancellation of a fundraising event caused by the lack of electric supply resulting in a power outage, provided the fundraising event is not re-scheduled. The fundraising event must have been planned at least thirty (30) days prior to the power outage. The limit of insurance for this coverage is $25,000 per policy period for all insureds combined. No deductible applies to this coverage.

## F. Identity Theft Expense

We will reimburse any present director or officer of the named insured for "identity theft expenses" incurred as the direct result of any "identity theft" first discovered and reported during the policy period; provided that it began to occur subsequent to the effective date of the insured's first policy with us. The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

## G. Image Restoration and Counseling

We will reimburse the insured for expenses incurred for image restoration and counseling arising out of "improper acts" by any natural person.

Covered expenses are limited to:

1. The costs of rehabilitation and counseling for the accused natural person insured, provided the natural person insured is not ultimately found guilty of criminal conduct; this reimbursement to occur after acquittal of the natural person insured;

2. The costs charged by a recruiter or expended on advertising, for replacing an officer as a result of "improper acts"; and

3. The costs of restoring the named insured's reputation and consumer confidence through image consulting.

The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

## H. Key Individual Replacement Expenses

We will pay "key individual replacement expenses" if the Chief Executive Officer or Executive Director suffers an "injury" during the policy period which results in the loss of life during the policy period. The limit of insurance for this coverage is the lesser of $50,000 or ten (10) times the annual premium paid for this policy. No deductible applies to this coverage.

## I. Kidnap Expense

We will pay on behalf of any director or officer of the insured, reasonable fees incurred as a result of the kidnapping of them or their spouse, "domestic partner," parent or child during the policy period. Coverage will not apply to any kidnapping by or at the direction of any present or former family member of the victim.

Reasonable fees will include:

1. Fees and costs of independent negotiators;

2. Interest costs for any loan from a financial institution taken by you to pay a ransom demand or extortion threat;

3. Travel costs and accommodations incurred by the named insured;

4. Reward money paid to an informant which leads to the arrest and conviction of parties responsible for loss covered under this insurance; and

5. Salary, commissions and other financial benefits paid by you to a director or officer. Such compensation applies at the level in effect on the date of the kidnap and ends upon the earliest of:

   a. Up to thirty (30) days after their release, if the director or officer has not yet returned to work;

   b. Discovery of their death;

   c. One hundred twenty (120) days after the last credible evidence following abduction that they are still alive; or

   d. Twelve (12) months after the date of the kidnapping.

The limit of insurance for this coverage is $50,000 each policy period for all insureds combined. No deductible applies to this coverage.

## J. Political Unrest Coverage

We will reimburse any present director, officer, employee or volunteer of the named insured while traveling outside the United States of America for "emergency evacuation expenses" that are incurred as a result of an incident of "political unrest." This "political unrest" must occur during the policy period. No coverage is granted for travel to countries in a state of "political unrest" at the time of departure of the travel. The limit of insurance for this coverage is $5,000 per covered person, subject to a maximum of $25,000 per policy period for all insureds combined. No deductible applies to this coverage.

## K. Temporary Meeting Space Reimbursement

We will reimburse the insured for rental of meeting space which is necessitated by the temporary unavailability of the insured's primary office space due to the failure of a climate control system, or leakage of a hot water heater during the policy period. Coverage will exist only for the renting of temporary meeting space required for meeting with parties who are not insured under this policy. The limit of insurance for this coverage is $25,000 per policy period for all insureds combined. No deductible applies to this coverage.

## L. Terrorism Travel Reimbursement

We will reimburse any present director or officer of the named insured in the event of a "certified act of terrorism" during the policy period which necessitates that he/she incurs "emergency travel expenses." The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

## M. Travel Delay Reimbursement

We will reimburse any present director or officer of the named insured for any "non-reimbursable expenses" they incur as a result of the cancellation of any regularly scheduled business travel on a common carrier  The limit of insurance for this coverage is $1,500 per policy period for all insureds combined.  A seventy-two (72) hour waiting period deductible applies to this coverage.

## N. Workplace Violence Counseling

We will reimburse the insured for emotional counseling expenses incurred directly as a result of a "workplace violence" incident at any of the insured's premises during the policy period.  The emotional counseling expenses incurred must have been for:

1. Your employees who were victims of, or witnesses to the "workplace violence";

2. The spouse, "domestic partner," parents or children of your employees who were victims of, or witnesses to the "workplace violence"; and

3. Any other person or persons who directly witnessed the "workplace violence" incident.

The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

## IV. DEFINITIONS

For the purpose of this endorsement, the following definitions apply:

A. "Certified act of terrorism" means any act so defined under the Terrorism Risk Insurance Act, and its amendments or extensions.

B. "Communicable disease" means an illness, sickness, condition or an interruption or disorder of body functions, systems or organs that is transmissible by an infection or a contagion directly or indirectly through human contact, or contact with human fluids, waste, or similar agent, such as, but not limited to Meningitis, Measles or Legionnaire's Disease.

C. "Domestic partner" means any person who qualifies as a domestic partner under the provisions of any federal, state or local statute or regulation, or under the terms and provisions of any employee benefit or other program established by the named insured.

D. "Emergency evacuation expenses" mean:

1. Additional lodging expenses;

2. Additional transportation costs;

3. The cost of obtaining replacements of lost or stolen travel documents necessary for evacuation from the area of "political unrest"; and

4. Translation services, message transmittals and other communication expenses.

provided that these expenses are not otherwise reimbursable.

E. "Emergency travel expenses" mean:

1. Hotel expenses incurred which directly result from the cancellation of a scheduled transport by a commercial transportation carrier, resulting directly from and within forty-eight (48) hours of a "certified act of terrorism"; and

2. The increased amount incurred which may result from re-scheduling comparable transport, to replace a similarly scheduled transport canceled by a commercial transportation carrier in direct response to a "certified act of terrorism";

provided that these expenses are not otherwise reimbursable.

**F.** "Failed donation claim" means written notice to the insured during the policy period of:

1. The bankruptcy or reorganization of any donor whereby such bankruptcy or reorganization prevents the donor from honoring a prior written pledge of funds or other measurable, tangible property to the insured; or

2. The unemployment or incapacitation of a natural person donor preventing him/her from honoring a prior written pledge of funds or other measurable, tangible property to the insured.

**G.** "Fundraising expenses" mean deposits forfeited and other charges paid by you for catering services, property and equipment rentals and related transport, venue rentals, accommodations (including travel), and entertainment expenses less any deposits or other fees refunded or refundable to you.

**H.** "Identity theft" means the act of knowingly transferring or using, without lawful authority, a means of identification of any director or officer (or spouse or "domestic partner" thereof) of the named insured with the intent to commit, or to aid or abet another to commit, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

**I.** "Identity theft expenses" mean:

1. Costs for notarizing affidavits or similar documents attesting to fraud required by financial institutions or similar credit grantors or credit agencies;

2. Costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors; and

3. Loan application fees for re-applying for a loan or loans when the original application is rejected solely because the lender received incorrect credit information.

**J.** "Improper acts" means any actual or alleged act of:

1. Sexual abuse;

2. Sexual intimacy;

3. Sexual molestation; or

4. Sexual assault;

committed by an insured against any natural person who is not an insured. Such "improper acts" must have been committed by the insured while in his or her capacity as an insured.

**K.** "Injury" whenever used in this endorsement, other than in Section **III. A. Business Travel**,

PI-BELL-1 (11/09)

means any physical damage to the body caused by violence, fracture or an accident.

**L.** "Key individual replacement expenses" mean the following necessary expenses:

    **1.** Costs of advertising the employment position opening;

    **2.** Travel, lodging, meal and entertainment expenses incurred in interviewing job applicants for the employment position opening; and

    **3.** Miscellaneous extra expenses incurred in finding, interviewing and negotiating with the job applicants, including, but not limited to, overtime pay, costs to verify the background and references of the applicants and legal expenses incurred to draw up an employment contract.

**M.** "Natural catastrophe" means hurricane, tornado, earthquake or flood.

**N.** "Non-reimbursable expenses" means the following travel-related expenses incurred after a seventy-two (72) hour waiting period, beginning from the time documented on the proof of cancellation, and for which your director or officer produces a receipt:

    **1.** Meals and lodging;

    **2.** Alternative transportation;

    **3.** Clothing and necessary toiletries; and

    **4.** Emergency prescription and non-prescription drug expenses.

**O.** "Political unrest" means:

    **1.** A short-term condition of disturbance, turmoil or agitation within a foreign country that poses imminent risks to the security of citizens of the United States;

    **2.** A long-term condition of disturbance, turmoil or agitation that makes a foreign country dangerous or unstable for citizens of the United States; or

    **3.** A condition of disturbance, turmoil or agitation in a foreign country that constrains the United States Government's ability to assist citizens of the United States, due to the closure or inaccessibility of an embassy or consulate or because of a reduction of its staff

for which either an alert or travel warning has been issued by the United States Department of State.

**P.** "Principal location" means the headquarters, home office or main location where most business is substantially conducted.

**Q.** "Unforeseeable destruction" means damage resulting from a "certified act of terrorism," fire, collision or collapse which renders all of the insured's "principal locations" completely unusable.

**R.** "Workplace violence" means any intentional use of or threat to use deadly force by any person with intent to cause harm and that results in bodily "injury" or death of any person while on the insured's premises.

PI-CME-1 (10/09)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CRISIS MANAGEMENT ENHANCEMENT ENDORSEMENT

Unless otherwise stated herein, the terms, conditions, exclusions and other limitations set forth in this endorsement are solely applicable to coverage afforded by this endorsement, and the policy is amended as follows:

Solely for the purpose of this endorsement: 1) The words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. 2) The words "we," "us" and "our" refer to the company providing this insurance.

### I.   SCHEDULE OF ADDITIONAL COVERAGE AND LIMITS

The following is the Limit of Liability provided by this endorsement. This endorsement is subject to the provisions of the policy to which it is attached.

Crisis Management Expense                                               $25,000

### II.   CONDITIONS

#### A.  Applicability of Coverage

Coverage provided by your policy and any endorsements attached thereto is amended by this endorsement where applicable. All other terms and conditions of the policy or coverage part to which this endorsement is attached remain unchanged.

#### B.  Limits of Liability or Limits of Insurance

When coverage is provided by this endorsement and any other coverage form or endorsement attached to this policy, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Liability or Limit of Insurance.

#### C.  Claim Expenses

Coverages provided herein are not applicable to the generation of claim adjustment costs by you; such as fees you may incur by retaining a public adjuster or appraiser.

### III.   ADDITIONAL COVERAGES

**A.**  We will reimburse you for "crisis management emergency response expenses" incurred because of an "incident" giving rise to a "crisis" to which this insurance applies. The amount of such reimbursement is limited as described in Section **II. CONDITIONS, B. Limits of Liability or Limits of Insurance**. No other obligation or liability to pay sums or perform acts or services is covered.

**B.**  We will reimburse only those "crisis management emergency response expenses" which are incurred during the policy period as shown in the Declarations of the policy to which this coverage is attached and reported to us within six (6) months of the date the "crisis" was initiated.

PI-CME-1 (10/09)

## IV.  DEFINITIONS

**A.**  "Crisis" means the public announcement that an "incident" occurred on your premises or at an event sponsored by you.

**B.**  "Crisis management emergency response expenses" mean those expenses incurred for services provided by a "crisis management firm."  However, "crisis management emergency response expenses" shall not include compensation, fees, benefits, overhead, charges or expenses of any insured or any of your employees, nor shall "crisis management emergency response expenses" include any expenses that are payable on your behalf or reimbursable to you under any other valid and collectible insurance.

**C.**  "Crisis management firm" means any service provider you hire that is acceptable to us.  Our consent will not be unreasonably withheld.

**D.**  "Incident" means an accident or other event, including the accidental discharge of pollutants, resulting in death or serious bodily injury to three or more persons.

**E.**  "Serious bodily injury" means any injury to a person that creates a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

PI-MANU-1 (01/00)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

### PROFESSIONAL SERVICES EXTENSION

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

PROFESSIONAL SERVICES EXTENSION

This endorsement modifies insurance provided under the following:

ACCOUNTANTS PROFESSIONAL LIABILITY POLICY

In consideration of the premium paid, it is agreed that the policy is amended as follows:

Professional Services shall include:
Payroll services

All other terms and conditions of this Policy remain unchanged.

PI-MANU-1 (01/00)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

All other terms and conditions of this Policy remain unchanged. This endorsement is part of your Policy and takes effect on the effective date of your policy, unless another effective date is shown below.

_____ _____ _____

_____

Policy:
Effective on and after:
Issued to:
Expiration Date:

_____ _____ _____

_____

PI-ACT-4 (11/97)

All other terms and conditions of this Policy remain unchanged.

PI-MANU-1 (01/00)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

### RELIANCE ON ANOTHER INSURANCE CARRIERS APPLICATION ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

RELIANCE ON ANOTHER INSURANCE CARRIERS APPLICATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

ACCUONTANTS PROFESSIONAL LIABILITY POLICY

In consideration of the premium paid for this Policy, it is agreed that the Company has relied upon the statements in the Travelers (Form Accountants Professional Liability Coverage Application (APL-6000 Ed. 11-08)), including materials attached thereto or otherwise provided to the Company in connection with the underwriting of this Policy, completed by the Applicant Firm and signed and dated on 01/06/2012 by Dmitri Paiu and such application is made a part of this insurance Policy and operates as the Company's own Application.

It is further agreed and understood that Dmitri Paiu is duly authorized and has the power to complete and execute the Application, including any Warranty Statement on behalf of the Applicant Firm and its respective Directors, Officers or other insured persons and declares that the statements set forth in this Application are true.  Applicant Firm also agrees that if the information supplied on this Application changes between the date of this application and the effective date of the insurance, the Application will immediately notify the Company of such changes, and the Company may withdraw or modify any outstanding proposals or quotations and/or authorization or agreement to bind the insurance.

All other terms and conditions of this Policy remain unchanged.

All other terms and conditions of this Policy remain unchanged.

PI-PL-CA (01/98)

**PHILADELPHIA INDEMNITY INSURANCE COMPANY**
**BALA CYNWYD, PA**

## CALIFORNIA AMENDATORY ENDORSEMENT

To be attached to and form a part of all policies written in California.

In consideration of the premium charged, it is understood and agreed that:

The CANCELLATION OR TERMINATION OF POLICY CONDITION is hereby deleted and replaced with the following:

**CANCELLATION AND NON-RENEWAL**

**I.    POLICIES IN EFFECT FOR MORE THAN 60 DAYS**

    **A.**    If this policy has been in effect for more than 60 days, or is a renewal of a policy the Company issued, the Company may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

        **(1)**    Non-payment of premium, including payment due on a prior policy the Company issued and due during the current policy term covering the same risks.

        **(2)**    Discovery of fraud or material misrepresentation by:

            **(a)**    Any Insured or his or her representative in obtaining this insurance; or

            **(b)**    An Insured or the representative of the Insured in pursuing a claim under this policy.

        **(3)**    A judgment by a court or an administrative tribunal that the Insured violated a California or Federal Law, having as one of its necessary elements an act which materially increases any of the risks insured against.

        **(4)**    Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by the Insured or the representative of the Insured, which materially increases any of the risks insured against.

        **(5)**    Failure by the Insured or the Representative of the Insured to implement reasonable loss control requirements, agreed to by the Insured as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

        **(6)**    A determination by the Commissioner of Insurance that the:

            **(a)**    Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

            **(b)**    Continuation of the policy coverage would:

                **i.**    Place us in violation of California law or the laws of the state where the Company is domiciled; or

                **ii.**    Threaten our solvency.

PI-PL-CA (01/98)

    **(7)** A change by the Insured or the Representative of the Insured in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy

**B.** The Company will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, and to the producer of record, at least:

    **(1)** 10 days before the effective date of cancellation if the Company cancelled for a reason listed in paragraph **I.A.(1)** or **(2)**.

    **(2)** 30 days before the effective date of cancellation if the Company cancelled for any other reason listed in paragraph **I.A.**

## II.  NON-RENEWAL

**A.** If the Company decides not to renew this policy, the Company will mail or deliver written notice stating the reason for non-renewal to the first Named Insured shown in the Declarations and to the producer of record, at least:

    **(1)** 45 days, but not more than 120 days, before the expiration or anniversary date, if the aggregate policy premium is more than $10,000; or

    **(2)** 60 days, but not more than 120 days, before the expiration or anniversary date, if the aggregate policy premium is $10,000 or less.

**B.** The Company will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

**C.** The Company is not required to send notice of non-renewal in the following situations:

    **(1)** If the transfer or renewal of a policy, without any changes in terms, conditions, or rates, is between us and a member of our insurance group.

    **(2)** If the policy has been extended for 90 days or less, provided that notice has been given in accordance with paragraph **II.A.**

    **(3)** If the Insured has obtained replacement coverage, or if the first Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

    **(4)** If the policy is for a period of no more than 60 days and the Insured is notified at the time of issuance that it will not be renewed.

    **(5)** If the first Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

    **(6)** If the Company has made a written offer to the first Named Insured, in accordance with the timeframes shown in paragraph **II.A.**, to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

## PHILADELPHIA INDEMNITY INSURANCE COMPANY
1-877-438-7459
ONE BALA PLAZA, SUITE 100
BALA CYNWYD PA 19004

# NOTICE OF NONRENEWAL OF INSURANCE

Named Insured & Mailing Address:

Producer: 0002197

LA PAYROLL
5820 WILSHIRE BLVD # 301
LOS ANGELES CA 90036

E.L.M. INSURANCE BROKERS, INC.
PO BOX 80578
SAN DIEGO CA 92138

Policy No.:  PHSD813456
Type of Policy:  E AND O-OTHER CLAIMS MADE
Date of Expiration:  01/23/2014; 12:01 A.M. Local Time at the mailing address of the Named Insured.

We will not renew this policy when it expires. Your insurance will cease on the Expiration Date shown above.

The reason for nonrenewal is  *Services in which are provided (payroll services) by the Named Insured are no longer eligible under our Accountant's Professional Liability form. Therefore, this policy will be non-renewed. Coverage will be underwritten on the CoverPro (Misc. E&O) form upon the renewal date.*

Producer

E.L.M. INSURANCE BROKERS, INC.
PO BOX 80578
SAN DIEGO CA 92138

Date Mailed:
4th day of November, 2013

*Donna L. Kennedy*

DONNA KENNEDY

CACN9NONE APP
11042013MYNY
Page 1 of 1

# EXHIBIT C

ATTORNEYS AT LAW

333 BUSH STREET   30TH FLOOR   SAN FRANCISCO, CA  94104-2834

*www.sedgwicklaw.com    415.781.7900  phone    415.781.2635  fax*

# Sedgwick LLP

*Martin O'Leary*
*(415) 627-1463*
*martin.oleary@sedgwicklaw.com*

*Lisa M. Henderson*
*(469) 227-4642*
*lisa.henderson@sedgwicklaw.com*

March 14, 2014

*Via Email and Certified Mail, Return Receipt Requested*
Asha Bhansali
Le Reina By Bhansali
606 S. Olive St., Ste. 1950
Los Angeles, CA 90014

|       |               |                        |
|-------|---------------|------------------------|
| Re:   | *Tax Delinquency Claims* |                |
|       | Claimant:     | La Reina By Bhansali    |
|       | Insured:      | LA Payroll              |
|       | Policy No.:   | PHSD813456              |
|       | Claim No.:    | 771614                  |
|       | Our File No.: | 00875-012004            |

Dear Ms. Bhansali:

This law firm represents Philadelphia Indemnity Insurance Company ("Philadelphia") regarding coverage for the claims and lawsuits asserted against LA Payroll and its directors, officers and employees arising out of the alleged failure of LA Payroll to transfer its clients' 3rd and 4th quarter 2013 payroll taxes to the appropriate federal and state taxing authorities (hereinafter referred to as the "Claims"). Many of you have communicated with us and provided documentation relative to amounts paid over to LA Payroll, as well as notices received from the taxing authorities regarding unpaid amounts. Philadelphia very much appreciates your cooperation and your patience as these matters have been sorted out.

We want to advise you of Philadelphia's intended actions. This letter is being sent to all claimants who have been identified to date.

The following is somewhat complicated and we can answer any questions you may have of a general nature, but if you have any legal questions relative to your rights against LA Payroll or its directors, officers or employees, or your rights against Philadelphia, we recommend you obtain independent legal advice, which would be at your own expense.

Philadelphia issued an Accountants Professional Liability Insurance Policy, No. PHSD813456, to LA Payroll for the policy period of January 23, 2013 to January 23, 2014 (herein referred to as the "Policy"). The Policy has a $3,000,000 limit of liability. Philadelphia has not, and is not, taking a position or conceding that coverage is afforded under the Policy for the matters which are the subject of the Claims. Depending

Re: *Tax Delinquency Claims*
Page 2

on the evidence, developments and the nature of the claims made against LA Payroll and its directors, officers and employees, various Policy exclusions or limitations may apply. Philadelphia fully reserves all rights and defenses available to it under the Policy and applicable law.

Notwithstanding the foregoing, Philadelphia will seek to "interplead" the Policy proceeds with the United States District Court in Los Angeles, in order that there may be a fair and equitable distribution of the policy proceeds among all the claimants. This is a process permitted under federal law.

To date, Philadelphia has received communications and/or documentation from a total of 93 former customers of LA Payroll. The aggregate amount of these claims is $2,938,291.16. This figure represents amounts of delinquent federal and/or state employment taxes and assessed interest. It is conceivable that additional claimants will come to light. In addition, Philadelphia has not received loss documentation from all known claimants, so the actual losses may exceed the current total. Accordingly, Philadelphia will seek the protection of federal and state law in order that it's and the claimants' rights are fully protected.

Under the procedure described above, Philadelphia will file a Complaint in Interpleader in court and will deliver a check in the amount of $3,000,000 to the court. Philadelphia will provide you with a copy of this Complaint when filed. You will be named as a defendant. Philadelphia will seek an order from the court exonerating and discharging it from any further obligation or liability under the Policy with respect to the Claims, and acknowledging that the Policy limit has been exhausted. **Your and any Insured's rights under the Policy and applicable law will be affected by this procedure, so you may wish to seek independent legal advice in these regards.** Philadelphia takes no position on what your rights might be against the Insureds following distribution of the Policy proceeds as described herein; we recommend that you seek independent legal advice as to any such matters.

The manner in which the $3,000,000 will be distributed to the claimants is up to the court to decide. However, to assist the court and to assist all of the claimants, Philadelphia will offer to administer a claim and payment recommendation process. It will be up to the court to decide if this process is appropriate, and you may or may not have a right to object and/or offer your opinion in that regard. Philadelphia (again, subject to the court's approval) envisions a process whereby a formal claim form will be sent to each claimant to sign and return, under penalty of perjury, that they have sustained a loss in a specified amount arising from the failure of LA Payroll to pass through to federal and state taxing authorities those amounts withheld for such purposes. Most of you have already provided evidence of amounts withdrawn from your bank accounts and paid over to LA Payroll, as well as copies of notices of tax delinquencies from the federal and/or state government. In some cases, proof of payment of the delinquent taxes and assessed interest to the taxing authorities has been provided. In those situations where documentation appears complete, Philadelphia will not request that you provide duplicate materials. For claimants where documentation may be lacking or there are issues of reconciling the amounts at issue, confirmatory documentation may be required. It is likely that the court will require that efforts be undertaken to locate any additional former customers of LA Payroll who have similar tax deficiencies and to allow them to come forward and make a claim. Consequently, the number of claimants and the amount of the Claims may grow.

Assuming that the aggregate of all customer claims is less than $3,000,000, Philadelphia will recommend that all claimants receive reimbursement from the amount deposited with the court in the full amount of their tax delinquencies and assessed interest. **Philadelphia will not propose that claimants receive any additional amounts, whether it be fines, penalties, costs or attorneys' fees or in any other form.**

Re: *Tax Delinquency Claims*
Page 3

Should there be anything remaining on the policy limit, Philadelphia will request the return of any such funds, in part to compensate it for the costs and attorneys' fees it will incur in the process described above.

Assuming that the aggregate of all customer claims exceeds $3,000,000, Philadelphia will recommend that the $3,000,000 deposited with the court be distributed on a pro-rata basis among all claimants based upon the amounts of their respective tax deficiencies and assessed interest. For example, if total deficiencies and assessed interest equal $4,000,000 and there is only $3,000,000 to distribute, Philadelphia would recommend that all claimants receive 75% of their tax delinquencies and assessed interest. Again, Philadelphia will not propose that claimants receive any additional amounts, whether it be fines, penalties, costs or attorneys' fees or in any other form.

We note again that the above procedure is subject to court approval and objection by affected parties. **It will be the court, and not Philadelphia, that will have the power to grant whatever relief it deems necessary to adjudicate competing claims and to determine the distribution scheme.** Philadelphia nevertheless is hopeful that the court will approve this or a similar process, as it believes this will be an efficient and expedient method of paying out the Policy proceeds. Again, your rights will be impacted by this process and we encourage you to obtain independent legal advice.

Thank you for your consideration of the matters in this letter and your understanding and patience with the process described herein.

The rights of Philadelphia remain fully reserved under the Policy and applicable law.

Very truly yours,

Martin J. O'Leary
Lisa M. Henderson
Sedgwick LLP

# EXHIBIT D

CONFORMED COPY
ORIGINAL FILED
Superior Court Of California
County Of Los Angeles

DEC 3 1 2013

Sherri R. Carter, Executive Officer/Clerk
By: Kristina Vargas, Deputy

1  | MARK J. ROSENBAUM (State Bar No. 167168)
   | WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
2  | 11400 West Olympic Boulevard, 9th Floor
   | Los Angeles, California 90064-1582
3  | Telephone:    (310) 478-4100
   | Facsimile:    (310) 479-1422
4  |
5  | Attorneys for Plaintiffs Fenton & Nelson,
   | LLP and The Compliance Institute, LLC
6  |
7  |
8  |              SUPERIOR COURT OF THE STATE OF CALIFORNIA
9  |                      COUNTY OF LOS ANGELES
10 |

| 11 | FENTON & NELSON, LLP, a California limited liability partnership; THE COMPLIANCE INSTITUTE, LLC, a California limited liability company, | Case No.  B C 5 3 1 8 5 5 |
|----|---|---|
| 12 | | UNLIMITED CIVIL CASE |
| 13 | | **COMPLAINT FOR:** |
| 14 | Plaintiffs, | **(1)  BREACH OF WRITTEN** |
| 15 | vs. | **CONTRACT** |
| | | **(2)  ACCOUNT STATED** |
| 16 | LA PAYROLL, a California corporation; and DOES 1 through 40, inclusive, | **(3)  MONEY RECEIVED** |
| | | **(4)  BREACH OF WRITTEN** |
| 17 | Defendants. | **CONTRACT** |
| | | **(5)  ACCOUNT STATED** |
| 18 | | **(6)  MONEY RECEIVED** |

19 |      Plaintiff alleges as follows:

20 |                **FACTS COMMON TO ALL CAUSES OF ACTION**

21 |      1.      Plaintiff Fenton & Nelson, LLP ("F&N") is a limited liability partnership

22 | and existing under and by virtue of the laws of the State of California and doing business

23 | in the County of Los Angeles, State of California.

24 |      2.      Plaintiff The Compliance Institute, LLC ("TCI") is a limited liability

25 | company duly organized and existing under and by virtue of the laws of the State of

26 | California and doing business in the County of Los Angeles, State of California.

27 |      3.      Plaintiffs are informed and believe that defendant LA Payroll ("LA

28 | PAYROLL") is, and at all times herein mentioned was, a California corporation organized

-1-
COMPLAINT FOR BREACH OF WRITTEN CONTRACT AND RELATED CAUSES OF ACTION

1 | and existing by the virtues of the laws of the State of California and doing business in the
2 | County of Los Angeles, State of California.

3 | 4. The true names and capacities of DOES 1 through 40, inclusive, whether
4 | individual, corporate, associate or otherwise, are unknown to plaintiffs at this time, who
5 | therefore sues said defendants by such fictitious names, and when the true names and
6 | capacities of such defendants are ascertained, plaintiffs will ask leave of Court to amend
7 | this complaint to insert the same.

8 | 5. When referring to "F&N defendants" herein, plaintiffs intend to include LA
9 | PAYROLL and DOES 1 through 20. When referring to "TCI defendants" herein,
10 | plaintiffs intend to include LA PAYROLL and DOES 21 through 40.

11 | 6. Plaintiffs are informed and believe and, on the basis of such information and
12 | belief, allege that each defendant named in this complaint was, at all times herein
13 | mentioned, and now is, the agent and employee of each of the other defendants herein, and
14 | was at all times acting within the course and scope of said agency and employment.
15 | Whenever reference is made to "defendants" herein, it is intended to include LA
16 | PAYROLL, and said DOE defendants.

17 | 7. Defendants agreed to submit to the jurisdiction of any court in the County of
18 | Los Angeles, State of California and have waived any and all objections to jurisdiction and
19 | venue as per the terms of the agreements by and between the parties, discussed in more
20 | detail below.

21 | 8. The obligation sued upon herein is commercial in nature and is not subject to
22 | the provisions of Civil Code Section 2984.4, et seq. or Civil Code Section 1812.10 et seq.
23 | Plaintiffs allege that the obligation sued upon herein was incurred and agreed to be
24 | performed in the County of Los Angeles, State of California.

25 | **FIRST CAUSE OF ACTION**

26 | **(For Breach of Written Contract against F&N Agreement Defendants)**

27 | 9. F&N repeats, realleges, and incorporates herein by this reference each and
28 | every allegation contained in paragraphs 1 through 8, inclusive, as though set forth in full

1536928.1 -2-

1 | herein.

2 |     10.    Within the past four years, F&N and F&N Agreement defendants entered
3 | into a written secured merchant agreement (the "F&N Agreement") whereby F&N retained
4 | F&N Agreement defendants to provide certain payroll services. Under the terms of the
5 | F&N Agreement, F&N would deposit or provide access to F&N Agreement defendants to
6 | use F&N's bank account to pay F&N's payroll, insurance, payroll taxes, etc. (the
7 | "Services"). Pursuant to the F&N Agreement, F&N Agreement defendants would charge
8 | F&N a fee for the services.

9 |     11.    Pursuant to the F&N Agreement, F&N authorized F&N Agreement
10 | defendants to debit F&N's bank accounts by means of an online ACH debit to perform the
11 | Services (e.g., pay payroll, taxes, etc.).

12 |     12.    Initially F&N Agreement defendants met their obligations under the F&N
13 | Agreement and performed the Services. F&N Agreement defendants would deduct all
14 | monies to pay payroll, taxes, etc. from F&N's bank account twice a month (on or about the
15 | sixteenth and last day of each month). However, on or about December 19, 2013, F&N
16 | learned that F&N Agreement defendants had breached the F&N Agreement and not paid
17 | payroll taxes to the State of California or IRS since July 1, 2013 (F&N Agreement
18 | defendants did pay payroll, but not any taxes).

19 |     13.    At all times mentioned herein, F&N has performed all terms, conditions and
20 | covenants of the F&N Agreement. F&N Agreement defendants materially breached the
21 | F&N Agreement in that they have failed and refused, and continue to fail and refuse, to
22 | pay the taxes due.

23 |     14.    As a result of the foregoing, F&N Agreement defendants have breached the
24 | F&N Agreement with F&N and accordingly have defaulted under same, and therefore
25 | F&N has been damaged in the amount of at least $300,000.00 plus interest at the
26 | maximum rate allowed by law.

27 |     15.    The F&N Agreement provides, in part, that, should F&N bring suit against
28 | F&N Agreement defendants to enforce any of the provisions of the F&N Agreement or

1  any of F&N's rights thereunder, F&N Agreement defendants shall pay F&N's reasonable

2  attorney's fees and expenses.  F&N has retained the firm of Wolf, Rifkin, Shapiro,

3  Schulman & Rabkin, LLP, to protect F&N's rights under the F&N Agreement.  F&N has

4  been compelled to commence litigation as a result of F&N Agreement defendants' breach

5  of the F&N Agreement, as a result of which F&N has incurred and will continue to incur

6  as yet unascertained costs and attorney's fees.  F&N will amend this complaint to state the

7  full amount of those costs and fees when those amounts have been ascertained.

8  ## SECOND CAUSE OF ACTION

9  **(For Account Stated Against all F&N Agreement Defendants)**

10  16.    F&N repeats, realleges, and incorporates herein by this reference each and

11  every allegation contained in paragraphs 1 through 8, and 10 through 15, inclusive, as

12  though set forth in full herein.

13  17.    Within the last two years, accounts were stated in writing by and between

14  F&N and F&N Agreement defendants.  On such statements a total balance of not less than

15  $300,000.00 was found due to F&N from F&N Agreement defendants.

16  18.    Neither the whole nor any part of the above sum has been paid, although

17  demand therefor has been made; and there is now due, owing and unpaid from F&N

18  Agreement defendants to F&N an amount not less than $300,000.00, plus interest at the

19  maximum rate allowed by law.

20  ## THIRD CAUSE OF ACTION

21  **(For Money Received Against all F&N Agreement Defendants)**

22  19.    F&N repeats, realleges, and incorporates herein by this reference each and

23  every allegation contained in paragraphs 1 through 8, 10 through 15, 17 and 18, inclusive,

24  as though set forth in full herein.

25  20.    Within the last two years defendants became indebted to F&N for an amount

26  not less than $300,000.00 for money advanced by F&N to F&N Agreement defendants for

27  the use and benefit of F&N.

28  21.    Neither the whole nor any part of this sum has been paid, although demand

1536928.1                                        -4-

COMPLAINT FOR BREACH OF WRITTEN CONTRACT AND RELATED CAUSES OF ACTION

1  therefor has been made; and there is now due, owing and unpaid from F&N Agreement
2  defendants to F&N an amount not less than $300,000.00, plus interest at the maximum rate
3  allowed by law.

## FOURTH CAUSE OF ACTION

### (For Breach of Written Contract against TCI Agreement Defendants)

6     22.    TCI repeats, realleges, and incorporates herein by this reference each and
7  every allegation contained in paragraphs 1 through 8, inclusive, as though set forth in full
8  herein.

9     23.    Within the past four years, TCI and TCI Agreement defendants entered into
10  a written secured merchant agreement (the "TCI Agreement") whereby TCI retained TCI
11  Agreement defendants to provide certain payroll services. Under the terms of the TCI
12  Agreement, TCI would deposit or provide access to TCI Agreement defendants to use
13  TCI's bank account to pay TCI's payroll, insurance, payroll taxes, etc. (the "Services").
14  Pursuant to the TCI Agreement, TCI Agreement defendants would charge TCI a fee for the
15  services.

16     24.    Pursuant to the TCI Agreement, TCI authorized TCI Agreement defendants
17  to debit TCI's bank accounts by means of an online ACH debit to perform the Services
18  (e.g., pay payroll, taxes, etc.).

19     25.    Initially TCI Agreement defendants met their obligations under the TCI
20  Agreement and performed the Services. TCI Agreement defendants would deduct all
21  monies to pay payroll, taxes, etc. from TCI's bank account twice a month (on or about the
22  sixteenth and last day of each month). However, on or about December 19, 2013, TCI
23  learned that TCI Agreement defendants had breached the TCI Agreement and not paid
24  payroll taxes to the State of California or IRS since July 1, 2013 (TCI Agreement
25  defendants did pay payroll, but not any taxes).

26     26.    During the past week, F&N contacted the EDD and IRS and confirmed that
27  the payroll taxes have not been paid since July 1, 2013.

28     27.    At all times mentioned herein, TCI has performed all terms, conditions and

1536928.1                                    -5-
COMPLAINT FOR BREACH OF WRITTEN CONTRACT AND RELATED CAUSES OF ACTION

1 covenants of the TCI Agreement. TCI Agreement defendants materially breached the TCI
2 Agreement in that they have failed and refused, and continue to fail and refuse, to pay the
3 taxes due.

4     28.     As a result of the foregoing, TCI Agreement defendants have breached the
5 TCI Agreement with TCI and accordingly have defaulted under same, and therefore TCI
6 has been damaged in the amount of at least $200,000.00 plus interest at the maximum rate
7 allowed by law.

8     29.     The TCI Agreement provides, in part, that, should TCI bring suit against TCI
9 Agreement defendants to enforce any of the provisions of the TCI Agreement or any of
10 TCI's rights thereunder, TCI Agreement defendants shall pay TCI's reasonable attorney's
11 fees and expenses. TCI has retained the firm of Wolf, Rifkin, Shapiro, Schulman &
12 Rabkin, LLP, to protect TCI's rights under the TCI Agreement. TCI has been compelled to
13 commence litigation as a result of TCI Agreement defendants' breach of the TCI
14 Agreement, as a result of which TCI has incurred and will continue to incur as yet
15 unascertained costs and attorney's fees. TCI will amend this complaint to state the full
16 amount of those costs and fees when those amounts have been ascertained.

17 

**FIFTH CAUSE OF ACTION**

18 **(For Account Stated Against all TCI Agreement Defendants)**

19     30.     TCI repeats, realleges, and incorporates herein by this reference each and
20 every allegation contained in paragraphs 1 through 8, and 23 through 28, inclusive, as
21 though set forth in full herein.

22     31.     Within the last two years, accounts were stated in writing by and between
23 TCI and TCI Agreement defendants. On such statements a total balance of not less than
24 $200,000.00 was found due to TCI from TCI Agreement defendants.

25     32.     Neither the whole nor any part of the above sum has been paid, although
26 demand therefor has been made; and there is now due, owing and unpaid from TCI
27 Agreement defendants to TCI an amount not less than $200,000.00, plus interest at the
28 maximum rate allowed by law.

1536928.1

-6-

1    **SIXTH CAUSE OF ACTION**

2    **(For Money Received Against all TCI Agreement Defendants)**

3    33.    TCI repeats, realleges, and incorporates herein by this reference each and

4    every allegation contained in paragraphs 1 through 8, 23 through 28, 30 and 31, inclusive,

5    as though set forth in full herein.

6    34.    Within the two four years defendants became indebted to TCI for an amount

7    not less than $93,855.00 for money advanced by TCI to TCI Agreement defendants for the

8    use and benefit of TCI.

9    35.    Neither the whole nor any part of this sum has been paid, although demand

10    therefor has been made; and there is now due, owing and unpaid from TCI Agreement

11    defendants to TCI an amount not less than $200,000.00, plus interest at the maximum rate

12    allowed by law.

13    WHEREFORE, plaintiffs pray for judgment against defendants, jointly and

14    severally, and each of them, as follows:

15    **ON THE FIRST, SECOND AND THIRD CAUSES OF ACTION**

16    1.    For damages in an amount not less than $300,000.00 according to proof at

17    trial;

18    2.    For attorney's fees according to proof pursuant to the terms of the F&N

19    Agreement;

20    **ON THE FOURTH, FIFTH AND SIXTH CAUSES OF ACTION**

21    3.    For damages in an amount not less than $200,000.00 according to proof at

22    trial;

23    4.    For attorney's fees according to proof pursuant to the terms of the TCI

24    Agreement;

25    **ON ALL CAUSES OF ACTION**

26    5.    For interest at the maximum rate allowed by law;

27    6.    For costs of suit incurred herein; and

28    / / /

1536928.1                                                    -7-
COMPLAINT FOR BREACH OF WRITTEN CONTRACT AND RELATED CAUSES OF ACTION

1    7.    For such other and further relief as the Court may deem just and proper.

2    DATED: _____12/31/13_____         WOLF, RIFKIN, SHAPIRO,
                                       SCHULMAN & RABKIN, LLP
3

4                                      By: _____
                                           MARK J. ROSENBAUM
5                                      Attorneys for plaintiffs Fenton & Nelson, LLP and
                                       The Compliance Institute, LLC
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1536928.1                                        -8-
COMPLAINT FOR BREACH OF WRITTEN CONTRACT AND RELATED CAUSES OF ACTION

# EXHIBIT E

01/10/2014   12:22   2136257532                   LASC                              PAGE   02/05

04:13:16 p.m. 01-09-2014        8        0517660760

01/09/2014   16:12   9517880766                   LOBB & CLIFF                      PAGE   08/13

**FILED**
Superior Court of California
County of Los Angeles

JAN 0 9 2014

Sherri R. Carter, Executive Officer/Clerk
By _____ Deputy
Dawn Alexander

1 | J. Mark Lobb [SBN 148771]
2 | Gabriel Henriquez [SBN 289007]
  | LOBB & CLIFF, LLP
3 | 25240 Hancock Avenue, Suite 315
  | Murrieta, California 92562
4 | Telephone: (951) 600-1007
  | Facsimile: (951) 600-1116
5 | Email: mlobb@lobbcliff.com
  |        ghenriquez@lobbcliff.com

6 | Attorneys for Plaintiffs GLASSPLAX, INC. and TORO STONEWORKS, INC.

7

8 |                    **SUPERIOR COURT OF CALIFORNIA**

9 |                        **COUNTY OF LOS ANGELES**

10

11 | GLASSPLAX, INC., a California corporation,          CASE NO.   BC532591
    | and TORO STONEWORKS, INC., a California
12 | corporation                                         **COMPLAINT FOR NEGLIGENCE;**
    |                                                     **BREACH OF FIDUCIARY DUTY; AND**
13 |                                                     **CONVERSION**
    |                       Plaintiffs,
14 |
    | vs.
15 |
    | LA PAYROLL, a California corporation;
16 | TOMAS GRIGORYAN, an individual; and
    | DOES 1-50,
17 |
18 |                       Defendants.

19 |       1.      Plaintiff Glassplax, Inc. ("Glassplax") is a California corporation and has, and at all

20 | times herein mentioned had, its principal place of business in Riverside County, California.

21 |       2.      Plaintiff Toro Stoneworks, Inc. (collectively with Glassplax, "Plaintiffs") is a

22 | California corporation and has, and at all times herein mentioned had, its principal place of business

23 | in Riverside County, California.

24 |       3.      Defendant LA Payroll is a California corporation and has, and at all times herein

25 | mentioned had, its principal place of business in Los Angeles County, California.

26

27

28

1
COMPLAINT FOR NEGLIGENCE; BREACH OF FIDUCIARY DUTY; AND CONVERSION

340197

1      4.      Defendant Tomas Grigoryan (herein, "Grigoryan") is an individual, the current

2 owner of LA Payroll, and is, and at all times herein mentioned was, a resident of Los Angeles

3 County, California.

4      5.      Plaintiffs are ignorant of the true names and capacities of defendants sued herein as

5 Does 1-50, inclusive, and therefore sues these defendants by such fictitious names. Plaintiffs will

6 amend this complaint to allege their true names and capacities when ascertained.

7      6.      Plaintiffs are informed and believes that Grigoryan and Does 21 through 30 and

8 Does 41 through 50 ("Alter Ego Defendants") so dominated and controlled the other defendants

9 that failure to disregard the purported limited liability granted to corporations would sanction fraud

10 and promote injustice;

11          a.      The Alter Ego Defendants treated the assets of LA Payroll as if they were

12 their own;

13          b.      The Alter Ego Defendants diverted assets from LA Payroll to itself to the

14 detriment of its clients;

15          c.      The Alter Ego Defendants were and/or are members and/or have had

16 equitable ownership in and/or financial interest in the corporation;

17          d.      The Alter Ego Defendants used the other defendants as a mere

18 instrumentality or "alter ego'"

19          e.      Recognition of the separate existence of the Alter Ego Defendants would

20 perpetuate a fraud and/or circumvent a statute and/or otherwise accomplish some wrongful or

21 inequitable purpose;

22          f.      The facts are such that adherence to the fiction of the separate existence of

23 the Alter Ego Defendants would, under the circumstances of this case, sanction a fraud or promote

24 injustice or permit the Alter Ego Defendants to evade their liability;

25          g.      The Alter Ego Defendants actively participated in or consciously ratified the

26 acts, conduct, and events that the defendants contend to give rise herein to any defense; and

27          h.      The acts herein alleged necessarily required the cooperation and participation

28 of the Alter Ego Defendants.

LOBB & CLIFF, LLP
25240 HANCOCK AVENUE, SUITE 315
MURRIETA, CALIFORNIA 92562

2

COMPLAINT FOR NEGLIGENCE; BREACH OF FIDUCIARY DUTY; AND CONVERSION

340197

1    7.    Plaintiffs hired LA Payroll for its accounting, payroll and tax services. LA Payroll's

2    duties included, *inter alia*, withdrawing money from a payroll account held for the benefit of

3    Plaintiffs, and deposit such necessary funds with the proper government agency, including, but not

4    limited to, the Internal Revenue Service (herein, "IRS").

5    8.    Plaintiffs maintained and deposited in excess of $17,000.00 weekly into the payroll

6    accounts, which were housed with the financial institution California Bank and Trust. Defendants

7    had access to these accounts.

8    9.    Sometime during the past four years, Grigoryan purchased LA Payroll, and became

9    its sole owner.

10   10.   On or about December 20, 2013, Plaintiffs discovered that LA Payroll had failed to

11   pay their third and fourth quarter taxes to the IRS. Plaintiffs further discovered that LA Payroll and

12   Grigoryan were not utilizing the funds as they were intended, and refused to return approximately

13   $100,000.00 back to Plaintiffs. Plaintiffs not only lost those funds, but remain indebted to the IRS

14   and other government agencies for its third and fourth quarter tax liability, as well as any resulting

15   penalties and interest.

16                                   **FIRST CAUSE OF ACTION**

17                              **(Negligence against All Defendants)**

18   11.   Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 10.

19   12.   On or about December 20, 2013, Plaintiffs were a client of LA Payroll with whom

20   Plaintiffs had entrusted funds approximating $100,000.00 for the purpose of accounting, payroll,

21   and tax services provided by LA Payroll.

22   13.   On or about December 20, 2013, LA Payroll managed and operated the payroll

23   accounts into which Plaintiffs deposited such funds.

24   14.   LA Payroll and Grigoryan negligently failed to utilize the funds as they were

25   intended and now refuses to return such funds to Plaintiffs.

26   15.   As a direct and legal result of LA Payroll's negligence, Plaintiffs have lost access to

27   approximately $100,000.00 deposited in its payroll accounts, and lost use of those funds. As a

28   further direct and legal result of the negligence, Plaintiffs failed to pay their third and fourth quarter

3
COMPLAINT FOR NEGLIGENCE; BREACH OF FIDUCIARY DUTY; AND CONVERSION

340197

LOBB & CLIFF, LLP
25240 HANCOCK AVENUE, SUITE 315
MURRIETA, CALIFORNIA 92562

1  tax burden due to the IRS and other government agencies for a liability of approximately

2  $100,000.00, plus penalties and interest due thereon.

## SECOND CAUSE OF ACTION

### (Breach of Fiduciary Duty against All Defendants)

5  16.    Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 15.

6  17.    During the past four years, Plaintiffs and LA Payroll agreed in writing that LA

7  Payroll would act as Plaintiffs' agent for the purposes of providing accounting, payroll, and tax

8  services.

9  18.    Some time during the past four years, Grigoryan purchased LA Payroll.

10  19.    Defendants breached their fiduciary duty to Plaintiffs by failing to pay Plaintiffs'

11  taxes for the third and fourth quarter, and by otherwise utilizing approximately $100,000.00 in a

12  manner not intended. Such funds were deducted from payroll accounts Plaintiffs had entrusted with

13  LA Payroll pursuant to a fiduciary relationship that had been created by their agreement.

14  20.    As a result of Defendants breach of fiduciary duty, Plaintiffs have been damaged in

15  that they have lost approximately $100,000.00, the use thereof, and owe the IRS and other

16  government agencies taxes, interest and penalties, and have expended time and money in pursuit of

17  the stolen funds for damages totaling approximately $200,000.00.

## THIRD CAUSE OF ACTION

### (Conversion against all Defendants for Failure to Deposit Funds)

20  21.    Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 20.

21  22.    Plaintiffs delivered to LA Payroll the approximate sum of $100,000.00 on the

22  express understanding and agreement that LA Payroll should pay the same to the IRS and other

23  respective government agencies, for payment of Plaintiffs' third and fourth quarter payroll taxes.

24  23.    LA Payroll received such an approximate sum of $100,000.00 and agreed to pay the

25  same to the IRS and other respective government agencies.

26  24.    On or about December 20, 2013, Defendants converted approximately $100,000.00

27  of Plaintiffs' money for their own use, and otherwise used the funds in a manner not intended by

28  Plaintiffs, disregarding LA Payroll and Grigoryan's duty to Plaintiffs.

LOBB & CLIFF, LLP
25240 HANCOCK AVENUE, SUITE 315
MURRIETA, CALIFORNIA 92562

1    25.    On or about December 20, 2013, Plaintiffs orally demanded the immediate return of

2  the above-mentioned property from LA Payroll but Defendants failed and refused, and continue to

3  fail and refuse, to return the property to Plaintiffs.

4    26.    At all times herein mentioned, Plaintiffs were, and still are, the owner of the money

5  deposited into the payroll account held and managed by LA Payroll, and were, and still are, entitled

6  to possession of the approximate \$100,000.00.

7    **WHEREFORE**, Plaintiffs prays judgment against defendants, and each of them, as

8  follows:

9  First Cause of Action:

10    1.    For general damages according to proof at trial;

11    2.    For interest at the legal rate on the foregoing sum;

12    3.    For costs of suit incurred; and

13    4.    For such other and further relief as the court may deem proper.

14  Second Cause of Action:

15    1.    For damages according to proof at trial;

16    2.    For interest on the damages according to proof at the legal rate;

17    3.    For costs of suit herein incurred; and

18    4.    For such other and further relief as the court may deem proper.

19  Third Cause of Action:

20    1.    For the value of the property converted;

21    2.    For interest at the legal rate on the foregoing sum pursuant to section 3336 of the

22  Civil Code, from and after December 20, 2013;

23    3..    For damages for the proximate and foreseeable loss resulting from Defendants

24  conversion according to proof at trial;

25  //

26  //

27  //

28  //

LOBB & CLIFF, LLP
25240 HANCOCK AVENUE, SUITE 315
MURRIETA, CALIFORNIA 92562

1      4..     For punitive and exemplary damages;

2      5.     For costs of suit herein incurred; and

3      6.     For such other and further relief as the court may deem proper.

4

5                         **LOBB & CLIFF, LLP**

6

7    Dated: January 9, 2014         BY:

8                         J. Mark Lobb
                             Gabriel Henriquez

9                         Attorneys for Plaintiffs, Glassplax, Inc.
                         and Toro Stoneworks, Inc.

LOBB & CLIFF, LLP
25240 HANCOCK AVENUE, SUITE 315
MURRIETA, CALIFORNIA 92562

6
COMPLAINT FOR NEGLIGENCE; BREACH OF FIDUCIARY DUTY; AND CONVERSION

340197

# EXHIBIT F

# Plaintiff's Claim and ORDER
## SC-100    to Go to Small Claims Court

-------------------------------------------------------------------------

**Notice to the person being sued:**

. You are the Defendant if your name is listed in **(2)** on page 2 of this
  form. The person suing you is the Plaintiff, listed in **(1)** on page 2.

. You and the Plaintiff must go to court on the trial date listed
  below. If you do not go to court, you may lose the case.

. If you lose, the court can order that your wages, money, or property
  be taken to pay this claim.

. Bring witnesses, receipts, and any evidence you need to prove your case.

. Read this form and all pages attached to understand the claim
  against you and to protect your rights.

**Aviso al Demandado:**

. Usted es el Demandado si su nombre figura en **(2)** de la pagina 2
  de este formulario. La persona que lo demanda es el Demandante,
  la que figura en **(1)** de la pagina 2.

. Usted y el Demandante tienen que presentarse en la corte en la
  fecha del juicio indicada a continuacion. Si no se presenta, puede
  perder el caso.

. Si pierde el caso la corte podria ordenar que le quiten de su
  sueldo, dinero u otros bienes para pagar este reclamo.

. Lleve testigos, recibos y cualquier otra prueba que necesite para probar sucaso.

. Lea este formulario y todas las paginas adjuntas para entender la demanda en su contra y para proteger
  sus derechos.

*Clerk stamps date here when form is filed.*



**FILED**

SUPERIOR COURT OF CALIFORNIA

**JAN 03 2014**

Sherri R. Carter, Executive Officer/Clerk
by Graciela Gomez, Deputy

*Fill in court name and street address:*

Superior Court of California, County of
Los Angeles:  CENTRAL DISTRICT (-19462- )
STANLEY MOSK COURTHOUSE
111 N. HILL STREET
LOS ANGELES, CA. 90012
(213) 974-6135

*Clerk fills in case number and case name:*

Case Number:
  LAM 14M00038
Case Name:
  SWA INVESTMENT VS LA PAYROLL

## Order to Go to Court

**The people in (1) and (2) must go to court:** *(Clerk fills out section below.)*

================================================================

| TRIAL DATE | TIME | DEPARTMENT | LOCATION |
|---|---|---|---|
| 04/01/2014 | 08:30 AM | 090 | 5TH FLOOR, RM. 541 |

================================================================

Date: 01/03/2014        SHERRI R. CARTER, Executive Officer/Clerk
                  By GRACIELA M. GOMEZ , Deputy

### Instructions for the person suing:
. You are the Plaintiff. The person you are suing is the Defendant.

. *Before* you fill out this form, read Form SC-100-INFO, *Information for the Plaintiff* to know your rights.
  Get SC-100-INFO at any courthouse or county law library, or go to: *www.courts.ca.gov/smallclaims/forms*

. Fill out pages 2 and 3 of this form. Then make copies of **all** pages of this form. (Make 1 copy for each party
  named in this case and an extra copy for yourself.) Take or mail the original and these copies to the court
  clerk's office and pay the filing fee. The clerk will write the date of your trial in the box above.

. You must have someone at least 18--not you or anyone else listed in this case--give each Defendant a court-
  stamped copy of all 5 pages of this form and any pages this form tells you to attach. There are special rules
  for "serving," or delivering, this form to public entities, associations, and some businesses. See Forms SC-104,
  SC-104B, and SC-104C.

. **Go to court on your trial date listed above.**  Bring witnesses, receipts, and any evidence you need to prove
  your case.

---

Judicial Council of California,  *www.courts.ca.gov*
Revised January 1, 2012, Mandatory Form
Code of Civil Procedure, 116.110 et seq.,
116.220(c), 116.340(g)

**Plaintiff's Claim and ORDER
to Go to Small Claims Court
(Small Claims)**

(                                                    (

| Case Number: |
| --- |
| LAM 14M00038 |

Plaintiff (list names):  SWA INVESTMENT LLC
--------------------------------------------------------------------------------------------------------------------------------------------------

## (1) The Plaintiff (the person, business, or public entity that is suing) is:

Name: SWA INVESTMENT LLC

Phone: (  )  -

| Street address: |  | City | State | Zip |
| --- | --- | --- | --- | --- |
| | *Street* | | | |

| Mailing address *(if different):*  611 WARNER AVE | LOS ANGELES | CA | 90024 |
| --- | --- | --- | --- |
| *Street* | *City* | *State* | *Zip* |

### If more than one Plaintiff, list next Plaintiff here:

Name:

Phone:

| Street address: |  | City | State | Zip |
| --- | --- | --- | --- | --- |
| | *Street* | | | |

| Mailing address *(if different):* |  | City | State | Zip |
| --- | --- | --- | --- | --- |
| | *Street* | | | |

[ ] *Check here if more than 2 Plaintiffs and attach Form SC-100A.*
[ ] *Check here if either Plaintiff listed above is doing business under a fictitious name.  If so, attach Form SC-103.*

## (2) The Defendant (the person, business, or public entity being sued) is:

Name: LA PAYROLL

Phone: (  )  -

| Street address:  5820 WILSHIRE BLVD, SUITE 200 | LOS ANGELES | CA | 90036 |
| --- | --- | --- | --- |
| *Street* | *City* | *State* | *Zip* |

| Mailing address *(if different):*  AOS:DMITRI PAIU 5820 WILSHIRE BL STE.200 | LOS ANGELES | CA | 90036 |
| --- | --- | --- | --- |
| *Street* | *City* | *State* | *Zip* |

### If more than one Defendant, list next Defendant here:

Name:

Phone:

| Street address: |  | City | State | Zip |
| --- | --- | --- | --- | --- |
| | *Street* | | | |

| Mailing address *(if different):* |  | City | State | Zip |
| --- | --- | --- | --- | --- |
| | *Street* | | | |

[ ] *Check here if more than 2 Defendants and attach Form SC-100A.*
[ ] *Check here if any Defendant is on active military duty, and write his or her name here:*

## (3) The Plaintiff claims the Defendant owes $ 5000.00.  *(Explain below):*

a. Why does the Defendant owe the Plaintiff money?
THE PLAINTIFF HIRED THE DEFENDANTS TO HANDLE THEIR PAYROLL ACCOUNTS
THEY WERE ALSO RESPONSIBLE TO PAY OUT THE FEDERAL AND STATE TAXES,
WHICH THEY FAILED TO DO SO. THEY IMPOUNDED THE TAX PAYMENTS AND

b. When did this happen?  *(Date):*  01 / 03 / 2014
If no specific date, give the time period:  *Date Started:*      *Through:*

C. How did you calculate the money owed to you? (Do not include court costs or fees for service.)
THE AMOUNT HELD IN TAXES NEVER PAID OUT.

[ ] *Check here if you need more space. Attach one sheet of paper or Form MC-031 and write     "SC-100, Item 3"  at the top.*

---

Revised January 1, 2012                    **Plaintiff's Claim and ORDER**                    SC-100, Page 2 of 5
                                           **to GO to Small Claims Court**                          -->
                                           (Small Claims)

| Case Number: |
| LAM 14M00038 |

Plaintiff (list names):  SWA INVESTMENT LLC

-----------------------------------------------------------------------------------------------------------

**(4) You must ask the Defendant (in person, in writing, or by phone) to pay you before you sue.**

**Have you done this?** [X] Yes   [ ] No

*If no, explain why not:*

**(5) Why are you filing your claim at this courthouse?**

This courthouse covers the area  *(Check the one that applies):*
a. [X] (1) Where the Defendant lives or does business.

(2) Where the Plaintiff's property was damaged.

(3) Where the Plaintiff was injured.

(4) Where a contract (written or spoken) was made, signed, performed, or broken by the Defendant or where the
   Defendant lived or did business when the Defendant made the contract.

b. [ ] Where the buyer or lessee signed the contract, lives now, or lived when the contract was made, if this claim
   is about an offer or contract for personal, family, or household goods, services, or loans.   *(Code Civ. Proc., 395(b).)*

c. [ ] Where the buyer signed the contract, lives now, or lived when the contract was made, if this claim is about
   a retail installment contract (like a credit card).  *(Civil Code, 1812.10.)*

d. [ ] Where the buyer signed the contract, lives now, or lived when the contract was made, or where the vehicle is
   is permanently garaged, if this claim is about a vehicle finance sale.  *(Civil Code, 2984.4.)*

e. [ ] Other *(specify):*

**(6) List the zip code of the place checked in (5) above** *(if you know):*  90036

**(7) Is your claim about an attorney-client fee dispute?**  [ ] Yes   [X] No
*If yes, and if you have had arbitration, fill out Form SC-101, attach it to this form and check here:*   [ ]

**(8) Are you suing a public entity?** [ ] Yes  [X] No
*If yes, you must file a written claim with the entity first.*   [ ] A claim was filed on  *(date):*
*If the public entity denies your claim or does not answer within the time allowed by law, you can file this form.*

**(9) Have you filed more than 12 other small claims within the last 12 months in California?**
[ ] Yes [X] No  *If yes, the filing fee for this case will be higher.*

**(10) I understand that by filing a claim in small claims court, I have no right to appeal this claim.**

**(11)** I have not filed, and understand that I cannot file, more than two small claims cases for more
than $2,500 in California during this calendar year.

I declare, under penalty of perjury under California State law, that the information above and
on any attachments to this form is true and correct.

Date: 01/03/2014   SHAWN AHMADI
               *Plaintiff types or prints name here*                      *Plaintiff signs here*

Date:
               *Second Plaintiff types or prints name here*               *Second Plaintiff signs here*

**Requests for Accommodations**
Assistive listening systems, computer-assisted, real-time captioning, or sign language interpreter services are available
if you ask least 5 days before the trial. Contact the clerk's office for Form MC-410,   *Request for Accommodations
by Persons With Disabilities and Response. (Civil Code, 54.8.)*

Revised January 1, 2012                    **Plaintiff's Claim and ORDER**                    SC-100, Page 3 of 5
                                        **to GO to Small Claims Court**                    -->
                                        **(Small Claims)**

# EXHIBIT G

1 Howard D. Pilch, Esq. (SBN 54330)
LAW OFFICES OF HOWARD D. PILCH
2 1801 Century Park Eas, Suite 2400
Los Angeles, CA 90067-2326
3 Telephone: (310) 553-5344
Facsimile: (310) 553-5359

CONFORMED COPY
ORIGINAL FILED
Superior Court Of California
County Of Los Angeles

JAN 3 0 2014

Sherri R. Carter, Executive Officer/Clerk
By: Kristina Vargas, Deputy

5 Attorney for Plaintiff (s): Sepulveda Rehabilitation Center, LLC;
8025 Sepulveda, LLC

7 SUPERIOR COURT OF THE STATE OF CALIFORNIA

8 COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| 10 SEPULVEDA REHABILITATION CENTER,) a California Limited Liability Company; 8025 ) 11 SEPULVEDA, LLC, a California Limited ) Liability Company. 12 ) ) 13 Plaintiff(s), ) ) 14 vs. ) ) 15 LA PAYROLL, a California corporation; ) TOMAS GRIGORYAN, an individual; and ) 16 Does 1 through 40, inclusive. ) ) 17 Defendant(s). ) ) 18 ) ) 19 ) ) 20 ) ) 21 | CASE NO:  BC534709 UNLIMITED CIVIL CASE COMPLAINT FOR: (1) BREACH OF ORAL CONTRACT (2) BREACH OF WRITTEN CONTRACT (3) ACCOUNT STATED (4) MONEY HAD AND RECEIVED (5) BREACH OF ORAL CONTRACT (6) BREACH OF WRITTEN CONTRACT (7) ACCOUNT STATED (8) MONEY HAD AND RECEIVED (9) COMPLAINT FOR NEGLIGENCE (10) COMPLAINT FOR NEGLIGENCE (11) BREACH OF FIDUCIARY DUTY (12) BREACH OF FIDUCIARY DUTY (13) CONVERSION (14) CONVERSION (15) FRAUD (16) FRAUD |

22 Plaintiff alleges as follows:

23 **FACTS COMMON TO ALL CAUSES OF ACTION**

24      1.      Plaintiff Sepulveda Rehabilitation Center ("SRC") is a limited liability Company

25 and existing under and by virtue of the laws of the State of California and doing business in the

26 County of Los Angeles, State of California.

27      2.      Plaintiff 8025 Sepulveda, LLC ("SEPULVEDA") is a limited liability

28 company duly organized and existing under and by virtue of the laws of the State of California

Howard D. Pilch
1801 Century Park E.
Suite 2400
LA, CA 90067
310 553 5344

-1-

1  and doing business in the County of Los Angeles, State of California.

2        3.      Plaintiffs are informed and believe that defendant LA Payroll ("PAYROLL") is,
3  and at all times herein mentioned was, a California corporation organized and existing by the
4  virtues of the laws of the State of California and doing business in the County of Los Angeles,
5  California.

6        4.      SRC and SEPULVEDA are informed and believe and thereon allege that
7  Defendant Tomas Grigoryan (herein, "Grigoryan") is an individual, a current owner of
8  PAYROLL, and at all times herein mentioned was a resident of Los Angeles County, California.

9        5.      The true names and capacities of DOES 1 through 40, inclusive, whether
10  individual, corporate, associate or otherwise, are unknown to plaintiffs at this time, who therefore
11  sue said defendants by such fictitious names. When the true names and capacities of such
12  defendants are ascertained, plaintiffs will ask leave of Court to amend this complaint to insert
13  same.

14        6.      Plaintiffs are informed and believe and thereon allege that GRIGORYAN, at all
15  relevant times, was an owner of PAYROLL and controlled it, either directly or indirectly.

16        7.      Plaintiffs are informed and believes that GRIGORYAN and Does 21 through 30
17  ("Alter Ego Defendants") so dominated and controlled the other defendants that failure to
18  disregard the purported limited liability granted to corporations would sanction fraud and
19  promote injustice;

20              a.     The Alter Ego Defendants treated the assets of PAYROLL as if they
21  were their own;

22              b.     The Alter Ego Defendants diverted assets from Payroll to itself to the
23  detriment of its clients;

24              c.     The Alter Ego Defendants were and/or are members and/or have had
25  equitable ownership in and/or financial interest in PAYROLL;

26              d.     The Alter Ego Defendants used the other defendants as a mere
27  instrumentality or "alter ego".

28              e.     Recognition of the separate existence of the Alter Ego Defendants

-2-

COMPLAINT OF SEPULVEDA REHABILITATION CENTER, LLC AND SRC SEPULVEDA, LLC

1  would perpetrate a fraud and/or circumvent a statute and/or otherwise accomplish some wrongful
2  or inequitable purpose;

3       f.    The facts are such that adherence to the fiction of the separate
4  existence of the Alter Ego Defendants would, under the circumstances of this case, sanction a
5  fraud or promote injustice or permit the Alter Ego Defendants to evade their liability;

6       g.    The Alter Ego Defendants actively participated in or consciously
7  ratified the acts, conduct, and events that the defendants contend to give rise herein to any
8  defense; and

9       h.    The acts herein alleged necessarily required the cooperation and
10  participation of the Alter Ego Defendants.

11      8.    When a cause of action below is in behalf of SRC, SRC intends to include
12  PAYROLL. GRIGORYAN and Defendant DOES 1 through 20, inclusive. When a cause of
13  action below is in behalf of SEPULVEDA, SEPULVEDA intends to include PAYROLL,
14  GRIGORYAN and DOES 21 through 40.

15      9.    Plaintiffs are informed and believe and, on the basis of such information and
16  belief, allege that each defendant named in this complaint was, at all times herein mentioned, and
17  now is, the agent and employee of each of the other defendants herein, and was at all times acting
18  within the course and scope of said agency and employment, whenever reference is made to
19  "defendants" herein, it is intended to include PAYROLL, and said DOE defendants.

20      10.    Defendants agreed to submit to the jurisdiction of any court in the County of Los
21  Angeles, State of California and have waived any and all objections to jurisdiction and venue as
22  per the terms of the agreements by and between the parties, discussed in more detail below.

23      11.    The obligation sued upon herein is commercial in nature and is not subject
24  to the provisions of Civil Code Section 2984.4, et seq. or Civil Code Section 1812.10 et seq.
25  Plaintiffs allege that the obligation sued upon herein was incurred and agreed to be performed in
26  the County of Los Angeles, State of California.

27      12.    Plaintiffs hired PAYROLL for its accounting, payroll and tax services.
28  Payroll's duties included, *inter alia,* withdrawing money from a payroll account held for the

Howard D. Pilch
1801 Century Park E.
Suite 2400
LA, CA 90067

-3-

COMPLAINT OF SEPULVEDA REHABILITATION CENTER, LLC AND 8834 SUNNY HRP.

1    benefit of plaintiffs, and depositing such necessary funds with the proper government agency,

2    including, but not limited to, the Internal Revenue Service (herein, "IRS") and the California

3    Employment Development Department ("EDD").

4          13.      Plaintiffs SRC and SEPULVEDA maintained and deposited monies into their

5    respective payroll accounts, located at the financial institution Bank of America. Defendants, and

6    each of them, had access to theses accounts pursuant to their contract with SRC and

7    SEPULVEDA.

8          14.      SRC and Sepulveda are informed and believe, and thereon allege, that during the

9    relevant times herein, Grigoryan purchased LA Payroll and became its sole owner.

10         15.      On or about December 27 , 2013, Plaintiff SRC discovered that PAYROLL had

11    withdrawn funds from SRC's account but had failed to remit $14,085.29 in taxes to the

12    governmental agencies. Most of these monies were designated to be paid for third and fourth

13    quarter tax obligations of SRC.

14         16.      On or about December 27, 2013, Plaintiff SEPULVEDA discovered that

15    PAYROLL had withdrawn funds from SRC's account but had failed to remit $34,025.59 in taxes

16    to the governmental agencies. Most of these monies were designated to be paid for third and

17    fourth quarter tax obligations of SEPULVEDA.

18         17.      Plaintiffs SRC and SEPULVEDA further discovered that LA Payroll and

19    GRIGORYAN were not utilizing the funds as they were intended or pursuant to the contract

20    between SRC and PAYROLL and SEPULVEDA and PAYROLL.

21         18.      PAYROLL and GRIGORYAN, and each of them, has refused and continues to

22    refuse to return any of the funds to SRC or SEPULVEDA, despite demands for same.

23         19.      SRC and SEPULVEDA, and each of them, not only lost those funds, but

24    have become and to some extent, remain indebted to the IRS and EDD for their respective third

25    and fourth quarter tax liabilities, as well as any resulting penalties and interest. In fact, SRC and

26    SEPULVEDA have already received invoices from the IRS and EDD for unpaid taxes.

27    ///

28    ///

-4-

1  **FIRST CAUSE OF ACTION**

2  **(By SRC For Breach of Oral Contract against PAYROLL,**

3  **GRIGORYAN, and Doe Defendants 1 through 20)**

4  20.  SRC repeats, realleges and incorporates herein by this reference each and every

5  allegation contained in paragraphs 1 through 19, inclusive, as though set forth herein in full.

6  21.  Within the last two years, SRC entered into an agreement ("Agreement") whereby

7  SRC retained Defendants, and each of them, to provide certain payroll services, including

8  payment of payroll taxes). Under the terms of the Agreement, SRC would deposit funds into an

9  account from which PAYROLL would withdraw or transfer funds to perform payroll services.

10  22.  Initially, PAYROLL and other defendants met obligations under the Agreement

11  with SRC and performed the payroll services.  Defendants would deduct all monies to pay roll,

12  payroll taxes, and similar types of obligations of twice per month, and withdrew or transferred

13  funds for its own fees as well once per month.

14  23.  However, on or about December 27, 2013, SRC learned that Defendants, and each

15  of them, had breached the Agreement and not paid the taxes to the IRS and EDD since

16  approximately July 1, 2013.

17  24.  At all times herein relevant, SRC has performed all terms, conditions and

18  covenants of the Agreement.

19  25.  However, PAYROLL and the other defendants materially breached the

20  Agreement in that they have failed and refused, and continue to fail and refuse, to pay the taxes

21  due.

22  26.  In fact, SRC is unaware of the current location of the monies taken by PAYROLL

23  and the other defendants but not remitted to the IRS and EDD, in the amount of $14,085.29.

24  27.  As a result of the foregoing material breach of the Agreement by PAYROLL and

25  other defendants, SRC has been damaged in the amount of at least $14,085.29, plus interest at the

26  legal rate and any penalties incurred by SRC.

27  ///

28  ///

Howard D. Pilch
1801 Century Park E
Suite 2400
LA, CA 90067

-5-

## SECOND CAUSE OF ACTION

### (By SRC For Breach of Written Contract against PAYROLL,

### GRIGORYAN, and Doe Defendants 1 through 20)

28.     SRC repeats, realleges and incorporates herein by this reference each and every
allegation contained in paragraphs 1 through 19, inclusive, as though set forth herein in full.

29.     Within the last four years, SRC entered into a written agreement ("Agreement")
whereby SRC retained Defendants, and each of them, to provide certain payroll services,
including  payment of payroll taxes). Under the terms of the Agreement, SRC would deposit
funds into an account from which PAYROLL would withdraw or transfer funds to perform
payroll services.

30.     Initially, PAYROLL and other defendants met obligations under the Agreement
with SRC and performed the payroll services.  Defendants would deduct all monies to pay roll,
payroll taxes, and similar types of obligations of twice per month, and withdrew or transferred
funds for its own fees as well once per month.

31.     However, on or about December 27, 2013, SRC learned that Defendants, and each
of them, had breached the Agreement and not paid the taxes to the IRS and EDD since
approximately July 1, 2013.

32.     At all times herein relevant, SRC has performed all terms, conditions and
covenants of the Agreement.

33.     However, PAYROLL and the other defendants materially breached the
Agreement in that they have failed and refused, and continue to fail and refuse, to pay the taxes
due.

34.     Said Agreement further provided that the party incurring attorney's fees to enforce
said Agreement would be entitled to recoupment of said fees.

35.     In fact, SRC is unaware of the current location of the monies taken by PAYROLL
and the other defendants but not remitted to the IRS and EDD, in the amount of $14,085.29.

36.     Said Agreement provided that in the event that either party incurred legal fees
seeking to enforce its rights arising out of said Agreement, the prevailing party would be entitled

-6-

B. 001D     COMPLAINT OF SERVI VEDA DEUADII FEATION CENTED LLC AND 0005 SEDVI VED A LLC

1   to such fees and costs.

2       37.    As a result of the foregoing material breach of the Agreement by PAYROLL and

3   other defendants, SRC has been damaged in the amount of at least \$14,085.29, plus interest at the

4   legal rate.

5       38.    As a further result of the foregoing material breach of the Agreement, SRC is

6   entitled to recovery of its attorney's fees and costs incurred, according to proof.

7                         **THIRD CAUSE OF ACTION**

8               **(By SRC For Account Stated against PAYROLL, GRIGORYAN,**

9                        **and Doe Defendants 1 through 20)**

10       39.    SRC repeats, realleges and incorporates herein by this reference each and every

11   allegation contained in paragraphs 1 through 19, inclusive, as though set forth herein in full.

12       40.    Within the last two years, accounts were stated in writing by and between

13   SRC and PAYROLL and Defendants, and each of them. On such statements, a total balance of

14   not less than \$14,085.29, was found due to SRC from PAYROLL and other defendants.

15       41.    Neither the whole nor any part of the above sum has been paid to SRC,

16   although demand has been made by SRC to PAYROLL and defendants. Thus, there is now due,

17   owing and unpaid from PAYROLL and other defendants to SRC an amount not less than

18   \$14,085.29, plus interest at the legal rate and penalties and interest incurred with the IRS and/or

19   EDD.

20                       **FOURTH CAUSE OF ACTION**

21            **(By SRC, For Money Had and Received against PAYROLL, GRIGORYAN**

22                      **and Doe Defendants 1-20)**

23       42.    SRC repeats, realleges and incorporates herein by this reference each and every

24   allegation contained in paragraphs 1 through 19, inclusive, as though set forth herein in full.

25       43.    Within the last two years PAYROLL and other defendants became indebted to

26   SRC for an amount not less than \$14,085.29 for money advanced by SRC to PAYROLL and

27   other defendants for the use and benefit of SRC.

28       44.    Neither the whole nor any part of the above sum has been paid to SRC, although

Howard D. Pilch
1801 Century Park E.
Suite 2400
LA, CA 90067

-7-

1   demand has been made by SRC to PAYROLL and defendants. Thus, there is now due, owing

2   and unpaid from PAYROLL and other defendants to SRC in an amount not less than $14,085.29,

3   plus interest at the legal rate and penalties and interest incurred with the IRS and/or EDD.

## FIFTH CAUSE OF ACTION

### (By SEPULVEDA, For Breach of Oral Contract against PAYROLL,

### GRIGORYAN and Doe Defendants 21-40)

7        45.     SEPULVEDA repeats, realleges and incorporates herein by this reference each

8   and every allegation contained in paragraphs 1 through 19, inclusive, as though set forth herein in

9   full.

10       46.     Within the last two years, SEPULVEDA entered into an oral agreement

11  ("Agreement") whereby SEPULVEDA retained Defendants, and each of them, to provide certain

12  payroll services, including payment of payroll taxes). Under the terms of the Agreement,

13  SEPULVEDA would deposit funds into an account from which PAYROLL would withdraw or

14  transfer funds in order to perform the payroll services.

15       47.     Initially, PAYROLL and other defendants met obligations under the

16  Agreement with SRC and performed the payroll services. Defendants would deduct all monies

17  to pay roll, payroll taxes, and similar types of obligations of twice per month, and withdrew or

18  transferred funds for its own fees as well once per month.

19       48.     However, on or about December 27, 2013, SEPULVEDA learned that PAYROLL

20  and defendants, and each of them, had breached the Agreement and not paid the taxes to the IRS

21  and EDD since approximately July 1, 2013.

22       49.     At all times herein relevant, SEPULVEDA has performed all terms, conditions

23  and covenants of the Agreement.

24       50.     However, PAYROLL and the other defendants materially breached the Agreement

25  in that they have failed and refused, and continue to fail and refuse, to pay the taxes due.

26       51.     In fact, SEPULVEDA is unaware of the current location of the monies taken by

27  PAYROLL and the other defendants but not remitted to the IRS and EDD, in the amount of

28  $34,025.59.

-8-

1    52.    As a result of the foregoing material breach of the Agreement by PAYROLL and

2    other defendants, SEPULVEDA has been damaged in the amount of no at ;east $34,025.59, plus

3    interest at the legal rate and penalties and interest incurred with the IRS and/or EDD.

4                                **SIXTH CAUSE OF ACTION**

5                    **(By SEPULVEDA For Breach of Written Contract against PAYROLL,**

6                          **GRIGORYAN, and Doe Defendants 1 through 20)**

7    53.    SEPULVEDA repeats, realleges and incorporates herein by this reference each

8    and every allegation contained in paragraphs 1 through 19, inclusive, as though set forth herein in

9    full.

10   54.    Within the last four years, SPULVEDA entered into a written agreement

11   ("Agreement") whereby SEPULVEDA retained Defendants, and each of them, to provide

12   certain payroll services, including payment of payroll taxes). Under the terms of the Agreement,

13   SEPULVEDA would deposit funds into an account from which PAYROLL would withdraw or

14   transfer funds to perform payroll services.

15   55.    Initially, PAYROLL and other defendants met obligations under the Agreement

16   with SEPULVEDA and performed the payroll services. Defendants would deduct all monies to

17   pay roll, payroll taxes, and similar types of obligations of twice per month, and withdrew or

18   transferred funds for its own fees as well once per month.

19   56.    However, on or about December 27, 2013, SRC learned that Defendants, and each

20   of them, had breached the Agreement and not paid the taxes to the IRS and EDD since

21   approximately July 1, 2013.

22   57.    At all times herein relevant, SEPULVEDA has performed all terms, conditions

23   and covenants of the Agreement.

24   58.    Said Agreement further provided that the party incurring attorney's fees to enforce

25   said Agreement would be entitled to recoupment of said fees.

26   59.    However, PAYROLL and the other defendants materially breached the Agreement

27   in that they have failed and refused, and continue to fail and refuse, to pay the taxes due.

28   60.    In fact, SEPULVEDA is unaware of the current location of the monies taken by

Howard D. Pilch
1801 Century Park E.
Suite 2400
LA, CA 90067
310 552 5344

-9-

COMPLAINT OF SEPULVEDA REHABILITATION CENTER, LLC AND 2025 REHAB MEDIA, LLC

1   PAYROLL and other defendants but not remitted to the IRS and EDD, in the sum of $14,085.29.

2      61.   Said Agreement provided that in the event that either party incurred legal fees

3   seeking to enforce its rights arising out of said Agreement, the prevailing party would be entitled

4   to such fees and costs.

5      62.   As a result of the foregoing material breach of the Agreement by PAYROLL and

6   other defendants, SRC has been damaged in the amount of at least $14,085.29, plus interest at the

7   legal rate and penalties incurred by SEPULVEDA.

8      63.   As a further result of the foregoing material breach of the Agreement,

9   SEPULVEDA is entitled to recovery of its attorney's fees and costs incurred, according to proof.

10                          **SEVENTH CAUSE OF ACTION**

11       **(By SEPULVEDA, For Account Stated against PAYROLL, GRIGORYAN and**

12                         **Doe Defendants 21-40)**

13      64.   SEPULVEDA repeats, realleges and incorporates herein by this reference

14   each and every allegation contained in paragraphs 1 through 19, inclusive, as though set forth

15   herein in full.

16      65.   Within the last two years, accounts were stated in writing by and between

17   SEPULVEDA and PAYROLL and Defendants, and each of them.  On such statements, a total

18   balance of not less than $34,025.59, was found due to SEPULVEDA from PAYROLL and other

19   defendants.

20      66.   Neither the whole nor any part of the above sum has been paid to

21   SEPULVEDA, although demand has been made by SEPULVEDA to PAYROLL and defendants.

22   Thus, there is now due, owing and unpaid from PAYROLL and other defendants to

23   SEPULVEDA an amount not less than $34,025.59, plus interest at the legal rate and penalties

24   and interest incurred with the IRS and/or EDD..

25                           **EIGHTH CAUSE OF ACTION**

26      **(By SEPULVEDA For Money Had and Received against PAYROLL, GRIGORYAN**

27                   **and Doe Defendants 21-40)**

28      67.   SEPULVEDA repeats, realleges and incorporates herein by this reference

-10-

COMPLAINT OF SEPULVEDA REHABILITATION CENTER, LLC AND 8025 SEPULVEDA, LLC

1  each and every allegation contained in paragraphs 1 through 19, inclusive, as though set forth

2  herein in full.

3      68.    Within the last two years PAYROLL and other defendants became

4  indebted to SEPULVEDA for an amount not less than $34,025.59 for money advanced by SRC

5  to PAYROLL and other defendants for the use and benefit of SEPULVEDA.

6      69.    Neither the whole nor any part of the above sum has been paid to

7  SEPULVEDA, although demand has been made by SEPULVEDA to PAYROLL and defendants.

8  Thus, there is now due, owing and unpaid from PAYROLL and other defendants to

9  SEPULVEDA an amount not less than $14,085.29, plus interest at the legal rate and penalties

10  and interest incurred with the IRS and/or EDD.

11                    **NINTH CAUSE OF ACTION**

12    **(By SRC, for Negligence against PAYROLL, GRIGORYAN, Doe Defendants 1-20)**

13      70.    SRC repeats, realleges and incorporates herein by this reference each and

14  every allegation contained in paragraphs 1 through 19, inclusive, as though set forth herein in

15  full.

16      71.    On or about December 27, 2013, and for a period of time prior thereto,

17  PAYROLL and each of the other defendants managed and operated the payroll accounts into

18  which SRC deposited funds.

19      72.    On or about December 27, 2013, PAYROLL and all defendants, and each of

20  them, negligently failed to utilize the funds as they were intended and now has failed to return

21  such funds to SRC despite demand therefor.

22      73.    As a direct and legal result of the negligence of PAYROLL and other

23  defendants, SRC has lost access to and the use of at least $14,085.29 which had been deposited

24  into its payroll account. As a further direct and legal result of such negligence, SRC failed to pay

25  monies owing to the IRS and EDD in the amount of $14,085.29. SRC has been damaged in

26  amount of $14,085.29, plus interest thereon at the legal rate, and penalties and interest incurred

27  with the IRS and/or EDD.

28  ///

-11-

## TENTH CAUSE OF ACTION

### (By SEPULVEDA for Negligence against PAYROLL, GRIGORYAN, and Doe Defendants 21-40)

74.     SEPULVEDA repeats, realleges and incorporates herein by this reference each and every allegation contained in paragraphs 1 through 19, inclusive, as though set forth herein in full.

75.     On or about December    , 2013, and for a period of time prior thereto, PAYROLL and each of the other defendants managed and operated the payroll accounts into which SEPULVEDA deposited funds.

76.     On or about December 27, 2013, PAYROLL and all defendants, and each of them, negligently failed to utilize the funds as they were intended and now has failed to return such funds to SEPULVEDA despite demand therefor.

77.     As a direct and legal result of the negligence of PAYROLL and other defendants, SEPULVEDA has lost access to and the use of at least $34,025.59 which had been deposited into its payroll account. As a further direct and legal result of such negligence, SEPULVEDA failed to pay monies owing to the IRS and EDD in the amount of $34,025.59. Thus SEPULVEDA has been damaged in the amount of $34,025.59, plus interest at the legal rate and penalties and interest incurred with the IRS and/or EDD.

## ELEVENTH CAUSE OF ACTION

### (By SRC for Breach of Fiduciary Duty against PAYROLL, GRIGORYAN, and Doe Defendants 1-20)

78.     SRC repeats, realleges and incorporates herein by this reference each and every allegation contained in paragraphs 1 through 19, inclusive, as though set forth herein in full.

79.     During the past two years, SRC and PAYROLL and Defendants agreed that PAYROLL that function as SRC's agent for the purpose of remitting payroll and payroll related tax monies to the IRS and EDD.

80.     In agreeing to act in behalf of SRC, PAYROLL and Defendants Does 1-20, inclusive, owed fiduciary duties of care, loyalty and good faith to SRC. These fiduciary duties

-12-

1   also included proper payment of monies to the IRS and EDD, to exercise good business

2   judgment, to act prudently and in the best interests of SRC.

3       81.   PAYROLL and Defendants Does 1-20 breached their fiduciary duty of care

4   to SRC by failing to pay SRC's obligations to the IRS and EDD and utilizing the funds in a

5   manner not intended by SRC. Such funds were deducted from payroll accounts SRC had

6   entrusted with PAYROLL and Defendants Does 1-20, inclusive, pursuant to the fiduciary

7   relationship that had been created by the Agreement.

8       82.   As a result of Defendants' breach of fiduciary duty, SRC has been damaged

9   in an amount unascertained, but no less than $14,085.29, plus interest at the legal rate and

10  penalties and interest incurred with the IRS and/or EDD.

11      83.   These acts were malicious and oppressive, justifying an award of punitive

12  damages so that said Defendants, and each of them, will not engage in such conduct in the future

13  and that it is appropriate for the Court to make an example of said Defendants.

14  ## TWELFTH CAUSE OF ACTION

15  **(By SEPULVEDA for Breach of Fiduciary Duty against PAYROLL,**

16  **GRIGORYAN, and Doe Defendants 1-20)**

17      84.   SEPULVEDA repeats, realleges and incorporates herein by this reference

18  each and every allegation contained in paragraphs 1 through 19, inclusive, as though set forth

19  herein in full.

20      85.   During the past two years, SEPULVEDA and PAYROLL and Defendants

21  agreed that PAYROLL that function as SEPULVEDA'S agent for the purpose of remitting

22  payroll and payroll related tax monies to the IRS and EDD.

23      86.   In agreeing to act in behalf of SEPULVEDA, PAYROLL and Defendants

24  Does 1-20, inclusive, owed fiduciary duties of care, loyalty and good faith to SRC. These

25  fiduciary duties also included proper payment of monies to the IRS and EDD, to exercise good

26  business judgment, to act prudently and in the best interests of SRC.

27      87.   PAYROLL and Defendants Does 1-20 breached their fiduciary duty of care

28  to SRC by failing to pay SRC's obligations to the IRS and EDD and utilizing the funds in a

Howard D. Pilch
1801 Century Park E.
Suite 2400
LA, CA 90067
310-552-5344

-13-

P. 001D      COMPLAINT OF SEPULVEDA REHABILITATION CENTER, LLC AND 9025 SEPULVEDA, LLC

1    manner not intended by SRC. Such funds were deducted from payroll accounts SRC had

2    entrusted with PAYROLL and Defendants Does 1-20, inclusive, pursuant to the fiduciary

3    relationship that had been created by the Agreement.

4         88.    As a result of Defendants' breach of fiduciary duty, SRC has been damaged

5    in an amount unascertained, but no less than $34,025.59, plus interest at the legal rate and

6    penalties and interest incurred with the IRS and/or EDD.

7         89.    These acts were malicious and oppressive, justifying an award of punitive

8    damages so that said Defendants, and each of them, will not engage in such conduct in the future

9    and that it is appropriate for the Court to make an example of said Defendants.

10                          **THIRTEENTH CAUSE OF ACTION**

11   **(By SRC for Conversion against all Defendants for Failure to Deposit Funds)**

12        90.    SRC repeats, realleges and incorporates herein by this reference each and

13   every allegation contained in paragraphs 1 through 19, inclusive, as though set forth herein in

14   full.

15        91.    During December, 2013, SRC delivered to PAYROLL and each other

16   Defendant the sum of $14,085.29 on the express understanding and agreement that PAYROLL

17   would pay the same to the IRS and EDD, for the tax requirements of SRC.

18        92.    On or about December 27, 2013, Defendants, and each of them, converted

19   said $14,085.29 for their own use, and otherwise utilized the funds in a manner and for a purpose

20   not intended by SRC, disregarding the duty of PAYROLL and GREGORYAN to SRC.

21        93.    On or about December 27, 2013, SRC orally demanded the immediate

22   return of the funds from PAYROLL but Defendants, and each of them, have failed and refused,

23   and continue to fail and refuse, to return said property to SRC.

24        94.    At all times relevant herein, SRC was, and still is, the owner of the money

25   deposited into the payroll account held and managed by PAYROLL and still is entitled to

26   possession of said $14,085.29.

27        95.    These acts were malicious and oppressive, justifying an award of punitive

28   damages so that said Defendants, and each of them, will not engage in such conduct in the future

Howard D. Pilch
1801 Century Park E.
Suite 2400
LA, CA 90067
310-553-5344

-14-

P- 001D    COMPLAINT OF SEPULVEDA REHABILITATION CENTER, LLC AND 8025 SEPULVEDA, LLC

1   and that it is appropriate for the Court to make an example of said Defendants.

2   ## FOURTEENTH CAUSE OF ACTION

3   **(By SEPULVEDA for Conversion against all Defendants and each of them)**

4   96.   SEPULVEDA repeats, realleges and incorporates herein by this reference

5   each and every allegation contained in paragraphs 1 through 19, inclusive, as though set forth

6   herein in full.

7   97.   During December, 2013, SRC delivered to PAYROLL and each other

8   Defendant the sum of $14,085.29 on the express understanding and agreement that PAYROLL

9   would pay the same to the IRS and EDD, for the tax requirements of SRC.

10   98.   On or about December 27, 2013, Defendants, and each of them, converted

11   said $34,025.59 for their own use, and otherwise utilized the funds in a manner and for a purpose

12   not intended by SRC, disregarding the duty of PAYROLL and GREGORYAN to SRC.

13   99.   On or about December 27  , 2013, SRC orally demanded the immediate

14   return of the funds from PAYROLL but Defendants, and each of them, have failed and refused,

15   and continue to fail and refuse, to return said property to SRC.

16   100.   At all times relevant herein, SRC was, and still is, the owner of the money

17   deposited into the payroll account held and managed by PAYROLL and still is entitled to

18   possession of said $34,025.59.

19   101.   These acts were malicious and oppressive, justifying an award of punitive

20   damages so that said Defendants, and each of them, will not engage in such conduct in the future

21   and that it is appropriate for the Court to make an example of said Defendants.

22   ## FIFTEENTH CAUSE OF ACTION

23   **(By SRC for Fraud against all Defendants, and each of them)**

24   102.   SRC repeats, realleges and incorporates herein by this reference each and

25   every allegation contained in paragraphs 1 through 19, inclusive, as though set forth herein in

26   full.

27   103.   SRC is informed and believes and thereon alleges that Defendants, and

28   each of them, had no intention to the use the funds as promised pursuant to their Agreement.

Howard D. Pilch
1801 Century Park E.
Suite 2400
LA, CA 90067
310.553.5344

-15-

P. 001D    COMPLAINT OF SEPULVEDA REHABILITATION CENTER, LLC AND 8036 SEPULVEDA, LLC

1      104.    SRC reasonably relied on said representations of PAYROLL and each

2  other defendant to remit the funds to the IRS and EDD.

3      105.    SRC is informed and believes and thereon alleges that Defendants, and

4  each of them, withdrew the funds from SRC's payroll account for their own use, to deprive SRC

5  of the use of said funds and to defraud SRC, with malice toward SRC.

6      106.    These acts were malicious and oppressive, justifying an award of punitive

7  damages so that said Defendants, and each of them, will not engage in such conduct in the future

8  and that it is appropriate for the Court to make an example of said Defendants.

9                          **SIXTEENTH CAUSE OF ACTION**

10      **(By SEPULVEDA for Fraud against all Defendants, and each of them)**

11      107.    SEPULVEDA repeats, realleges and incorporates herein by this reference

12  each and every allegation contained in paragraphs 1 through 19, inclusive, as though set forth

13  herein in full.

14      108.    SEPULVEDA is informed and believes and thereon alleges that

15  Defendants, and each of them, had no intention to the use the funds as promised pursuant to their

16  Agreement.

17      109.    SEPULVEDA reasonably relied on said representations of PAYROLL and

18  each other defendant to remit the funds to the IRS and EDD.

19      110.    SEPULVEDA is informed and believes and thereon alleges that

20  Defendants, and each of them, withdrew the funds from SEPULVEDA'S payroll account for

21  their own use, to deprive SEPULVEDA of the use of said funds and to defraud SEPULVEDA,

22  with malice toward SEPULVEDA.

23      111.    These acts were malicious and oppressive, justifying an award of punitive

24  damages so that said Defendants, and each of them, will not engage in such conduct in the future

25  and that it is appropriate for the Court to make an example of said Defendants.

26      WHEREFORE, Plaintiffs pray for judgment against defendants, and each of them, jointly

27  and severally, as follows:

28      ON THE FIRST, THIRD AND FOURTH CAUSES OF ACTION IN FAVOR OF SRC:

| | | |
|---|---|---|
| 1 | 1. | For damages in an amount not less than \$14, 085.29, plus interest at the |
| 2 | legal rate, according to proof at trial; | |
| 3 | 2. | For all penalties and interest thereon, according to proof at trial; and |
| 4 | 3. | For special damages according to proof at trial; |
| 5 | ON THE SECOND CAUSE OF ACTION BY SRC: | |
| 6 | 1. | For damages in an amount not less than \$14, 085.29, according to proof at |
| 7 | trial; | |
| 8 | 2. | For special damages according to proof at trial; and |
| 9 | 3. | For attorney's fees and costs incurred, according to proof at time of trial. |
| 10 | ON THE FIFTH, SEVENTH AND EIGHTH CAUSES OF ACTION BY SEPULVEDA: | |
| 11 | 1. | For damages in an amount not less than \$34, 025.59, plus interest |
| 12 | at the legal rate, according to proof at trial; | |
| 13 | 2. | For all penalties and interest thereon, according to proof at trial; and |
| 14 | 3. | For special damages according to proof at trial; |
| 15 | ON THE SIXTH CAUSE OF ACTION BY SEPULVEDA: | |
| 16 | 1. | For damages in an amount not less than \$14, 085.29, according to proof at |
| 17 | trial, plus interest thereon at the legal rate; | |
| 18 | 2. | For special damages according to proof at trial; and |
| 19 | 3. | For attorney's fees and costs, according to proof at time of trial. |
| 20 | ON THE NINTH CAUSE OF ACTION BY SRC: | |
| 21 | 1. | For damages in an amount not less than \$14,085.29, according to proof at |
| 22 | trial; | |
| 23 | 2. | For penalties and interest incurred by Plaintiff; and |
| 24 | 3. | For special damages according to proof at trial; |
| 25 | ON THE TENTH CAUSE OF ACTION BY SEPULVEDA: | |
| 26 | 1. | For damages in an amount not less than \$34, 025.59, according to proof at |
| 27 | trial; | |
| 28 | 2. | For penalties and interest incurred by Plaintiff; and |

-17-

COMPLAINT OF SEPULVEDA REHABILITATION CENTER, LLC AND 8025 SEPULVEDA, LLC

1          3.     For special damages according to proof at trial;

2          ON THE ELEVENTH, THIRTEENTH AND FIFTEENTH CAUSES OF ACTION BY

3    SRC:

4          1.     For damages in an amount not less than $14, 085.29, according to proof at

5    trial;

6          2.     For interest and penalties incurred by Plaintiff, according to proof at trial;

7          3.     For special damages according to proof at trial; and

8          4.     For punitive and exemplary damages;

9          ON THE TWELFTH, FOURTEENTH AND SIXTEENTH CAUSES OF ACTION:

10          1.     For damages in an amount not less than $34,025.59, according to proof at

11    trial;

12          2.     For interest and penalties incurred, according to proof at trial;

13          3.     For special damages according to proof at trial; and

14          4.     For punitive and exemplary damages;

15          ON ALL CAUSES OF ACTION:

16          1.     For interest at the maximum allowed by law;

17          2.     For costs of suit incurred herein;

18          3.     For such other further relief as the Court deems just and proper.

19

20    Date: January 2**7** , 2014          LAW OFFICES OF HOWARD D. PILCH

21

22                  By:

23                     HOWARD D. PILCH,

24                     Attorney for Plaintiff(s)
                                 Sepulveda Rehabilitation Center, LLC and
                                 8025 Sepulveda, LLC

25

26

27

28

# EXHIBIT H

1  | Jason D. Annigian, Esq. (State Bar No. 208876)
   | THE LAW OFFICE OF JASON D. ANNIGIAN, APC
2  | 114 N. Indian Hill Blvd., Suite E
   | Claremont, CA 91711
3  | Tel:    (909) 981-0475
   | Fax:    (909) 981-0113
4  |
   | Attorneys for Plaintiff,
5  | TAMAYO PRODUCE, INC.

**FILED**
Superior Court of California
County of Los Angeles

FEB 1 3 2014

Sherri R. Carter, Executive Officer/Clerk
By _Cristina Grijalva_ Deputy
Cristina Grijalva

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9          FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

10

11 | TAMAYO PRODUCE, INC., a California      | Case No.: BC534912
    | corporation,
12 |                                          | ASSIGNED FOR ALL PURPOSES TO
    |              Plaintiff,                  | Honorable Ruth Ann Kwan
13 |                                          | Department 72
    |        v.                                | Action Filed: February 3, 2014
14 |                                          | Trial Date: None
    | LA PAYROLL, INC., a California
15 | corporation; TOVMAS GRIGORYAN, an
    | individual; DMITRI PAIU, an individual;
16 | GENE MOROZ, an individual; and DOES 1    | FIRST AMENDED COMPLAINT FOR:
    | through 25,
17 |                                          | 1. Intentional Misrepresentation;
    |              Defendants.                 | 2. Fraudulent Concealment;
18 |                                          | 3. Conversion;
    |                                          | 4. Breach of Fiduciary Duty;
19 |                                          | 5. Unjust Enrichment;
    |                                          | 6. Negligent Infliction of Emotional
20 |                                          |    Distress; and
    |                                          | 7. Negligence
21

22

23

24

25

26

27

28

-1-
FIRST AMENDED COMPLAINT FOR DAMAGES

1      Plaintiff, Tamayo Produce, Inc., a California corporation, for its First Amended

2  Complaint against the Defendants LA Payroll, Inc. ("LA Payroll"), Tovmas Grigoryan

3  ("Grigoryan"), Dmitri Paiu ("Paiu"),[1] Gene Moroz ("Moroz")[2] and Does 1 through 25,

4  inclusive, states and alleges as follows:

5

6                      IDENTIFICATION OF THE PARTIES

7

8    1.     Plaintiff is a corporation existing under the laws of the State of California.

9  Plaintiff's principal place of business is located at 1500 E. Olympic Boulevard in the City of

10  Los Angeles, County of Los Angeles. Plaintiff is, and at all relevant times has been, qualified to

11  do business in California. At all relevant times, Plaintiff is and has been in the business of

12  providing produce and foodservice items to its customers.

13

14    2.     LA Payroll is a corporation existing under the laws of the State of California.

15  LA Payroll's principal place of business is located at 5820 Wilshire Boulevard in the City of

16  Los Angeles, County of Los Angeles. At all times relevant to this action LA Payroll was

17  entrusted with handling the payroll for Plaintiff's employees, including receiving from Plaintiff

18  funds for the payment of employment taxes that LA Payroll was under a fiduciary duty to then

19  forward on to the state and federal government on behalf of Plaintiff.

20

21    3.     On information and belief, Grigoryan was and is, at relevant times, an individual

22  residing in the County of Los Angeles. On information and belief, Grigoryan was and is one of

23  the owners of LA Payroll.

24

25

26

27

28
    [1] LA Payroll, Grigoryan, and Paiu, are sometimes referred to collectively as the "LA Payroll Defendants".
    [2] LA Payroll, Grigoryan, Paiu, and Moroz are sometimes referred to collectively as the "Defendants".

FIRST AMENDED COMPLAINT FOR DAMAGES

1     4.     On information and belief, Paiu was and is, at relevant times, an individual

2 residing in the County of Los Angeles. On information and belief, Paiu was and is one of the

3 owners of LA Payroll.

5     5.     On information and belief, Moroz was and is, at relevant times, an individual

6 residing in the County of Los Angeles. On information and belief, Moroz is the founder and

7 prior owner of LA Payroll.

9     6.     Plaintiff is presently unaware of the true names and capacities of the Defendants

10 sued as Does 1 through 25, inclusive. Plaintiff sues these Defendants by their fictitious names

11 and will amend its Complaint to allege their true names and capacities when they are

12 ascertained. On information and belief, Plaintiff alleges that each of the Does 1 through 25 is

13 responsible in whole or in part for the wrongdoing and damages alleged in the Complaint.

15     7.     On information and belief, Plaintiff alleges that at all relevant times, each of the

16 Defendants is and was the agent, servant, employee, and/or representative of each of the

17 remaining Defendants. Plaintiff further alleges, on information and belief, that each of the

18 Defendants, in doing the things alleged, is and was acting within the course and scope of his, her

19 or its authority as an agent, servant, employee and/or representative of the remaining

20 Defendants, and is or was acting with the knowledge, permission, consent, authorization and/or

21 subsequent ratification of the remaining Defendants.

23     8.     On information and belief, LA Payroll is the alter ego of Grigoryan in that

24 Grigoryan, for his own personal use and benefit, controls the assets of LA Payroll, commingles

25 funds, has inadequate capitalization, fails to maintain requisite formalities, and engaged in

26 actions with respect to the affairs of LA Payroll as to render its separate existence a nullity. On

27 further information and belief, LA Payroll was and is a mere shell, instrumentality and conduit

28 through which Grigoryan conducts business, exercising complete control and dominion over the

-3-

FIRST AMENDED COMPLAINT FOR DAMAGES

1   entity, and entering into agreements on behalf of the company for his exclusive benefit and
2   subject to his unilateral control. Adherence to the fiction of the separate existence of LA Payroll
3   would sanction fraud and promote injustice

5       9.      On information and belief, LA Payroll is the alter ego of Paiu in that Paiu, for his
6   own personal use and benefit, controls the assets of LA Payroll, commingles funds, has
7   inadequate capitalization, fails to maintain requisite formalities, and engaged in actions with
8   respect to the affairs of LA Payroll as to render its separate existence a nullity. On further
9   information and belief, LA Payroll was and is a mere shell, instrumentality and conduit through
10  which Paiu conducts business, exercising complete control and dominion over the entity, and
11  entering into agreements on behalf of the company for his exclusive benefit and subject to his
12  unilateral control. Adherence to the fiction of the separate existence of LA Payroll would
13  sanction fraud and promote injustice

15      10.     Venue is proper in this judicial district as the theft and other wrongdoing alleged
16  in this Complaint occurred in the City of Los Angeles. Further, all Defendants, on information
17  and belief, reside or have, at times relevant to this action, resided in the County of Los Angeles.

19  ## MOROZ, THE FORMER OWNER OF LA PAYROLL, FAILED TO EXERCISE
20  ## ORDINARY CARE IN THE SALE OF LA PAYROLL TO THE LA PAYROLL
21  ## DEFENDANTS

23      11.     Defendants are or were in the business of providing payroll services to
24  businesses in and around the Los Angeles area. These services include (but are not limited to)
25  receiving in escrow payroll tax deposits to be forwarded to the state and federal government for
26  the payment of payroll taxes on behalf of Defendants' clients.

-4-
FIRST AMENDED COMPLAINT FOR DAMAGES

1    12.    Moroz, on information and belief, was the founder and former owner of LA

2 Payroll.  On or about September 20, 2011, Moroz sold LA Payroll to the LA Payroll Defendants

3 for the sales price of $450,000.00.

4

5    13.    On information and belief, in the course of the sale, Moroz failed to exercise

6 ordinary care that a reasonable person should have exercised under the circumstances, including

7 (but not limited to): (a) failing to properly vet the Paiu and/or Grigoryan, especially given the

8 fact that Moroz was selling a business that was not subject to any government oversight and

9 which business acted in a fiduciary capacity for many of its clients by escrowing and then

10 paying such client's payroll taxes; (b) failing to conduct *any* due diligence on Paiu and/or

11 Grigoryan to determine if they could properly service LA Payroll's clients; and (c) failing to

12 notify LA Payroll's clients of the ownership change such that LA Payroll's clients could take

13 steps to ensure that their payroll tax deposits were in good hands following the sale of LA

14 Payroll to Paiu and/or Grigoryan.

15

16    14.    On information and belief, following the sale of LA Payroll to Paiu and/or

17 Grigoryan, Moroz continued to work as consultant for LA Payroll for a period of time.  At no

18 point during this consulting period did Moroz ever notify the clients of LA Payroll, including

19 Plaintiff, that LA Payroll was no longer owned by Moroz.

20

21    THE LA PAYROLL DEFENDANTS DEFRAUDED PLAINTIFF BY TAKING

22    MONIES FROM PLAINTIFF THAT WERE SUPPOSED TO BE PAID FOR

23    PAYROLL TAXES, BUT INSTEAD ABSCONDED WITH THESE FUNDS

24    AND DISAPPEARED

25

26    15.    Plaintiff was a client of Defendants.  Plaintiff entrusted Defendants with the

27 escrowing and payment of Plaintiff's payroll taxes.

28

-5-

FIRST AMENDED COMPLAINT FOR DAMAGES

1    16.    Beginning in mid-to-late 2013, the LA Payroll Defendants continued to receive
2  the payroll tax deposits in escrow on behalf of its clients, including Plaintiff. The LA Payroll
3  Defendants, on information, ceased paying the payroll taxes for their clients in mid-to-late 2013,
4  including those of Plaintiff, despite the fact that it continued to receive the payroll tax deposits
5  in escrow.

6

7    17.    Defendants were a fiduciary of Plaintiff and, on information and belief, were
8  either negligent and/or defrauded Plaintiff and breached their fiduciary duties by absconding
9  with Plaintiff's payroll tax deposits and failing to pay Plaintiff's payroll taxes for the balance of
10  2013.   As a result, Plaintiff has incurred damages in an amount of at least $100,000.00,
11  consisting of principal payroll tax liabilities and penalties.

12

13                              FIRST CAUSE OF ACTION

14                        [For Intentional Misrepresentation –

15              Against the LA Payroll Defendants and Does 1 through 25, inclusive]

16

17    18.    Plaintiff adopts and incorporates Paragraphs 1 through 17, inclusive, as if fully
18  set forth.

19

20    19.    As previously alleged, Plaintiff was a client of Defendants. Beginning in mid-to-
21  late 2013, the LA Payroll Defendants continued to receive the payroll tax deposits in escrow on
22  behalf of its clients, including Plaintiff. The LA Payroll Defendants, on information, ceased
23  paying the payroll taxes for their clients in mid-to-late 2013, including those of Plaintiff, despite
24  the fact that the LA Payroll Defendants continued to receive the payroll tax deposits in escrow.
25  Plaintiff entrusted Defendants with the escrowing and payment of Plaintiff's payroll taxes.
26  Defendants were a fiduciary of Plaintiff and, on information and belief, the LA Payroll
27  Defendants defrauded Plaintiff and breached their fiduciary duties by absconding with
28  Plaintiff's payroll tax deposits and failing to pay Plaintiff's payroll taxes for the balance of

-6-
FIRST AMENDED COMPLAINT FOR DAMAGES

1  2013.   As a result, Plaintiff has incurred damages in an amount of at least $100,000.00,

2  consisting of principal payroll tax liabilities and penalties.

3

4     20.   In doing so, the LA Payroll Defendants represented to Plaintiff that that they

5  were paying Plaintiff's payroll taxes after receiving the tax deposits in escrow.

6

7     21.   On information and belief, Plaintiff alleges that the LA Payroll Defendants'

8  representations were false when made and/or recklessly made.

9

10     22.   On information and belief, the LA Payroll Defendants knew that their

11  representations were false and fraudulent at the time they were made, including but not limited

12  to the fact that they intended to misappropriate Plaintiff's payroll tax deposits for their own

13  gain.

14

15     23.   On information and belief, the LA Payroll Defendants made the material and

16  false representations with the intent to deceive and defraud Plaintiff into believing that the LA

17  Payroll Defendants were in fact honoring their fiduciary obligations to pay the payroll taxes to

18  the appropriate taxing authorities, and that the LA Payroll Defendants were not absconding with

19  Plaintiff's monies.

20

21     24.   Plaintiff was ignorant of the falsity of the representations of the LA Payroll

22  Defendants.  Plaintiff, moreover, was justified in relying on the representations made by the LA

23  Payroll Defendants in that Defendants had provided these services for Plaintiff in the past

24  without incident, and given further that Defendants stood in a fiduciary capacity to Plaintiff.

25

26     25.   As a direct, proximate, and legal result of the intentional and material

27  misrepresentations of the LA Payroll Defendants, Plaintiff has been damaged and will continue

28

-7-

1   to be damaged in an amount according to proof at the time of trial, but in an amount of at least

2   $100,000.00.

3

4       26.    The conduct of the LA Payroll Defendants was willful, fraudulent, oppressive

5   and malicious.  The wrongful actions and intentional misrepresentations of the LA Payroll

6   Defendants were intended to cause injury and loss to Plaintiff, were undertaken with a conscious

7   disregard of Plaintiff's rights, were designed to wrongfully deprive Plaintiff of its property and

8   business, and were undertaken for the sole purpose and with the intention of advancing the LA

9   Payroll Defendants' personal pecuniary benefit at the expense of Plaintiff.  Such conduct is and

10  was malicious, oppressive and fraudulent, entitling Plaintiff to punitive damages.

11

12  SECOND CAUSE OF ACTION

13  [For Fraudulent Concealment –

14  Against the LA Payroll Defendants and Does 1 through 25, inclusive]

15

16      27.    Plaintiff adopts and incorporates Paragraphs 1 through 26, inclusive, as if fully

17  set forth.

18

19      28.    The LA Payroll Defendants owed a duty to Plaintiff to disclose all known facts

20  which were directly or indirectly adverse to Plaintiff.

21

22      29.    Beginning in approximately mid-2013, the LA Payroll Defendants intentionally

23  concealed and failed to disclose material facts to Plaintiff including, but not limited to, the

24  misuse and misappropriation of Plaintiff's property, as alleged above.

25

26      30.    On information and belief, the LA Payroll Defendants concealed and suppressed

27  the above-referenced material facts with the intent to defraud Plaintiff.

28

-8-
FIRST AMENDED COMPLAINT FOR DAMAGES

1     31.    Plaintiff was unaware of the practices, concealment, and suppression of material

2    facts of the LA Payroll Defendants, as alleged above.

3

4     32.    As a direct, proximate, and legal result of the intentional and material

5    misrepresentations of the LA Payroll Defendants, Plaintiff has been damaged and will continue

6    to be damaged in an amount according to proof at the time of trial.

7

8     33.    The conduct of the LA Payroll Defendants was willful, fraudulent, oppressive

9    and malicious.  The wrongful actions and intentional misrepresentations of the LA Payroll

10    Defendants were intended to cause injury and loss to Plaintiff, were undertaken with a conscious

11    disregard of Plaintiff's rights, were designed to wrongfully deprive Plaintiff of its property and

12    business, and were undertaken for the sole purpose and with the intention of advancing the LA

13    Payroll Defendants' personal pecuniary benefit at the expense of Plaintiff.  Such conduct is and

14    was malicious, oppressive and fraudulent, entitling Plaintiff to punitive damages.

15

16    THIRD CAUSE OF ACTION

17    [For Conversion –

18    Against the LA Payroll Defendants and Does 1 through 25, inclusive]

19

20     34.    Plaintiff adopts and incorporates Paragraphs 1 through 33, inclusive, as if fully

21    set forth.

22

23     35.    The LA Payroll Defendants and DOES 1 through 25 have converted Plaintiff's

24    property, including but not limited to the payroll tax deposits that were stolen by the LA Payroll

25    Defendants.

26

27     36.    As a result of such conversion, Plaintiff has been damaged in an amount which is

28    to be proven at the time of trial, but which is in an amount of at least $100,000.00.

-9-

1    37.    The conduct of the LA Payroll Defendants was willful, fraudulent, oppressive

2  and malicious.  The wrongful actions and intentional misrepresentations of the LA Payroll

3  Defendants were intended to cause injury and loss to Plaintiff, were undertaken with a conscious

4  disregard of Plaintiff's rights, were designed to wrongfully deprive Plaintiff of its property and

5  business, and were undertaken for the sole purpose and with the intention of advancing the LA

6  Payroll Defendants' personal pecuniary benefit at the expense of Plaintiff.  Such conduct is and

7  was malicious, oppressive and fraudulent, entitling Plaintiff to punitive damages.

8

9                          FOURTH CAUSE OF ACTION

10                         [Breach of Fiduciary Duty –

11               Against All Defendants and Does 1 through 25, inclusive]

12

13    38.    Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 37,

14  inclusive.

15

16    39.    Defendants, in handling the payroll services and escrowing of Plaintiff's payroll

17  tax deposits, owed Plaintiff a fiduciary duty to act in the best interests of Plaintiff in the course

18  of the performance of its duties on Plaintiff's behalf.  As to Moroz, this included informing his

19  clients, including Plaintiff, that he sold LA Payroll to Paiu and/or Grigoryan, and that Plaintiff's

20  payroll tax deposits were in the control of someone other than Moroz.

21

22    40.    In the course of performing their duties, the LA Payroll Defendants knowingly

23  acted against Plaintiff's interests in connection with their duties as a the payroll company and

24  escrow of the payroll tax deposits, by failing to pay the taxes over to the proper taxing

25  authorities, and otherwise absconding with the funds. In the course of performing his duties, the

26  Moroz knowingly acted against Plaintiff's interests in connection with his duties as the owner of

27  LA Payroll, in that Moroz failed to notify Plaintiff that he sold LA Payroll to Paiu and/or

28

-10-
FIRST AMENDED COMPLAINT FOR DAMAGES

1  Grigoryan, and that Plaintiff's payroll tax deposits were in the control of someone other than

2  Moroz. As such, Defendants breached their fiduciary duty owed to Plaintiff.

3

4      41.    At no time did Plaintiff give informed consent to Defendants' conduct, nor was

5  Plaintiff advised of Defendants' conduct until Plaintiff's owner discovered the fraudulent

6  scheme.

7

8      42.    Plaintiff has suffered injury as a proximate result of the actions of Defendants,

9  the amount of which will be proven at trial, but in an amount of at least $100,000.00.

10

11     43.    The conduct of Defendants was willful, fraudulent, oppressive and malicious.

12  The wrongful actions and intentional misrepresentations of Defendants were intended to cause

13  injury and loss to Plaintiff, were undertaken with a conscious disregard of Plaintiff's rights,

14  were designed to wrongfully deprive Plaintiff of its property and business, and were undertaken

15  for the sole purpose and with the intention of advancing Defendants' personal pecuniary benefit

16  at the expense of Plaintiff.  Such conduct is and was malicious, oppressive and fraudulent,

17  entitling Plaintiff to punitive damages.

18

19                          FIFTH CAUSE OF ACTION

20                          [Unjust Enrichment –

21              Against All Defendants and Does 1 through 25, inclusive]

22

23     44.    Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 43,

24  inclusive.

25

26     45.    The elements of a claim for unjust enrichment are the "receipt of a benefit and

27  [the] unjust retention of the benefit at the expense of another." *Lectrodryer v. SeoulBank* (2000)

28  77 Cal.App.4th 723, 726.

                                    -11-

46.    As a result of the actions of Defendants and DOES 1 through 25, they have been unjustly enriched in an amount of not less than $100,000.00.  It would be unconscionable for Defendants and/or DOES 1 through 25 to retain the amount by which they have been unjustly enriched.

47.    Plaintiff seeks and order that Defendants and DOES 1 through 25 disgorge all monies received by Defendants and DOES 1 through 25 as a result of their fraudulent scheme.

SIXTH CAUSE OF ACTION

[Negligent Infliction of Emotional Distress –

Against the LA Payroll Defendants and Does 1 through 25, inclusive]

48.    Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 47, inclusive.

49.    The LA Payroll Defendants owed a duty to exercise ordinary care in providing professional services to Plaintiff.

50.    The LA Payroll Defendants breached that duty by failing to exercise the requisite level of care, which was the actual and proximate cause of the damages sustained by Plaintiff.

51.    As a result of the breach of duty by the LA Payroll Defendants, Plaintiff has suffered actual and proximate damages in an amount of at least $100,000.00.

-12-

SEVENTH CAUSE OF ACTION

[Negligence –

Against Moroz and Does 1 through 25, inclusive]

52.     Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 51, inclusive.

53.     Moroz owed a duty to exercise ordinary care in providing professional services to Plaintiff.

54.     Moroz breached that duty by failing to exercise the requisite level of care, which was the actual and proximate cause of the damages sustained by Plaintiff. On information and belief, in providing professional services to Plaintiff, including in the course of the sale of LA Payroll to the LA Payroll Defendants, Moroz failed to exercise ordinary care that a reasonable person should have exercised under the circumstances, including (but not limited to): (a) failing to properly vet the Paiu and/or Grigoryan, especially given the fact that Moroz was selling a business that was not subject to any government oversight and which business acted in a fiduciary capacity for many of its clients by escrowing and then paying such client's payroll taxes; (b) failing to conduct *any* due diligence on Paiu and/or Grigoryan to determine if they could properly service LA Payroll's clients; and (c) failing to notify LA Payroll's clients of the ownership change such that LA Payroll's clients could take steps to ensure that their payroll tax deposits were in good hands following the sale of LA Payroll to Paiu and/or Grigoryan

55.     As a result of the breach of duty by Moroz, Plaintiff has suffered actual and proximate damages in an amount of at least $100,000.00.

-13-

FIRST AMENDED COMPLAINT FOR DAMAGES

<u>PRAYER</u>

WHEREFORE, Plaintiff prays for Judgment on all causes of action against the Defendants, and each of them, as follows:

<u>On All Causes of Action</u>

1.   For compensatory damages according to proof;

2.   For punitive damages;

3.   For prejudgment interest at the statutory rate of ten percent (10%) per annum;

4.   For disgorgement of all sums by which Defendants have been unjustly enriched;

5.   For attorneys' fees incurred by Plaintiff to the extent permitted by statute or common law;

6.   For costs of suit incurred; and

7.   For such further and additional relief as the Court deems just and appropriate.

THE LAW OFFICE OF JASON D. ANNIGIAN, APC

Dated: February 13, 2014

Jason D. Annigian
Attorney for Plaintiff, Tamayo Produce, Inc.

-14-

FIRST AMENDED COMPLAINT FOR DAMAGES